IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    ALAN ALONZO WILLIAMS,

    Defendant.

---

**DEFENDANT'S RESPONSE TO PRESENTENCE REPORT (DOC. #48)**

---

Defendant Alan Alonzo Williams ("Defendant"), by counsel, submits these objections and comments to the Presentence Investigation Report (Doc. #48).

**Offense Description**

Mr. Williams acknowledges his wrongdoing as summarized in the factual basis of the Plea Agreement, and admits that these loans were obtained fraudulently. But the Presentence Investigation Report ("PSR") fails to capture a material element of the surrounding facts, which was that Mr. Williams was motived in substantial part by a desire to turn around a struggling family vending machine business and that a significant portion of the loan proceeds were used for this purpose.

The PSR properly quotes the Plea Agreement concerning the facts surrounding the offense. But the Plea Agreement specifies that additional facts that do not contradict the

stipulated facts may be presented if relevant to the Court's sentencing decision. The Plea Agreement states that funds were used to operate Williams Vending and pay creditors, and in the "Additional Information" section of the PSR probation provides additional information from discovery materials concerning the use of loan proceeds. But the additional information in Paragraphs 28 through 31 fails to mention that discovery materials, particularly bank records, show that substantial loan proceeds were used to operate Williams Vending and to pay its creditors.

The PSR quotes portions of the Plea Agreement at paragraphs 27 through 29 of the PSR that the balance of the loans were reduced little as the result of payments made by Mr. Williams. This is true, but payments made were as specified by the loan agreements, and early loan payments do not significantly reduce principal. The government emphasizes these same facts in its supporting letter of May 24, 2017 to suggest that Mr. Williams intended from the outset to abscond with all loan proceeds. There are other facts revealed by bank records in the discovery record not discussed in the Additional Facts section of the PSR, however, showing that these loans were used in part to fund Williams Vending, a long-standing family business. The full loss occurred when that business failed.

At paragraph 112 of the PSR, probation confirms that Williams Vending existed from 1986 until its failure in 2011 and conducted business during most of this time. The defendant's mother confirms at paragraph 93 of the PSR that Mr. Williams worked at Williams Vending for years before the events leading to these offenses, and wanted that business "to be successful," particularly after the death of the defendant's father.

As supported by the government in its May 24, 2017 letter, the PSR correctly states at paragraph 22 that the loan balances were not significantly reduced before these loans went into default. But the letter's attachments confirm that loan payments were made regularly for a significant period.

The PSR mentions at paragraph 21 that loan proceeds were used to pay creditors of Williams Vending and for operating capital, but the Additional Facts section of the PSR fails to give adequate attention to these payments. Bank records in discovery materials show that substantial loan proceeds were paid to the creditors of Williams Vending referred to in Paragraph 21 of the PSR in early 2008 shortly after this loan was funded. Examples of these payments are shown by checks available in the discovery record at: WF_00000808 (Financial Pacific), WF_00000809 (Pentech) and WF_00000810 (NetBank). Additionally, reports of government interviews produced in discovery confirm that Pentech Financial (INT_00000004), Puget Sound Leasing/First Sound Bank (INT_00000019), and NetBank (INT_00000154) were all paid off in early 2008. Other bank records in discovery show significant operating expenses of Williams Vending paid using loan proceeds. Examples of such checks in the discovery record are found at: WF_00000530 (Seven Up), WF_00000531 (warehouse rental), WF_00000792 (Gateway Industrial), WF_00000721 (warehouse rental), WF_00000729 (warehouse rental), WF_00000801 (warehouse rental), WF_00000786 (loan payment), WF_00000535 (Coca Cola), WF_00000742 (Coca Cola), WF_00000747 (Coca Cola), WF_00000748 (Coca Cola), WF__00000752 (Coca Cola), WF_00000753 (Coca Cola), WF 00000802 (Seven Up), WF_00000780 (Seven Up), WF_00000794 (vending machine parts), WF_00000807 (product supplier), WF_00000811 (product supplier), and WF_00000533 (delivery truck rental). This is

not a case where loan proceeds were obtained for a non-existent business or fully appropriated for the defendant's personal use.

The PSR mentions at Paragraph 22 that Ross Vending did not provide Williams Vending with $339,200.00 of vending machines. But important details about payments to Ross Vending are not mentioned in the Additional Facts section of the PSR. Bank records provided in discovery reveal payment for the delivery of many Ross Vending machines using loan proceeds and payments made directly to Ross Vending for vending machines. See, for example, bank records available in discovery at WF_00000791. Other bank records show checks made out to Williams Vending but identifying the purpose of machine purchases. See, for example, WF_00000561. When he was interviewed, the owner of Ross Vending acknowledged that he received cash payments for machines sold to Williams Vending.

