IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    ALAN ALONZO WILLIAMS,

    Defendant.

---

## DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

---

    Defendant Williams submits this Supplemental Sentencing Memorandum to address (i) additional sentencing information provided in the Addendum to the Presentence Report submitted by Probation and (ii) the Government's Response to Defendant's Sentencing Statement. Mr. Williams also provides additional information relevant to sentencing obtained during the continuance of his sentencing date.

    Sentencing was continued, in part, to facilitate medical treatment of Mr. Williams' damaged knee and abdominal hernia needing surgical repair. Despite numerous requests for over a year that these medical conditions be addressed while Mr. Williams remains in local custody, and before sentencing, these serious medical conditions remain unaddressed. Mr. Williams reports on these issues and, if necessary, will seek the court's assistance to assure that these medical issues are promptly addressed.

4406665.1

## Addendum to Presentence Report

**Offense Category and Loss Amount.** Mr. Williams does not accept Probation's addition of two offense category points based on an intended loss calculation exceeding $1,500,000. *See* Addendum Objections 1 and 2.

Probation does not dispute the showing made by Mr. Williams in his Objections and Sentencing Memorandum that Mr. Williams used loan proceeds for legitimate business, and that his established personal use of loan proceeds principally concerned the purchase of two personal automobiles. As discussed in his Sentencing Memorandum, these facts conflict with the assumption that Mr. Williams purposely intended to cause a loss in the full amount of the last loan, which was not funded and caused no actual loss.

Mr. Williams showed in his Sentencing Memorandum that essentially all the proceeds of his last funded loan were used for legitimate business purposes. *See* Sentencing Memorandum at p. 13. Probation does not challenge this showing in the Addendum. Similarly, Mr. Williams showed in his sentencing memorandum that based solely on checks to third parties available in the discovery record at least $177,000 of the second loan funded, with $291,742 and subject to significant additional broker fees, was used for legitimate business. *See* Sentencing Memorandum at pp. 12 and 13. Further review of the available record shows tens of thousands of dollars in additional loan proceeds used for legitimate business purposes as shown by checks

to third parties not identified in Mr. Williams' sentencing memorandum.[1] This excludes other significant transactions with company suppliers, which also occurred, but concerning which records are not available from the involved bank.

To support its position on loss amount, Probation relies on the fact that only a small amount of loan proceeds was repaid. But, as noted in the Addendum, this small repayment was because Chase Bank had a security interest with priority over WebBank, the lender here, when Williams Vending failed. Probation provides no evidence that Mr. Williams planned or intended the failure of his family business.

**Criminal History Category.** As reflected at Objection Nos. 3 and 4 of the Addendum, Mr. Williams objected to Probation's calculation of a criminal history category VI based on the information available to him regarding two alleged prior offenses. Mr. Williams acknowledges, based on the new information provided by Probation, that his criminal history category is VI.

**Sentencing Recommendation.** Mr. Williams objects to the 87-month maximum guideline sentence recommended by Probation for the reasons previously stated. This recommended sentence exceeds the guideline range if the court concludes that the guideline loss is less than $1,500,000, and is unduly harsh if the guideline loss is determined to be just over $1,500,000, as Mr. Williams did not abscond with the proceeds of the funded loans, but rather

---

[1] *See* attached checks confirming substantial additional payments to business third-parties made with loan proceeds: Gateway Industrial Deposit (10/20/08) $11,716.66; Snack Truck Purchase (5/20/08) $9,500; Payment to Employee Erickson (5/13/08) $4,648.05; ANB Payroll (5/29/08) $1,700; HSB Account (6/09/08) $800.00; ANB Payroll (8/2/08) $1,515.12; Arapahoe County Clerk (6/25/08) $1,442.15; ANB Payroll (6/30/08) $1,600; Metro Printing (8/06/08) $1,347.85. Other examples are available in the record. Some amounts paid in cash to Ross Vending and others cannot be confirmed with available checks, but full payment to Ross Vending is acknowledged by its owner. *See* Sentencing Statement at pp. 7-9.

used them principally to fund a decades-old family business. Mr. Williams appreciates that the government recommends a mid-range guideline sentence, not a maximum guideline sentence.

Probation's sentencing recommendation also fails to address Mr. Williams' age and unaddressed medical conditions that make a lengthy sentence particularly onerous and unfair.

### Government Response to Defendant's Sentencing Statement

**Position on Guideline Loss.** Like Probation, the government does not challenge the showing made by Mr. Williams that loan proceeds were used to operate a long-standing business. Like Probation, the government focuses on the small amount of loan proceeds repaid, in part because of the priority lien held by Chase Bank. Based on these facts, the government argues that Mr. Williams must have purposefully intended to cause a loss over $1,500,000.

