1      IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF COLORADO
2

3    Criminal Action No. 15-CR-00395-REB

     UNITED STATES OF AMERICA,
4
          Plaintiff,
5
     vs.
6
     ALAN ALONZO WILLIAMS,
7
          Defendant.
8
     _____
9
                   **REPORTER'S TRANSCRIPT**
10                  (Sentencing Hearing)

11   _____

12           Proceedings before the HONORABLE ROBERT E. BLACKBURN,

13   Judge, United States District Court for the District of

14   Colorado, commencing at 1:20 p.m., on the 19th day of June,

15   2019, in Courtroom A1001, United States Courthouse, Denver,

16   Colorado.

17

18

19

20

21

22

23

24   Proceeding Recorded by Mechanical Stenography, Transcription
        Produced via Computer by Tracy Weir, 901 19th Street,
25        Room A258, Denver, Colorado 80294, (303) 298-1207

**APPEARANCES**

1

2          REBECCA WEBER, Assistant U.S. Attorney, 1801

3   California Street, Suite 1600, Denver, Colorado 80202,

4   appearing for the plaintiff.

5          STEVEN JACOBSON, Attorney at Law, Collins & Rafik,

6   1881 9th Street, #315, Boulder, Colorado 80302, appearing for

7   the defendant.

8                    *   *   *   *   *

9                    **PROCEEDINGS**

10          (In open court at 1:20 p.m.)

11          *THE COURT:*  Good afternoon, and thank you.  Please be

12   seated.

13          Thank you.  As set, please open the record in case

14   15-cr-00395, United States of America versus Alan Alonzo

15   Williams, defendant.

16          The matter comes before the Court for hearing and

17   consideration first of the defendant's pro se motion to

18   terminate the extant attorney-client relationship in the form

19   of a letter to the Court filed as document 146, by the

20   defendant on June 3, 2019.

21          The Government appears by assistant United States

22   attorney, Rebecca Weber.  Good afternoon.

23          *MS. WEBER:*  Good afternoon, Your Honor.

24          *THE COURT:*  The defendant appears in person, together

25   with his counsel, Steven Jacobson.  Gentlemen, good afternoon.

1         *MR. JACOBSON:*  Good afternoon, Your Honor.

2         *THE DEFENDANT:*  Good afternoon.

3         *THE COURT:*  The author of our final and operative

4    presentence report, probation officer Kyla Hamilton, is also

5    present.  Good afternoon.

6         *MS. HAMILTON:*  Good afternoon.

7         *THE COURT:*  Very well.  Does the defendant request

8    that the courtroom be cleared of the Government and probation

9    officer so only those parties in interest will be heard

10   initially by the Court?

11        *THE DEFENDANT:*  Yes.  I want this ex parte, please,

12   Your Honor.

13        *THE COURT:*  Very well.  At this time I respectfully

14   request and require that the Government and the probation

15   officer take up a position outside of the courtroom until and

16   unless otherwise authorized and directed by the Court.

17        (Whereupon, statements by the Court and defendant and

18   counsel on behalf of defendant were made and reported but are

19   filed sealed under separate cover.)

20        *THE COURT:*  Please come in and be seated.

21        Very well.  The record should reflect that we resume

22   on the record together again with all parties in interest

23   previously identified by the Court and present.

24        As a result of the business conducted outside your

25   presence and hearing, I have respectfully denied the

1   defendant's motion to terminate the attorney-client

2   relationship between Mr. Jacobson and him.

3          Now, Mr. Williams, you wish to be heard further.

4          *THE DEFENDANT:*  All's I was mentioning to you was my

5   first counsel, Mr. -- I can't remember his name.  He removed

6   himself because of a conflict of interest.  I never even worked

7   with him a day.

8          *THE COURT:*  That doesn't change the fact --

9          *THE DEFENDANT:*  No.  I know.  I just --

10         *THE COURT:*  Don't interrupt me, please.

11         *THE DEFENDANT:*  I'm sorry.

12         *THE COURT:*  It doesn't change the fact that

13  numerically you're requesting the appointment of what is a

14  fourth attorney to represent you, a request I have respectfully

15  denied after hearing.  Very well.

16         Assuming that we are prepared to proceed to sentencing

17  hearing as stated and understood by the Court, I find and

18  conclude that as required by both federal statute and rule of

19  criminal procedure, the probation department has conducted a

20  presentence investigation and filed a presentence investigation

21  report, the operative and final version of which is document

22  117, filed December 6, 2018.