Similarly, Paragraph 23 of the PSR states that Mr. Williams did not pay Specialty Trux invoices in full, but bank records available in discovery, and not mentioned in the Additional Facts section of the PSR, show that significant payments, exceeding $30,000.00, were made to Specialty Trux using loan proceeds. See WF_00000784 and 00000788.

Mr. Williams recalls additional payments made to creditors of Williams Vending, including those identified in Paragraph 21 of the PSR, not addressed in discovery materials. Mr. Williams will seek a continuance of his sentencing, in part, to confirm these additional payments.

The PSR correctly states that Mr. Williams improperly acquired two vehicles with loan proceeds, and misappropriated other monies for purely personal use, but these sums are substantially less than the approximately $1.1 million in loan proceeds paid to Williams

4

Vending.  The loss is a combination of (i) the admitted fraudulent conduct of Mr. Williams; (ii) the failure of this pre-existing family business notwithstanding the use of loan proceeds to support that business; and (iii) prior security interests in the business held by Chase Bank.  See PSR at Paragraph 30.

Mr. Williams explains, as reported at paragraphs 44 and 45 of the PSR, that after his father's death he was desperate to make Williams Vending a success, and acknowledges that he "took the easy road" by obtaining these loans fraudulently and misusing funds.  But he also explains that he was substantially motivated by a desire to make his family business a success.  His mother confirms these circumstances at paragraph 93 of the PSR.  The Additional Facts section of the PSR fails to adequately describe this aspect of the facts surrounding Mr. Williams' offenses confirmed by discovery materials and bank records.

### Guideline Loss Amount and Offense Level

The PSR concludes at paragraph 35 that the guideline loss amount exceeds $1,500,000, which increases the total offense level by two points.  As reported at paragraph 41 of the PSR, the actual loss on the completed loans is $1,146,828.28.  To exceed the $1,500,000 threshold and increase the offense level by 16 points rather than 14 under §2B1.1(b)(1)(H), the PSR concludes that Mr. Williams intended to cause a loss of the full amount of the final loan he requested but did not receive.  Mr. Williams objects to this calculation because it is not consistent with the offense facts.  The properly calculate Offense Level is 18, not 20 as reported in the PSR.

The case law relied upon by probation, *United States v Manatau*, 647 F.3d 1048, 1050 (10th Cir. 2011), supports the proposition that intended loss may be determined by examination of the surrounding facts, such as the defendant's mental state.

5

Here, the facts do not show that Mr. Williams intended to cause a loss of the full amount of this attempted loan. Although these loans were obtained fraudulently, bank records available in discovery show that substantial loan proceeds were used in part to support a long-standing business. Payments were made on the completed loans for many months. Loan proceeds were used to operate Williams Vending, including payments made to creditors of Williams Vending. The assets of Williams Vending were liquidated to pay off one such creditor, Chase Bank, that held a superior lien. The failure of Williams Vending does not establish the intent to deprive the lender of the full value of this proposed loan.

The PSR calculates the "guideline loss" amount to be $1,696,828.28 based on an actual loss of $1,146,828.28 on the completed loans and the full $550,000 sought on the attempted loan. The evidence does not support that Mr. Williams intended to cause the loss of essentially all of this additional proposed loan. The government cannot meet its evidentiary burden to justify the 16-level enhancement for loss exceeding $1,500,000. A 14-level enhancement under §2B1.1(b)(1)(H) is appropriate in this case.

Mr. Williams did not "purposely [seek] to inflict" the full amount of this denied loan. *See* Manatau, 647 F.3d at 1050. The continued operation of Williams Vending Company meant that the amount of "intended loss" was not the full amount of this proposed loan, and that the total loss supported by the facts is below the $1,500,000 threshold.

### Criminal History

Mr. Williams believes that his criminal history points are overstated and that there are also mitigating facts about his criminal history that should be noted.

Mr. Williams objects to the two (2) points assigned for the matter described in Paragraph 79 of the PSR. As reflected in the PSR, Mr. Williams was sentenced on the matter reflected in Paragraph 79 in a single sentence served along with the sentences referred to in Paragraphs 76, 77 and 78. No additional points should be assigned for the matter referred to in Paragraph 79. See U.S.S.G. §4A1.2(a)(2).

Mr. Williams also objects to the three (3) points assigned for the matter described in Paragraph 74 of the PSR. His recollection is that this matter was eventually dismissed. Mr. Williams requests access to the supporting case materials concerning this matter to confirm these facts.

Although Mr. Williams has a significant criminal history, little of that criminal history is recent. The current offense occurred over ten years ago. His last convictions or arrests, prior to his current incarceration, occurred in March 2006, years prior to his arrest in this case.

Mr. Williams' criminal history includes few offenses relating to personal violence, and nothing of that kind in recent years. In fact, the only related event in the past two decades is a municipal harassment charge reported at paragraph 81 of the PSR. Mr. Williams, however, does not agree that this event involved actual violence. As noted, charges of battery and attempted assault associated with this event were dismissed.