The cases cited by the government do not support the position that a defendant like Mr. Williams intended to cause a loss in the amount of all loan proceeds. On some facts, of course, a defendant might intend to abscond with all loan proceeds or otherwise harm the lender in the full amount of loan proceeds. But none of the cases relied on by the government concern the use of loan proceeds in a long-standing family business, the use of the great bulk of loan proceeds to run that business and an actual loss caused by the failure of that business and the existence of a superior lien. Under these circumstances, it is not correct or fair to assume that Mr. Williams intended to cause a loss of all loan proceeds, particularly when even with this assumption the guideline loss is at the very low range of the next guideline loss category.

**Government's Sentencing Position.** For the reasons stated in his Sentencing Memorandum, Mr. Williams seeks a sentence at or near the bottom of the applicable guideline

range or below. Although the government does not agree with this recommendation, Mr. Williams appreciates that the government seeks a sentence in the mid-guideline range rather than a maximum guideline sentence. The government's sentencing recommendation also fails to address Mr. Williams' age and unaddressed medical conditions that make a lengthy sentence particularly onerous and unfair.

### Additional Sentencing Information

Sentencing was continued to permit Mr. Williams to obtain medical care and gather certain additional information relevant to sentencing. Mr. Williams reports here on these issues.

**Health Issues.** Mr. Williams has a brace for his injured knee, and is using crutches pending further treatment. He has a hernia requiring surgery, but no surgery has yet occurred. Currently, he wears a hernia brace.

Mr. Williams has advised Bureau of Prisons (BOP) personnel on numerous occasions of the need to address his serious medical conditions promptly and before sentencing. This has not occurred. Most seriously, his abdominal hernia remains unaddressed over a year after that condition was diagnosed. Available medical records show that this hernia needs a surgical repair.

Counsel made several telephone calls to the BOP counselor concerning the failure to address Mr. Williams' medical conditions prior to sentencing. Despite numerous voice mails requesting a return call, no response was received. Attached as Exhibit B is correspondence sent to Mr. Williams' BOP counselor emphasizing the need to address his medical conditions prior to sentencing. No response was received.

Because no response was received from Mr. Williams' BOP counselor, counsel called and left messages for BOP medical and medical record personnel asking for information about when Mr. Williams' medical conditions would be addressed. At that time, counsel was referred to an attorney at BOP. This attorney has assisted counsel to obtain available records. Counsel will continue this discussion with BOP and report at sentencing on whether BOP will commit to provide the necessary medical care promptly.[2]

At the sentencing hearing, Mr. Williams will request that the court take Mr. Williams' unaddressed medical conditions into account when selecting a sentence, as his unaddressed medical conditions make incarceration substantially more difficult and punitive. If BOP does not commit to address these issues promptly, Mr. Williams will ask for an order directing BOP to promptly address these medical conditions and report to the court. *See United States v. Ramirez-Robles*, No. 06-cr-00485-MSK, 2007 WL 2021852 (D. Colo. July 11, 2007); *United States v. Bencomo-Chacon*, No. 07-cr-00095-MSK, 2007 WL 2021850, (D. Colo. July 11, 2007).

**Cognitive Behavior Modification Program**. Mr. Williams successfully completed this program. In addition, he completed a "Good Intentions/Bad Choices" program with R. Boyle.

**Additional Bank Records Regarding Use of Proceeds.** Pursuant to a subpoena, Wells Fargo produced very limited bank records regarding the activities of Williams Vending. These records have been shared with the government. Because of a record retention policy,

---

[2] Mr. William was seen by Dr. Arthur, an orthopedic surgeon, within the last six days. A medical release was provided but those records are not available as of the submission of this Supplement. Mr. Williams understands that Dr. Tillerson may treat his hernia. A medical release was provided to Dr. Tillerson, but those records are not yet available.

Wells Fargo could not produce checks showing the use of funds during the relevant period nearly ten years ago, which limits Mr. Williams' ability to confirm additional use of loan proceeds for legitimate business. Mr. Williams should not be prejudiced by the unavailability of these additional records.

During the period of this continuance, counsel provided a power of attorney to Financial Pacific Leasing and requested written confirmation of the oral representation made to counsel that this creditor was paid in full by Mr. Williams. *See* Defendant's Sentencing Statement at pp. 10-11. Despite numerous contacts, this written confirmation was not provided, as these communications were ignored. As noted, however, this fact is not challenged by the government.

Wherefore, Mr. Williams recommends a sentence as described in his Sentencing Memorandum, and requests the court's assistance to assure that his outstanding medical conditions are addressed.

Respectfully submitted this 8th day of November, 2017.

    /s/ *Michael J. Gallagher*
MICHAEL J. GALLAGHER
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 892-9400
Mike.Gallagher@dgslaw.com

*Attorney for Defendant Alan Alonzo Williams*

## CERTIFICATE OF SERVICE

I certify that on November 8, 2017, I electronically filed the foregoing DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Lynell E. Buchele*
Lynell E. Buchele