23         For our purposes of sentencing only, I define any

24  reference to the presentence report to include the presentence

25  investigation report, document 117, its concomitant sentencing

1    recommendation, document 117-1, and the second addendum to the

2    presentence report, document 118, as well as the first addendum

3    to the presentence report.

4           I have received, read, and reviewed carefully and

5    thoroughly the presentence report as I now define it.  Thus, I

6    inquire of the parties.  Has the Government, Ms. Weber?

7           *MS. WEBER:*  Yes, Your Honor.

8           *THE COURT:*  Are there corrections or additions of a

9    material or substantive nature not now of record?

10          *MS. WEBER:*  No, Your Honor.

11          *THE COURT:*  Mr. Jacobson, have you received and read

12   the presentence report as I define it?

13          *MR. JACOBSON:*  Yes, Your Honor.

14          *THE COURT:*  To your knowledge, has Mr. Williams done

15   likewise?

16          *MR. JACOBSON:*  Yes.

17          *THE COURT:*  Have you reviewed and discussed the

18   presentence report with him?

19          *MR. JACOBSON:*  We did and noted on the record what we

20   objected to, and I think actually prior counsel did most of

21   that.

22          *THE COURT:*  Are there any additions or corrections of

23   a material or substantive nature not now of record?

24          *MR. JACOBSON:*  Everything is of record, I believe.

25          *THE COURT:*  Also pending before the Court relative to

1    sentencing are the following documents, and I will defer my

2    rehearsal of those documents and their final information

3    pending the return of Ms. Roberson.

4           I digress to note that the addendum to the presentence

5    report now an integral part of the presentence report as I now

6    define it is identified as document 66 filed November 10, 2017.

7    These are the other pending sentencing-related documents.

8           The Government's Response to Presentence Report,

9    document 51, filed April 7, 2017.

10          The Government's Motion Pursuant to U.S.S.G. Section

11   3E1.1(b), document 52, filed April 7, 2017, which motion I will

12   grant at the propitious time.

13          The Defendant's Response to Presentence Report,

14   document 58, filed June 15, 2017, which also presents the

15   defendant's objections to the presentence report.

16          Defendant's Sentencing Memorandum and Motion for

17   Downward Departure and Variance, document 58, filed August 3,

18   2017.

19          The Government's Response to Defendant's Sentencing

20   Statement, document 67, filed November 2, 2017.

21          The Defendant's Supplemental Sentencing Memorandum,

22   document 68, filed November 8, 2017.

23          The Defendant's Supplemental Sentencing Information

24   Regarding Health Issues, document 69, filed November 13, 2017.

25          And the Defendant's Second Supplemental Sentencing

1    Memorandum and Request for Nonguideline Sentence, document 110,

2    filed September 7, 2018.

3           And the Government's Motion to Dismiss Counts,

4    document 53, filed April 7, 2017, which motion I also intend to

5    grant at the propitious time.

6           With respect to those additional sentencing-related

7    documents, I have received, read, and reviewed the documents

8    and all attachments, addendums, and exhibits carefully and

9    thoroughly.

10          With that introduction but introduction only,

11   Mr. Jacobson, I turn to you to inquire.  Do you wish to make a

12   statement or presentation on behalf of Mr. Williams, offer

13   additional information in mitigation of sentencing, comment

14   further on the various determinations of the probation officer,

15   and be heard on matters relating to the appropriate sentence?

16          *MR. JACOBSON:*  I do.

17          *THE COURT:*  And you may.

18          *MR. JACOBSON:*  I'm going to quickly put on the record

19   our arguments in support of why the Court should make a finding

20   for the lesser period with respect to the guideline.  How would

21   the Court like me to proceed on that?

22          *THE COURT:*  You need not do that.  I'm willing to

23   credit both sides with all reasons stated, arguments advanced,

24   and authorities cited in their existing papers.

25          *MR. JACOBSON:*  All right.  A couple sentences, then.

1   The things that could maybe be reemphasized is that

2   Mr. Williams' conduct -- this may be the bigger picture and I

3   don't know the wording in prior pleadings -- is the idea this

4   is an unusual case where usually the Court is presented with

5   cases involving fraud, conversion is obvious and, you know,

6   it's not a scenario where somebody would be in the position of

7   using the proceeds to maintain the assets.

8          As I think we have clearly established for the Court,

9   that's exactly what Mr. Williams did and all his behavior with

10  respect to the other loans, be it most of it or a significant

11  part of it or almost all of it all related to this purpose of

12  trying to maintain Williams.