Mr. Williams' criminal history includes no gun charges or drug offenses.

### Physical and Medical Condition

The PSR reports at paragraphs 102 and 103 about a hernia and knee injury.

The original sentencing date of May 6, 2017, was continued so Mr. Williams could be treated for his medical problems. Recently, he has been evaluated at a private hospital for a knee

7

brace and also to prepare him for hernia surgery.  He anticipates that his surgery will occur soon, likely between now and the current sentencing date of July 6, 2017.  Mr. Williams has not been told the specifics of when he will be returned to the hospital for further treatment, but his Federal Detention Center counselor should be able to confirm these facts.  Mr. Williams will request a continuance of his sentencing to facilitate his hernia surgery and other medical care, and so that the Court can be fully advised of his medical condition at sentencing.

### Employment History

As we believe he reported during his interview with probation, Mr. Williams has a certification to work as an asbestos removal contractor and has worked in this field at various times.  He plans to return to this work when released from custody.

### Other Comments

Paragraph 4 of the PSR addresses a minor rules violation at the Federal Detention Center. It should be noted that the picture he asked another inmate to prepare was a family picture.

### Sentencing Recommendation

Mr. Williams objects to the PSR's recommendation that he be sentenced to 87 months, which is the top end of the guideline range calculated by probation.

Because the guideline loss is less than $1,500,000, the proper total offense level is 18 rather than 20.  Even with a Criminal History Level VI, which MR. Williams contests, the proper guideline range here is 57-71 months.  A maximum sentence within the proper guideline range would be 71 months, not 87 months.

Even if the Court finds that the proper total offense level is 20 and a Criminal History Level VI, however, probation's recommended sentence of 87 months substantially exceeds the sentence necessary to meet the requirements of 18 U.S.C. §3553.

The guidelines add two additional points to the offense level for a guideline loss exceeding $1,500,000 but less than $3,500,000.  §2B1.1(b)(1)(I).  Even if the guideline loss is $1,696,828.28, as probation calculates, this loss is at the bottom of this category of guideline loss (i.e. closer to $1,500,000 than $3,500,000) and does not justify a sentence at the top of the resulting guideline range.

Although Mr. Williams' offense is serious, it is mitigated by the fact that these loans were obtained in part in a failed effort to fund and save a long-existing family business.  This is not a more aggravated case than where all loan proceeds were stolen for personal use via a non-existing entity, or where the defendant concealed his identity for this purpose.  Mr. Williams' involvement in the loan process was no secret; he had direct contact with WebBank on numerous occasions, and as shown by bank records available in discovery, he signed in his own name Williams Vending checks used to make loan payments.  See paragraphs 19 and 20 of the PSR and, for example, WF_00000727 and WF_00000728 .  Again, a sentence at the maximum of the guideline range is not justified by these circumstances.  See 18 U.S.C. §3553 (a)(1).

Mr. Williams is a 54-year old with significant health issues, and if sentenced to 70 months, will be approximately 60 years old when he completes this sentence and even older when he completes any term of Supervised Release.  In addition, he is likely to be sentenced on certain of the pending state court cases after he is sentenced in the present case.  Particularly given any term of Supervised Release imposed, Mr. Williams is a modest risk to reoffend.

9

A sentence at the maximum of the guideline range is not justified by the risk of future offenses. See 18 U.S.C §3553 (a)(1)(C).

Mr. Williams has a significant criminal history, but this criminal history, particularly in recent decades, reveals no propensity for violence, no gun charges and no drug history, and he was not arrested on any new offenses for nearly five years prior to his arrest for the current offense. A sentence at the maximum of the guideline range is not justified by this criminal history.

Mr. Williams suggests that a sentence at the bottom of the guideline range, or below, is adequate to meet the requirements of 18 U.S.C. §3553. This would be a sentence of no more than 57 months assuming an Offense Level of 18, or a sentence of no more than 70 months assuming an Offense Level of 20.

Mr. Williams anticipates submitting a Sentencing Memorandum to the Court concerning his sentence. Mr. Williams will request a continuance of this sentencing hearing to facilitate his medical treatment, and to obtain further supporting information showing that loan proceeds were used in substantial part to pay the creditors mentioned in Paragraph 21 of the PSR.

Respectfully submitted this 15th day of June, 2017.

*/s/ Michael J. Gallagher*
MICHAEL J. GALLAGHER
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado  80202
Telephone:  (303) 892-9400
Mike.Gallagher@dgslaw.com

Attorney for Defendant Alan Alonzo Williams

## Certificate of Service

I certify that on June 15, 2017, I electronically filed the foregoing **Defendants' Response to Presentence report (Doc. #48)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Kathrine M. Aragon*
Kathrine Aragon