13         Clearly under the case law that both parties agreed to

14  in the plea bargain, which was the standards from *U.S. v.*

15  *Manatau*, if I'm saying it correctly, the classic mens rea, what

16  his mental state was.  Even if he was reckless, that doesn't

17  show he had a specific intent to cause the loss.

18         I think the Court most likely agrees with that.  So

19  it's kind of -- probably no need to address that more.

20         I would note this is one of Mr. Williams' biggest

21  concerns throughout the case, and I think the Court saw this in

22  some of our ex-parte requests for subpoenas, is the idea that

23  what has been clearly the most frustrating thing for him is he,

24  in his heart, knows he tried, to whatever his capacity was, to

25  make Williams Vending make it.  He would give anything to wish

1    he would have gotten accurate bank records that had the backs

2    of the cashier's checks on those because it would have shown

3    who deposited it and what it paid for.  He did that and

4    requested me to do that and get subpoenas for those repeatedly

5    even though they didn't appear to exist knowing that they would

6    go to the Court, the Government.  That says something about his

7    state of mind and his heartfelt belief that he at the time was

8    trying to do the right thing.

9            Most everything else I have to say deals with medical.

10   If it's the Court's plan to not consider medical, we would note

11   medical is a basis for variance and would ask the Court to

12   weigh what we've given you with respect to justifying a

13   variance, and on behalf of Mr. Williams if the Court intends

14   not to weigh that, we'd note our objection.

15           Given some things the Court has said previously, I

16   don't know that it assists the Court more for me to make other

17   argument.  We'd ask the Court to -- of course, what range the

18   Court ends up with, there would be a number of justifications

19   that if the Court does decide not to vary and, obviously, not

20   to depart, that still his medical circumstances are real.  He

21   is in pain.  He needs a knee transplant.  There's no question

22   about that.  He will be suffering as long as he's incarcerated.

23   We ask the Court to weigh that with a guideline range to

24   consider without varying, without departing.

25           *THE COURT:*  Counsel, thank you.

1          Mr. Williams, before I impose any sentence on you this

2     afternoon, you first have the legal right and opportunity, if

3     you choose, to make your own statement or presentation to this

4     Court, and to offer any additional information in mitigation,

5     lessening of your sentence that you may have.  Do you wish to

6     make any such statement or offer any such additional

7     information in mitigation?

8          *THE DEFENDANT:*  Yes.  I'll make a statement, Your

9     Honor.

10         *THE COURT:*  Before you make a statement, please face

11    me and raise your right hand to be sworn.  Thank you.

12         (Defendant sworn.)

13         *THE DEFENDANT:*  Yes, Your Honor.

14         *THE COURT:*  Thank you.

15         Mr. Williams, now under oath, please, what is it you

16    would tell the Court?

17         *THE DEFENDANT:*  First, I have to apologize to the

18    Court, people of Colorado, district attorney, IRS agent over

19    there, and everybody that's had to deal with this case.  It's

20    not none of their fault I'm here.  It's my fault that I'm here

21    because I posed to think I was doing something to make my

22    family proud of me that didn't go that way.

23         I believe I've got a great suffering because I've been

24    put in this medical condition where I feel like I'm an old man

25    now.  It's part of my punishment, let alone the sentence.

1  That's something I have to deal with.  Believe me.  I don't
2  want to go through the federal situation again.  It's been
3  trying enough.

4       I owe it to my family when I came here.  I knew if
5  everyone left my side, I knew that's what it would be because I
6  made this mistake.  I apologize to everybody by taking up this
7  time.  I apologize to Mr. Jacobson because on his various
8  attempts he has, you know, made it a point to try to get along
9  with me and make everything go the direction we needed it to
10  go.

11       I ache.  That's not going to change.  I believe in my
12  heart, besides a sentence, that's my punishment for going
13  through a lot of this because before I first came here, I was
14  pretty much a healthy man until all these things happened.

15       I know my family will forgive me, but I hope, you
16  know, they're always there, and I have to move one step at a
17  time.  I know I won't come back to this again.  That much I can
18  say.  I want to be well.

19       I've been on crutches for the last two and a half
20  years.  I've haven't even been on an exercise bike because of
21  everything that's happened to me.

22       I apologize to every one of you all.  I apologize for
23  the actions that have taken place, and I apologize to the
24  victim that's been a friend of mine that was on these loans
25  with us with our company, and I apologize to everybody

1    involved.  Thank you.

2        *THE COURT:*  You're welcome.

3        Ms. Weber, does the Government wish to be heard on

4    matters material to the imposition of sentence?

5        *MS. WEBER:*  Your Honor, I wanted the Court to note I

6    filed one final sentencing statement, 151, that summarized

7    earlier arguments and responded to the argument concerning a

8    departure and variance on medical issues.

9        As long as the Court has considered document 151, I

10   don't believe I have anything to add.

11       *THE COURT:*  I have.  If I inadvertently omitted it

12   from enumeration of sentencing-related documents otherwise

13   pending, I'm aware of it, I've received it, read it, and

14   reviewed it.

15       *MS. WEBER:*  Then I have nothing further, Your Honor.

16       *THE COURT:*  Based on this record considered as a

17   whole, I make the following sentencing statement under 18

18   U.S.C. Section 3553(c).

19       After extremely careful consideration of all relevant

20   matters of fact and law viewed through the unique lens which is

21   the federal sentencing statute, I now enter essentially the

22   following findings of fact, conclusions of law, judgment of

23   conviction, sentence, and orders commencing with my findings

24   and conclusions.

25       The Plea Agreement of the parties here satisfies the

1 | standards for acceptance of Plea Agreements under Guideline
2 | Section 6B1.2.

3 |     The defendant filed objections to the presentence
4 | report.  They are essentially addressed in the defendant's
5 | response to presentence report, document 55, and defendant's
6 | sentencing memorandum and motion for downward departure and
7 | variance, document 58.

8 |     Many of the objections have been addressed by the
9 | probation department appropriately resulting in either
10 | amendment or correction to the presentence report, obviating
11 | the necessity for further judicial analysis and ruling.

12 |     The two objections truly of a substantive matter had
13 | to do with assessing criminal history points to a conviction
14 | that the defendant argued was related to other convictions and
15 | sentences.

16 |     The probation department addressed that and has the
17 | better of that argument, which is essentially moot because the
18 | defendant withdrew his objections to his criminal history
19 | category computation.

20 |     Therefore, no further ruling is necessary.

21 |     However, the defendant objected and continues to
22 | object to the offense level calculations having to do with the
23 | amount of loss as discussed in the presentence report, document
24 | 117, on page 11, at page 49.

25 |     The probation officer, with the support of the

1    Government, determined that the loss, the intended loss, was

2    approximately $1,696,828.82 and that accordingly under

3    Guideline Section 2B1.1(b)(1)(I), the offense level should be

4    16.

5        The defendant objected survigrously.  I'm not going to

6    belabor the point, but I have read everything submitted.  I

7    have reviewed the statute.  I have reviewed the guidelines.  I

8    have reviewed the application notes and commentary, and I find

9    myself debating with myself, and what that tells me is that I

10   have not yet found that the Government sustained its burden of

11   proof and persuasion by a preponderance of the evidence.

12       Therefore, the objection of the defendant is

13   sustained.  Instead, at paragraph 49 I find the actual loss to

14   be $1,146,828.28.  Thus, under Guideline Section

15   2B1.1(b)(1)(H), the offense level should be 14.  That revision,

16   of course, ripples throughout the balance of these sentencing

17   calculations.

18       First, on page 12 at paragraph 54, the adjusted

19   offense level subtotal is 21.  At paragraph 58, the total

20   offense level is 17.  The presentence report shall be amended

21   and corrected accordingly.

22       With those rulings on the objections of the defendant,

23   the Court otherwise accepts the presentence report as an

24   integral part of its findings of fact.

25       Here, the November 2018 edition of the United States

1   Sentencing Commission Guidelines Manual applies; thus, I have

2   used that edition of advisory sentencing guidelines as the

3   starting point and the initial benchmark for my own sentencing

4   analysis, and although, once again, I have given respectful

5   consideration to those advisory sentencing guidelines, once

6   again I have not presumed the resulting advisory sentencing

7   guideline ranges to be reasonable per se.

8           Here, identification, consideration, and application

9   of all relevant provisions of the sentencing guidelines to this

10  offense, this offender, and all relevant conduct produces a

11  total adjusted advisory offense level of 18, not 17, which

12  causes me to digress to correct my arithmetic applied in the

13  presentence report at paragraph 58.  I misspoke and said 17.

14  It should be 18.

15          Additionally, consideration of those relevant

16  provisions produces a total adjusted criminal history category

17  of VI predicated on the imposition of 14 criminal history

18  points.

19          In turn, the tentative advisory sentencing guideline

20  ranges are as follows:

21          Imprisonment, 57 to 71 months.

22          Supervised release, two to five years.

23          Fines, if imposed, ranging from $7,500 to $1 million.

24          At this time, it appears a propitious time to declare

25  a reasonable recess for the benefit of my staff.

1          Therefore, we shall be in recess for 15 minutes, or

2     until 2:45 p.m., as measured by the courtroom clock at the rear

3     of the courtroom.

4          We are now in recess.

5       (Recess taken from 2:26 p.m. to 2:50 p.m.)

6          *THE COURT:*  Thank you.  Again, please be seated.

7          Again, we resume on the record in open court

8     continuing sentencing hearing in 15-cr-00395.

9          I digress.  During the recess the probation officer

10    brought to the attention of my clerk who, in turn, brought to

11    my intention that with a revised total offense level of 18, the

12    fine level is not $7,500 to $1 million.  Instead, it is $6,000

13    to $1 million.  So, Ms. Hamilton, thank you.

14         I resume the entry of my sentencing statement.

15         Next, the defendant filed a paper entitled

16    "Defendant's Sentencing Memorandum and Motion for Downward

17    Departure and Variance," document 58, which I have considered

18    carefully.

19         Although the motion for downward departure did not

20    identify any specific provisions of the sentencing guidelines

21    that would speak to a downward departure, I took the liberty

22    sua sponte of reviewing possible grounds for downward

23    departure, including Guideline Section 5H1.4, physical

24    condition.  I considered that provision of the guidelines

25    carefully.

1        To the extent there is a formal request for downward

2    departure based on physical condition, I acknowledge that I

3    have jurisdiction, authority, and discretion to depart downward

4    under that guideline but decline to exercise my discretion

5    given the totality of relevant circumstances of the defendant.

6        Next, I considered carefully the sentencing factors

7    and needs of the federal sentencing statute codified at 18

8    U.S.C. Section 3553(a)(1) through (7) and made an

9    individualized assessment based on the facts presented.

10       Simultaneously, I considered the defendant's various

11   motions and requests for a variance or imposition of a

12   statutory sentence.

13       Those requests were contained within defendant's

14   sentencing memorandum and motion for downward departure and

15   variance, document 58.  They were effectively reiterated, at

16   least to some extent, in defendant's supplemental sentencing

17   memorandum, document 68, and articulated again in defendant's

18   second supplemental sentencing memorandum and request for

19   nonguideline sentence in document 110.

20       Each of those has been received, read, and reviewed

21   carefully and thoroughly by me.

22       The nature and circumstances of the offense of

23   conviction are as reported both by the parties in their

24   stipulation of facts in their Plea Agreement, document 44, and

25   as presented in the presentence investigation report,

1    document 117, in part A, the offense, beginning with the

2    offense conduct which begins essentially at paragraph 7 and

3    continues thereafter.

4          This was a serious offense in the way it was planned

5    and perpetrated, and in terms of the victims affected and the

6    amount of actual loss to those victims.

7          Of course, actual loss is not affected by the intent

8    of Mr. Williams in fraudulently obtaining those loans and the

9    manner in which they were expended.  It's clear that some of

10   the expenditures were for legitimate business purposes; others

11   were not.  That is absolutely irrelevant to the commission of

12   the crime and to the actual loss resulting from the crime.

13         Here, that actual loss is in the demonstrated amount

14   of $1,146,828.28.

15         When I turn to the history and characteristics of

16   Mr. Williams, I treat him as the unique man he is.  His history

17   and characteristics are portrayed accurately both in the

18   presentence investigation report; again, document 117,

19   beginning on page 2 under identifying data, continuing in part

20   B, defendant's criminal history, and concluding in part C,

21   offender characteristics.

22         Mr. Williams is also presented and portrayed in his

23   various sentencing-related papers, including his papers

24   addressing downward departure and/or variance.

25         Mr. Williams is trapped in a way by his criminal

1  history and his criminal record.  It's, frankly, grossly

2  understated.

3        The probation officer captured it in the sentencing

4  recommendation, document 117-1, on page R-4, and I quote,

5  "Since age 19 the defendant has sustained 15 felony convictions

6  in 12 different state court matters."  His felony convictions

7  are for offenses including robbery, forgery, criminal attempt

8  to commit theft, or burglary, theft, aggravated motor vehicle

9  theft, and identity theft.  He has received a prison sentence

10  on numerous occasions with the longest being for 15 years.

11        This is one of the most extensive criminal records

12  that I've seen on the bench.  Mr. Williams gets a break because

13  for 7 of those 15 felony convictions, no criminal history

14  points were assessed, either due to the age of the conviction

15  or other vagaries inherent to the sentencing guidelines.

16        But to the extent that his criminal history is

17  understated, his threat to the public, the need for deterrence,

18  and the need for avoidance of unwarranted sentencing

19  disparities is understated commensurately.

20        For all practical purposes, Mr. Williams, regardless

21  of how he sees himself and his motivations, is a career and

22  habitual offender who presents a clear, present, and ongoing

23  threat to the public, especially our financial institutions.

24        Troubling here, there are no special or compelling

25  mitigating circumstances.  There's no outstanding service to

1    country or community.  There's no dysfunctional, abusive, or

2    chaotic childhood, and there's certainly no overstated criminal

3    history.

4         Various judicial interventions, including a 15-year

5    state court prison sentence, have failed to deter or reform

6    Mr. Williams.  His philosophy and lifestyle evince an abject

7    disrespect for our laws and the rights of our citizens.

8         Another troubling and exacerbating, aggravating

9    circumstance is his continued exploitation of a hapless female

10   drug addict to execute his scheme, and that continued

11   exploitation is unconscionable.

12        All of these circumstances constrain me to conclude

13   that a within guideline range as now constructed would fail to

14   satisfy the requirements and needs of the federal sentencing

15   statute; thus, sua sponte, I will vary upward two offense

16   levels to offense level 20 where the advisory sentencing

17   guideline range for imprisonment is 70 to 87 months and impose

18   a sentence of 84 months.

19        I find that a sentence of seven years is closer to

20   being sufficient, but not greater than necessary, to achieve

21   and vindicate the important requirements and needs of the

22   federal sentencing statute.

23        Additionally, even if only parenthetically, in my long

24   experience a sentence of seven years for a 16th felony

25   conviction where the actual loss approaches $1.5 million is

1   certainly not unreasonable.

2         In the state court system in Colorado, Mr. Williams

3   would easily be approaching habitual criminal territory.

4         I also find simultaneously that his reasons stated and

5   arguments presented in favor of a downward variance or a

6   downward departure would abjectly fail to adequately address

7   the needs and requirements of the federal sentencing statute

8   and, thus, at the propitious time I will respectfully deny his

9   various or reiterated motions for a variance or statutory

10  sentence.

11        Ironically, Mr. Williams is essentially broke,

12  financially unable presently or prospectively to pay a fine or

13  interest on restitution.  Thus, no fine will be imposed, and

14  interest on restitution will be waived.

15        Here, the Mandatory Victim Restitution Act of 1996

16  applies, and as required, I must and will order restitution for

17  the two victims identified in the sentencing recommendation,

18  document 117-1 on page R-1 under the heading of "Restitution."

19        As a proximate result of Mr. Williams' criminal

20  conduct in committing the crime of conviction, WebBank of Salt

21  Lake City, Utah, has suffered pecuniary losses totaling

22  $936,828.28, and Wells Fargo Bank of Denver, Colorado has

23  suffered pecuniary losses totaling $210,000, making total

24  restitution of $1,146,828.28.

25        Restitution will be ordered due and payable to the

1  clerk of the court in full immediately, failing which in

2  monthly installments of not less than 10% of the defendant's

3  monthly gross income as determined periodically by his

4  probation officer.

5       That in formulating this payment schedule, I

6  considered and applied the factors prescribed and enumerated at

7  18 U.S.C. Section 3664(f)(2)(A) through (C).

8       The defendant has not objected to the proposed

9  conditions of supervision identified in the sentencing

10 recommendation; again, document 117-1, on pages R-2 and R-3.

11      I address sua sponte the proposed and recommended

12 special conditions which appear on pages R-2 and R-3 in

13 paragraphs 1 through 8.

14      My analysis occurs in the context of 18 U.S.C. Section

15 3583(c) and (d) as codified and construed and Guideline Section

16 5D1.3.

17      In turn, as required by Section 3583(c), I have

18 considered carefully the factors to be considered under

19 18 U.S.C. Section 3553(a)(1), (a)(2)(B) through (D), and (a)(4)

20 through (7).

21      Based on that analysis, I conclude under Section

22 3583(d) and Guideline Section 5D1.3(b) that each recommended

23 special condition of supervision is, one, reasonably related to

24 the nature and circumstances of this offense and the history

25 and character of Mr. Williams to the need for each condition to

1   afford adequate deterrence, protect the public from further

2   crimes of the defendant, and provide the defendant during

3   supervised release with needed educational or vocational

4   training, medical care, or other correctional treatment in the

5   most effective manner.

6           None involves any greater deprivation of liberty to

7   Mr. Williams than is reasonably necessary for those foregoing

8   statutory purposes, and each is consistent with the pertinent

9   policy statements issued by the Sentencing Commission.

10          Thus, each and all special conditions will be ordered.

11          That the Court will recommend that the Bureau of

12  Prisons designate Mr. Williams to an official detention

13  facility to facilitate the reasonable and necessary medical

14  treatment, therapy, counseling, and testing commensurate with

15  his individual circumstances.

16          Therefore, it is ordered as follows:

17          That the Plea Agreement of the parties in documents 44

18  and 45 in CM/ECF are approved formally.

19          That the Government's motion pursuant to Guideline

20  Section 3E1.1(b), document 52, is granted.

21          That the Government's motion to dismiss counts,

22  document 53, is granted.

23          That, accordingly, Counts 2, 3, and 4 of the operative

24  Indictment are now dismissed with prejudice.

25          That the defendant's motion for downward departure, if

1    any, in document 58, is denied.

2            That the defendant's motion for a variance or

3    statutory sentence as requested or reiterated in document 58,

4    document 68, and document 110 is denied.

5            That judgment of conviction shall now enter on Count 1

6    of the Indictment.

7            That it is the judgment and sentence of this Court

8    that the defendant, Alan Alonzo Williams, is committed to the

9    custody of the Bureau of Prisons to be imprisoned for a term of

10   84 months.

11           That on release from imprisonment, Mr. Williams shall

12   be placed on supervised release for a term of five years.

13           That within 72 hours of his release from imprisonment

14   and the custody of the Bureau of Prisons, Mr. Williams shall

15   report to the United States probation department and office

16   within the federal district in which he is released.

17           That while on supervised release, Mr. Williams shall

18   comply with the mandatory, standard, and special conditions of

19   supervised release identified in the sentencing recommendation,

20   document 117-1, on pages R-2 and R-3.

21           That no fine is imposed.

22           That Mr. Williams shall pay forthwith a special

23   victim's fund assessment of $100.

24           That Mr. Williams shall pay restitution in the benefit

25   and in the amounts of the victims indicated in the sentencing

1    recommendation, document 117-1 on page R-1, with restitution to

2    be paid to the clerk of the court in full immediately, failing

3    which in monthly installments of not less than 10% of the

4    defendant's monthly gross income as determined periodically by

5    his probation officer.

6            Provided furthermore, that interest on restitution is

7    waived.

8            That the Court recommends that the Bureau of Prisons

9    designate Mr. Williams to an official detention facility that

10   will facilitate his receipt of reasonable and necessary medical

11   evaluation, treatment, therapy, and testing commensurate with

12   his individual needs and circumstances.

13           That presentence confinement shall be determined by

14   the Bureau of Prisons as required by federal law.

15           Lastly, that Mr. Williams is remanded to the custody

16   of the United States Marshal for imposition and execution of

17   this sentence.

18           Mr. Jacobson, I see you poised on the front of your

19   seat.  What's on your mind?

20           *MR. JACOBSON:*  Two matters.  I know the Court has made

21   a recommendation with respect to his custody and where he will

22   be assigned.

23           Mr. Williams would ask the Court to change that.

24   Mr. Williams would ask the Court to instead make a

25   recommendation that he be assigned to a local facility if the

1    Court can do that, which I believe the Court can; specifically,

2    FCI.  Let me explain why.  He has a number of state cases he

3    needs resolved.  If he is placed far away, it will take forever

4    to get them resolved.

5         He has a medical history with this same facility.

6    Given what one would think based on the medical records we've

7    been provided, although it's a difficult relationship there, he

8    won't have to go -- if he stays at FCI coming from FDC, he

9    would be in a position of already being on the list.  He's

10   got -- I know the Court didn't want to -- is not weighing his

11   circumstance as being relevant with respect to his hernia and

12   treatment for it.  It's an ongoing thing in his mind.  If he's

13   local, he'll be able to access the same treatment providers,

14   not the one at the facility but outside.  Lastly, his family.

15        We ask the Court to change its recommendation.  A

16   different new medical facility for him than FCI would actually

17   be worse in his mind.

18             *THE COURT:*  Any objection by the Government?

19             *MS. WEBER:*  No, Your Honor.

20             *THE COURT:*  The request is granted.  My sentencing

21   orders are amended to provide that this Court recommends that

22   the Bureau of Prisons designate Mr. Williams to its official

23   detention facility in FCI Englewood, ironically located in

24   Littleton, Colorado.

25             Next.

1      MR. JACOBSON:  This is to make a clean record given

2  the Court's ruling.  Mr. Williams would take the position that

3  the Court has not made an adequate weighing or considered all

4  of his history and factors, most specifically but not limited

5  to, his medical condition.

6      The Court made another record about what the Court is

7  willing to consider in the sentence of how it may be considered

8  in support not necessarily of a departure but with respect to a

9  variance.

10      THE COURT:  Very well.  Well, if I have not made it

11  pellucid, I have considered for a substantial length of time

12  the medical condition and concomitant treatment requirements of

13  Mr. Williams.  I can tell you that I've seen much worse.  I can

14  tell you in these circumstances, considering all that I have,

15  they simply do not warrant either a departure or a variance.

16  That is my specific finding and conclusion.

17      Mr. Williams, to you.  During your Change of Plea

18  Hearing on January 12, 2017, over two years ago, as you may or

19  may not recall, I discussed with you in some detail the

20  provisions of your Plea Agreement in document 44 addressing

21  your waiver of your right to appeal just this sentence and the

22  manner in which I determined just this sentence to a higher

23  court.

24      It appears that you have voluntarily and knowingly

25  waived your right to appeal this sentence.

1    However, if I'm wrong, please be advised as follows.

2    If you wish to appeal your sentence, please understand and know

3    that your notice of appeal must be filed with the clerk of the

4    district court, not the Court of Appeals, within 14 days of the

5    entry of formal and final judgment, or any right of appeal will

6    be lost.  Forfeited is the language used by the Tenth Circuit.

7    If you are unable to afford the costs of an appeal,

8    you have the right to request permission as a poor person, or

9    as we all say, in forma pauperis.

10    You have the right to be represented during any such

11    appeal by an attorney.  If you want one but cannot retain one,

12    the Court will appoint appellate legal counsel for you

13    appropriately at the expense of the Government.

14    Lastly, at your request, the clerk of the court shall

15    prepare and file immediately on the entry of final and formal

16    judgment a notice of appeal on your behalf.

17    Very well.  Ms. Hamilton -- Mr. Jacobson.

18    *MR. JACOBSON:*  It's my understanding -- we've had some

19    communication difficulties, but Mr. Williams previously told me

20    and I believe would persist in wanting to file an appeal.  So

21    it would be my intent to do that.  Obviously, that's an

22    independent decision on his part.

23    I'm sure part of that would be not just the record I

24    made but also with respect to objecting to the Court's decision

25    to depart upwards.

1          I will get that done.  I will also ask that the

2     appellate court appoint appellate counsel to represent him.

3          *THE COURT:*  Duly noted, but I suspect primarily for

4     the benefit of Mr. Williams, not the Court.

5          Ms. Hamilton.

6          *MS. HAMILTON:*  Your Honor, yes.  I would like to

7     clarify two things for the judgment, if I may.  When the Court

8     was addressing the special conditions that were recommended, I

9     believe it was noted that there was eight paragraphs.  Just to

10    clarify, I recommended nine special conditions.  I wanted to

11    clarify that all of them recommended are ordered.

12         *THE COURT:*  Be it clarified.  All, apparently, nine

13    recommended special conditions of supervision are valid and

14    ordered.

15         *MS. HAMILTON:*  Thank you.

16         Lastly, Your Honor, at page R-1 of document 117-1, the

17    last paragraph, there's an issue of disbursement to victims.

18    Instead of reading to the Court -- if the Court would like to

19    review that and determine if disbursement should be to WebBank

20    prior to Wells Fargo because Wells Fargo provided compensation,

21    or if it should be prorated to the victims as received.

22         *THE COURT:*  Prorated, if you would, please.

23         *MS. HAMILTON:*  Very well.

24         *THE COURT:*  That concludes the sentencing hearing and

25    these proceedings in this case.  Please close the record with

1    my thanks to the deputy United States Marshals who have become

2    familiar over today.  Men, thank you once again.

3           Please close the record.  The Court is in recess.

4           Madam Clerk, please declare the recess of the Court.

5           (Court stood in recess at 3:25 p.m.)

6                        * * * * *

7                    **REPORTER'S CERTIFICATE**

8       I certify that the foregoing is a correct transcript from

9    the record of proceedings in the above-entitled matter.  Dated

10   at Denver, Colorado, this 6th day of August, 2019.

11

12                                    *S/Tracy Weir*
                                     Tracy Weir
13

14

15

16

17

18

19

20

21

22

23

24

25