APPEAL,TERMED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CRIMINAL DOCKET FOR CASE #: <u>1:15–cr–00395–REB</u> All Defendants

Case title: USA v. Williams

Date Filed: 10/07/2015
Date Terminated: 06/21/2019

Assigned to: Judge Robert E. Blackburn

Appeals court case number: 19–1229 USCA

**<u>Defendant (1)</u>**

**Alan Alonzo Williams**
*TERMINATED: 06/21/2019*

represented by

**Alan Alonzo Williams**
#43473–013
ENGLEWOOD
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
9595 WEST QUINCY AVENUE
LITTLETON, CO 80123
PRO SE

**Keith Bradley**
Squire Patton Boggs (US) LLP–Denver
1801 California Street
Suite 4900
Denver, CO 80202
303–894–6156
Fax: 303–894–9239
Email: keith.bradley@squirepb.com
*ATTORNEY TO BE NOTICED*
*Designation: 10th Circuit Special Designation*

**Matthew C. Golla**
Office of the Federal Public Defender–Denver
633 Seventeenth Street
Suite 1000
Denver, CO 80202
303–294–7002
Fax: 303–294–1192
Email: Matt_Golla@fd.org
*TERMINATED: 07/19/2016*
*Designation: Public Defender or Community
Defender Appointment*

**Michael John Gallagher**
Davis Graham & Stubbs, LLP–Denver

1550 17th Street
Suite 500
Denver, CO 80202
303–892–9400
Fax: 303–893–1379
Email: mike.gallagher@dgslaw.com
*TERMINATED: 11/15/2017*
*Designation: CJA Appointment*

**Steven K. Jacobson**
Collins & Rafik
1881 9th Street
#315
Boulder, CO 80302
303–444–9292
Fax: 303–447–0200
Email: steve@rafiklaw.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| BANK FRAUD (1) | 84 months imprisonment. 5 years supervised release. $100 special assessment. $1,146,828.28 restitution. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| BANK FRAUD (2–4) | Dismissed. |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

**Plaintiff**

| **USA** | represented by | **Linda S. Kaufman** |
| --- | --- | --- |
| | | U.S. Attorney's Office–Denver |
| | | 1801 California Street |
| | | Suite 1600 |
| | | Denver, CO 80202 |

303–454–0100
Fax: 454–0402
Email: Linda.Kaufman@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Julia K. Martinez**
U.S. Attorney's Office–Denver
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Email: julia.martinez@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Rebecca Susan Weber**
U.S. Attorney's Office–Denver
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0332
Email: Rebecca.Weber@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 10/07/2015 | 1 | 9 | INDICTMENT as to Alan Alonzo Williams (1) count(s) 1–4. (Attachments: # 1 Criminal Information Sheet) (mlace, ) (Entered: 10/08/2015) |
| 10/07/2015 | 3 | 20 | Arrest Warrant Issued in case as to Alan Alonzo Williams. (mlace, ) (Entered: 10/08/2015) |
| 03/22/2016 | 8 | 21 | NOTICE OF ATTORNEY APPEARANCE: Matthew C. Golla appearing for Alan Alonzo Williams Attorney Matthew C. Golla added to party Alan Alonzo Williams (pty:dft) (Golla, Matthew) (Entered: 03/22/2016) |
| 03/23/2016 | 10 | 23 | Discovery Conference Memorandum and ORDER: Estimated Trial Time – 4 days as to Alan Alonzo Williams by Magistrate Judge Kathleen M. Tafoya on 3/23/16. (sgrim) (Entered: 03/23/2016) |
| 03/23/2016 | 11 | 33 | ORDER OF DETENTION as to Alan Alonzo Williams by Magistrate Judge Kathleen M. Tafoya on 3/23/16. (sgrim) (Entered: 03/23/2016) |
| 03/23/2016 | 12 | 37 | TRIAL PREPARATION CONFERENCE ORDER as to Alan Alonzo Williams. That all non– CJA1 pretrial motions shall be filed by April 7, 2015; any pretrial motion that the court determines should be set for hearing shall be set for hearing during a telephonic (non–appearance) setting conference set for 4/22/2016 10:00 AM ; Jury Trial set for 5/23/2016 08:30 AM in Courtroom A1002 before Judge Robert E. Blackburn. That the court reserves four (4) days for trial; Trial Preparation Conference set for 5/20/2016 at 02:00 PM in Courtroom A1001 before Judge Robert E. Blackburn, by Judge Robert E. |

| | | | |
|---|---|---|---|
| | | | Blackburn on 3/23/2016. (evana, ) (Entered: 03/23/2016) |
| 03/24/2016 | 14 | 44 | MOTION to Disclose Grand Jury Material to Defendant by USA as to Alan Alonzo Williams. (Attachments: # 1 Proposed Order (PDF Only))(Kaufman, Linda) (Entered: 03/24/2016) |
| 03/24/2016 | 15 | 49 | NOTICE OF ATTORNEY APPEARANCE: Matthew C. Golla *(amended to reflect correct contact information)* appearing for Alan Alonzo Williams (Golla, Matthew) (Entered: 03/24/2016) |
| 03/25/2016 | 16 | 51 | ORDER Granting 14 Plaintiff's Motion To Disclose Matters Occuring [sic] BeforeGrand Jury to Defendant as to Alan Alonzo Williams (1). Signed by Judge Robert E. Blackburn on 3/25/2016. (cmira) (Entered: 03/25/2016) |
| 04/07/2016 | 18 | 53 | Unopposed MOTION to Continue *Pretrial Motions Deadlines* by Alan Alonzo Williams. (Golla, Matthew) (Entered: 04/07/2016) |
| 04/15/2016 | 20 | 56 | Unopposed MOTION to Exclude *120 Days from Speedy Trial Act* by Alan Alonzo Williams. (Golla, Matthew) (Entered: 04/15/2016) |
| 04/25/2016 | 21 | 63 | MINUTE ORDER Setting Hearing on Motion as to Alan Alonzo Williams. 20 Defendant's Unopposed Motion for an Exclusion of 120 Days from the Speedy Trial Act; Motion Hearing set for 5/6/2016 02:00 PM in Courtroom A1001 before Judge Robert E. Blackburn. By Judge Robert E. Blackburn on 4/25/16. (kfinn) (Entered: 04/25/2016) |
| 05/02/2016 | 22 | 64 | MINUTE ORDER as to Alan Alonzo Williams re 20 Unopposed MOTION to Exclude *120 Days from Speedy Trial Act* filed by Alan Alonzo Williams by Judge Robert E. Blackburn on 5/2/16. Motion Hearing reset for 5/6/16 at 10:30 AM in Courtroom A1001 before Judge Robert E. Blackburn. (rebsec) (Entered: 05/02/2016) |
| 05/06/2016 | 23 | 65 | MINUTE ENTRY for Motions Hearing held before Judge Robert E. Blackburn as to Alan Alonzo Williams on 5/6/2016. Granting 20 Defendant's Unopposed Motion for an Exclusion of 120 Days from the Speedy Trial Act. The time from and including today through and including October 3, 2016 is excluded from the time for a speedy trial. Any non–CJA pretrial motions shall be filed by August 8, 2016, and any corresponding responses shall be filed by August 26, 2016. A further Status Conference set for 9/22/2016 01:15 PM in Courtroom A1001 before Judge Robert E. Blackburn. Defendant remanded. Hearing concluded. Court Reporter: Gwen Daniel. (kfinn) (Entered: 05/06/2016) |
| 07/15/2016 | 24 | 67 | MOTION to Withdraw as Attorney *and to Appoint New Counsel from the Criminal Justice Act Panel* by Matthew C. Golla by Alan Alonzo Williams. (Golla, Matthew) (Entered: 07/15/2016) |
| 07/19/2016 | 26 | 70 | MINUTE ORDER; granting 24 Motion to Withdraw as Attorney. Matthew C. Golla withdrawn from case as to Alan Alonzo Williams (1). It is FURTHER ORDERED that substitute counsel from the CJA Panel is appointed to represent Defendant Alan Alonzo Williams, by Magistrate Judge Michael J. Watanabe on 7/19/16. (morti, ) (Entered: 07/19/2016) |
| 07/26/2016 | 27 | 71 | NOTICE OF ATTORNEY APPEARANCE: Michael John Gallagher appearing for Alan Alonzo Williams Attorney Michael John Gallagher added to party Alan Alonzo Williams (pty:dft) (Gallagher, Michael) (Entered: |

| | | | |
|---|---|---|---|
| | | | 07/26/2016) |
| 08/08/2016 | 28 | 73 | Unopposed MOTION for Extension of Time to File *Pre−Trial Motions Deadlines and Exclude Time Under the Speedy Trial Act* by Alan Alonzo Williams. (Attachments: # 1 Proposed Order (PDF Only) Defendant's Unopposed Motion to Extend Pre−Trial Motions Deadlines and Exclude Time Under the Speedy Trial Act)(Gallagher, Michael) (Entered: 08/08/2016) |
| 08/19/2016 | 29 | 78 | MINUTE ORDER as to Alan Alonzo Williams re 28 Unopposed MOTION for Extension of Time to File *Pre−Trial Motions Deadlines and Exclude Time Under the Speedy Trial Act* filed by Alan Alonzo Williams by Judge Robert E. Blackburn on 8/19/16. Telephone Conference set for 8/23/2016 at 9:30 AM before Judge Robert E. Blackburn to set the motion for hearing. (rebsec) (Entered: 08/19/2016) |
| 08/23/2016 | 30 | 79 | MINUTE ORDER Setting Hearing on Motion as to Alan Alonzo Williams on 28 Unopposed MOTION for Extension of Time to File Pre−Trial Motions Deadlines and Exclude Time Under the Speedy Trial Act: set for 8/24/2016 11:00 AM in Courtroom A1001 before Judge Robert E. Blackburn. By Judge Robert E. Blackburn on 8/23/16. (kfinn) (Entered: 08/23/2016) |
| 08/24/2016 | 31 | 80 | MINUTE ENTRY for Motion Hearing held before Judge Robert E. Blackburn as to Alan Alonzo Williams held on 8/24/2016. The Defendant's Unopposed Motion to Extend Pre−Trial Motions Deadlines and Exclude Time Under the Speedy Trial Act 28 is GRANTED; the time from and including October 3, 2016 through and including October 13, 2016 is excluded from the time for a speedy trial under the Speedy Trial Act of 1974; any non−CJA pretrial motions shall be filed by August 29, 2016, and any corresponding responses shall be filed by September 16, 2016; the Status Conference now set September 22, 2016 is vacated and continued to October 13, 2016, commencing at 1:30 p.m. Defendant remanded. Hearing concluded. Court Reporter: Julie Thomas. (kfinn) (Entered: 08/24/2016) |
| 10/12/2016 | 32 | 82 | Unopposed MOTION to Continue *Status Conference and Exclude Time Under the Speedy Trial Act* by Alan Alonzo Williams. (Attachments: # 1 Proposed Order (PDF Only))(Gallagher, Michael) (Entered: 10/12/2016) |
| 10/12/2016 | 33 | 89 | MINUTE ORDER granting in part and taking under advisement 32 Motion to Continue as to Alan Alonzo Williams (1) by Judge Robert E. Blackburn on 10/12/16. Telephone Conference to Judge Blackburn's chambers at **303−335−2350** set for 10/18/2016 at 10:00 AM to reset the status conference. The court will issue a separate order addressing excludable time under the Speedy Trial Act. (rebsec) (Entered: 10/12/2016) |
| 10/14/2016 | 34 | 90 | ORDER Excluding Additional Time Under the Speedy Trial Act. Ordered That Defendant's Unopposed Motion To Continue Status Conference andExclude Time under the Speedy Trial Act [# 32 ] is GRANTED insofar as it requests the exclusion of additional time for a speedy trial. By Judge Robert E. Blackburn on 10/14/2016. (agarc, ) (Entered: 10/14/2016) |
| 10/19/2016 | 35 | 96 | MINUTE ORDER as to Alan Alonzo Williams by Judge Robert E. Blackburn on 10/19/16. Status Conference set for 11/10/2016 at 9:00 AM in Courtroom A1001 before Judge Robert E. Blackburn. (rebsec) (Entered: 10/19/2016) |
| 11/08/2016 | 36 | 97 | |

| | | | |
|---|---|---|---|
| | | | Unopposed MOTION to Continue *Status Conference*, Unopposed MOTION to Exclude *Time Under the Speedy Trial Act* by Alan Alonzo Williams. (Attachments: # 1 Proposed Order (PDF Only) [Proposed] Order Granting Defendant's Unopposed Motion to Continue Status Conference and Exclude Time Under the Speedy Trial Act)(Gallagher, Michael) (Entered: 11/08/2016) |
| 11/09/2016 | 37 | 106 | MINUTE ORDER Granting in part 36 Defendant's Unopposed Motion To Continue Status Conference and Exclude Time Under the Speedy Trial Act. Status conference scheduled for Thursday, November 10, 2016, at 9:00 a.m., is vacated and continued without date pending further order of court. Telephonic (non−appearance) Setting Conference set for 11/15/2016 at 11:00 AM to reset the sentencing hearing. By Judge Robert E. Blackburn on 11/9/2016. (cmira) (Entered: 11/09/2016) |
| 11/15/2016 | 38 | 108 | MINUTE ORDER as to Alan Alonzo Williams re 36 Unopposed MOTION to Continue *Status Conference*Unopposed MOTION to Exclude *Time Under the Speedy Trial Act* filed by Alan Alonzo Williams by Judge Robert E. Blackburn on 11/15/16. Status Conference/Motion Hearing set for 11/17/2016 at 11:00 AM in Courtroom A1001 before Judge Robert E. Blackburn. (rebsec) (Entered: 11/15/2016) |
| 11/17/2016 | 39 | 109 | MINUTE ENTRY for Motion Hearing held before Judge Robert E. Blackburn as to Alan Alonzo Williams on 11/17/2016. Granting 36 Motion to Exclude as to Alan Alonzo Williams (1); The time from and including November 14, 2016 through and including January 12, 2017 is excluded from the time for a speedy trial; Status Conference set for 1/12/2017 09:00 AM in Courtroom A1001 before Judge Robert E. Blackburn. Defendant remanded. Hearing concluded. Court Reporter: Tracy Weir. (kfinn) (Entered: 11/17/2016) |
| 01/10/2017 | 41 | 111 | NOTICE of Disposition by Alan Alonzo Williams (Gallagher, Michael) (Entered: 01/10/2017) |
| 01/10/2017 | 42 | 113 | MINUTE ORDER as to Alan Alonzo Williams re 41 Notice of Disposition by Judge Robert E. Blackburn on 1/10/17. Status conference set 1/12/2017 at 9:00 AM is converted to a Change of Plea Hearing in Courtroom A1001 before Judge Robert E. Blackburn. (rebsec) (Entered: 01/10/2017) |
| 01/12/2017 | 43 | 114 | MINUTE ENTRY for Change of Plea Hearing held before Judge Robert E. Blackburn as to Alan Alonzo Williams on 1/12/2017. Plea entered by Alan Alonzo Williams (1) Guilty to Count 1. Sentencing set for 4/6/2017 10:00 AM in Courtroom A1001 before Judge Robert E. Blackburn. Defendant remanded. Hearing concluded. Court Reporter: Tracy Weir. (kfinn) (Entered: 01/12/2017) |
| 01/12/2017 | 44 | 117 | PLEA AGREEMENT as to Alan Alonzo Williams. (kfinn) (Entered: 01/12/2017) |
| 01/12/2017 | 45 | 134 | STATEMENT IN ADVANCE OF PLEA OF GUILTY by Defendant Alan Alonzo Williams. (kfinn) (Entered: 01/12/2017) |
| 01/12/2017 | 46 | 144 | FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE ENTRY OF A PLEA OF GUILTY as to Alan Alonzo Williams. By Judge Robert E. Blackburn on 1/12/17. (kfinn) (Entered: 01/12/2017) |
| 02/01/2017 | 47 | 148 | NOTICE of Change of Address/Contact Information (Kaufman, Linda) (Entered: 02/01/2017) |

| 03/06/2017 | 49 | 150 | Unopposed MOTION to Continue *Sntencing Hearing* by Alan Alonzo Williams. (Attachments: # 1 Proposed Order (PDF Only))(Gallagher, Michael) (Entered: 03/06/2017) |
|---|---|---|---|
| 03/06/2017 | 50 | 155 | MINUTE ORDER granting 49 Motion to Continue as to Alan Alonzo Williams (1) by Judge Robert E. Blackburn on 3/6/17. Sentencing reset for 7/6/2017 at 10:00 AM in Courtroom A1001 before Judge Robert E. Blackburn. (rebsec) (Entered: 03/06/2017) |
| 04/07/2017 | 51 | 156 | OBJECTION/RESPONSE to Presentence Report 48 by USA as to Alan Alonzo Williams (Kaufman, Linda) (Entered: 04/07/2017) |
| 04/07/2017 | 52 | 160 | MOTION for Decrease for Acceptance of Responsibility by USA as to Alan Alonzo Williams. (Kaufman, Linda) (Entered: 04/07/2017) |
| 04/07/2017 | 53 | 162 | MOTION to Dismiss Counts by USA as to Alan Alonzo Williams. (Attachments: # 1 Proposed Order (PDF Only))(Kaufman, Linda) (Entered: 04/07/2017) |
| 06/01/2017 | 54 | 165 | NOTICE OF ATTORNEY APPEARANCE Julia K. Martinez appearing for USA. Attorney Julia K. Martinez added to party USA(pty:pla) (Martinez, Julia) (Entered: 06/01/2017) |
| 06/15/2017 | 55 | 167 | OBJECTION/RESPONSE to Presentence Report 48 by Alan Alonzo Williams (Gallagher, Michael) (Entered: 06/15/2017) |
| 06/15/2017 | 56 | 178 | Second MOTION to Continue *Sentencing Hearing* by Alan Alonzo Williams. (Attachments: # 1 Proposed Order (PDF Only))(Gallagher, Michael) (Entered: 06/15/2017) |
| 08/03/2017 | 58 | 183 | SENTENCING STATEMENT *and Motion for Downward Departure and Variance* by Alan Alonzo Williams (Attachments: # 1 Exhibit)(Gallagher, Michael) (Entered: 08/03/2017) |
| 08/04/2017 | 59 | 206 | Third MOTION to Continue *Sentencing Hearing* by Alan Alonzo Williams. (Attachments: # 1 Proposed Order (PDF Only))(Gallagher, Michael) (Entered: 08/04/2017) |
| 10/26/2017 | 64 | 212 | NOTICE OF ATTORNEY APPEARANCE Rebecca Susan Weber appearing for USA. Attorney Rebecca Susan Weber added to party USA(pty:pla) (Weber, Rebecca) (Entered: 10/26/2017) |
| 11/02/2017 | 67 | 214 | SENTENCING STATEMENT *and Response to Defendant's Sentencing Memorandum* by USA as to Alan Alonzo Williams (Weber, Rebecca) (Entered: 11/02/2017) |
| 11/08/2017 | 68 | 222 | SUPPLEMENT *DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM* to 67 Sentencing Statement, 66 Restricted Presentence Report Addendum by Alan Alonzo Williams (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gallagher, Michael) (Entered: 11/08/2017) |
| 11/13/2017 | 69 | 242 | SUPPLEMENT *SENTENCING INFORMATION REGARDING HEALTH ISSUES* to 68 Supplement by Alan Alonzo Williams (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Gallagher, Michael) (Entered: 11/13/2017) |
| 11/14/2017 | 70 | 259 | |

| | | | MOTION to Withdraw as Attorney by Michael J. Gallagher by Alan Alonzo Williams. (Gallagher, Michael) (Entered: 11/14/2017) |
|---|---|---|---|
| 11/28/2018 | 115 | 263 | Fifth MOTION to Continue *Sentencing and Renewed Request for an Order Directing Facility to Provide a Medical Evaluation* by Alan Alonzo Williams. (Jacobson, Steven) (Entered: 11/28/2018) |
| 06/03/2019 | 146 | 266 | Letter requesting that Steven K. Jacobson be withdrawn as my counsel by Alan Alonzo Williams. (Attachments: # 1 Envelope) (athom, ) (Entered: 06/04/2019) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

**INDICTMENT**
18 U.S.C. § 1344
18 U.S.C. § 2(b)

---

The Grand Jury charges that:

### Count 1

1. Between the approximate dates of November 2, 2006 and August 5, 2008, in the District of Colorado and elsewhere, the defendant, Alan Alonzo Williams, did knowingly engage in a scheme to defraud a financial institution, namely, WebBank, and to obtain funds owned by and under the custody and control of it by means of materially false and fraudulent pretenses, representations, and promises, (hereinafter referred to as "the scheme").

2. It was part of the scheme that:

    a. The defendant desired to obtain funds for himself and Williams Vending Company, Inc. (hereinafter "WVC"). WVC was a business established in 1994 by the defendant and his parents that sold, leased, repaired, and operated vending machines.

Case 1:15-cr-00395-REB   Document 1   Filed 10/07/15   Page 2 of 10

b. The defendant, who would not qualify for the bank loans he desired by virtue of his prior felony convictions and status as a parolee, caused another individual, Ms. X, as purported 100% owner and president of WVC, to obtain several loans from WebBank to WVC.

c. In fact, the defendant controlled the finances and operations of WVC, and he and his family members were its owners. Ms. X had no true ownership interest and was never its true president. She had merely become a part-time employee of WVC in 2006.

d. Shortly after she began working at WVC, the defendant told Ms. X that he would put the business in her name for credit purposes.  To assuage any concerns she may have had about liability, he gave her a "Promissory Agreement" in which he agreed that any financial obligation due from "credit cards, credit lines, etc." would be the complete obligation of WVC and the defendant, and that she would have no financial obligation whatsoever. Knowing that Ms. X had a serious drug problem, the defendant exploited her habit by causing her to sign various documents and then providing her with cash, which she would use to get high.

e. In November 2006, the defendant caused documents to be filed with the Colorado Secretary of State which made it appear that Ms. X had a legitimate ownership interest in WVC which she had acquired by virtue of having made a significant investment in it and having managed it for many years. In fact, she had never had a managerial position at WVC, had never invested in it, and had become its "owner" in name only.

f. In January 2007, the defendant had Ms. X sign a contract to purchase a residence located at 9261 E. Jewell Circle in Denver. In March, he arranged for her to

obtain a $900,000 loan from Aurora Loan Services, LLC to buy it. To make it appear that Ms. X qualified for this loan, the defendant caused false information to be presented to Aurora Loan Services about her employment (including fraudulent W-2's and earnings statements), false information about her financial status, and false information about her intent to use the property as her primary residence. In fact, Ms. X never intended to reside at the E. Jewell Circle property, and never did.

g. In May 2007, to make it appear that Ms. X would have control of WVC, the defendant arranged for three bank accounts to be opened in the name of WVC over which she would have sole signature authority. He nevertheless maintained control over these accounts.

h. The defendant enlisted the aid of loan brokers to assist him in finding funding for WVC. The brokers suggested that WVC try to obtain a Small Business Administration loan from WebBank, a financial institution in Utah, the deposits of which were insured by the Federal Deposit Insurance Corporation. He told the brokers that Ms. X would be the applicant and would serve as the personal guarantor.

i. The Small Business Administration (hereinafter "SBA") guaranteed a certain portion of qualifying loans made by banks to small businesses, provided that the participating lender certify that but for the SBA guarantee, it would not make the loan. The SBA also required, among other things, that the business use the loan proceeds for specifically approved business purposes, that the borrower have had sufficient management experience, and that the business would have sufficient cash flow to be able to repay the loan. The SBA also required that any person owning 20% or more of the business personally guarantee the loan. In addition, the SBA considered the

Case 1:15-cr-00395-REB   Document 1   Filed 10/07/15   Page 4 of 10

character of the individual signing on the loan, as shown by his or her criminal history as described in the required SBA "Statement of Personal History Form." Anyone with felony convictions would require special approval, and anyone on parole would be ineligible.

  j. The brokers agreed to present the loan request to WebBank.  The defendant provided them with information, both verbal and documentary, to relay to WebBank for the purpose of acquiring an $800,000 loan to WVC. Much of that information was false, as the defendant well knew. It included fraudulent W-2 Wage and Income Statements and tax returns for Ms. X. The false information he provided the brokers made it appear that Ms. X was the president and sole owner of WVC, that she had owned the business for many years, that she had many years of management experience both at WVC and elsewhere, that she currently earned and had earned a substantial salary at WVC for many years, that she supervised the financing and purchasing aspects of the business, that she had rental income, that she had substantial assets in the form of cash, securities, and personal property, and resided in a $1.1 million home at 9261 E. Jewell Circle in Denver. None of that was true.

  k. The defendant also told the brokers that WVC focused on providing vending products to government offices and agencies, as Ms. X qualified as a minority business owner, and that the company therefore qualified as a minority contractor.  He explained that this minority status would allow government agencies to fulfill a portion of their minority contracting requirements by awarding contracts to WVC. The brokers passed this information on to WebBank at the defendant's direction.

Case No. 1:15-cr-00395-RBB  Document 172-1  filed 09/10/15  USDC Colorado  pg 13 of
271
Case 1:15-cr-00395-REB  Document 1  Filed 10/07/15  Page 9 of 10

l. At times, the defendant provided information directly to WebBank by fax or email, rather than through his brokers.  Some of the documents the defendant sent to WebBank or provided to his brokers to send to WebBank had been signed by Ms. X; others bore signatures that were copies of hers or only purported to be hers.

m. The defendant also represented to the brokers and WebBank that the loan proceeds would be used for the following purposes: (1) $377,100 would be used to purchase vending machines to enable WVC to perform on its government contracts, (2) $372,275.24 would be used to repay existing specific debts, and (3) $50,624.76 would be used as working capital. In support of this, the defendant provided a document which purported to be a vending agreement between WVC and Peterson Air Force Base, as well as a document which purported to be a purchase order to WVC in the amount of $377,100 from Ross Vending.  In fact, Peterson Air Force Base had entered no such agreement with WVC, and Ross Vending had neither sold nor agreed to sell $377,100 worth of vending machines to WVC.  The documents were fraudulent.

n. The defendant caused Ms. X to sign the promissory note. She was the personal guarantor, and her name appeared on the SBA "Statement of Personal History." WebBank approved the loan on December 28, 2007 and funded it by issuing ten checks on the same day and one on January 31, 2008. In order to assure that he would have control over the proceeds, the defendant directed WebBank to include Williams Vending Company, (and not just its creditors), as a payee on the disbursement checks, "to make sure all aspects are done correctly." The bank complied. The defendant, without obtaining co-endorsements from the joint payees, caused all of the funds to be deposited into the WVC accounts. The defendant used a large portion of the proceeds

Case No. 1:15-cr-00305-REB Document 172-1 filed 09/10/19 USDC Colorado pg 14 of
271
Case 1:15-cr-00305-REB Document 1 Filed 10/07/15 Page 8 of 40

for his own purposes, rather than for the purposes authorized for the SBA-guaranteed
loan.

o. In April 2008, the defendant approached WebBank directly to request another
loan for WVC. He had caused loan payments to be made by WVC in the interim. He
represented that since WVC had just completed contracts to become vendor for three
major apartment complexes, it would need to purchase additional vending machines
and trucks. As with the first loan from WebBank, Ms. X, as "owner" of the business,
would be the applicant and guarantor, and the loan would be SBA-guaranteed. In
support of his request, the defendant provided a document that purported to be a
vending agreement between WVC and Carmel Property Management and a document
which purported to be a purchase order from Ross Vending for $339,200.00. In fact,
Carmel Property Management had never contracted with WVC, and Ross Vending had
neither sold nor agreed to sell WVC $339,200.00 worth of machines. The documents
were fraudulent. As with the first loan, the defendant caused Ms. X's signature or
purported signature to appear on the loan documents, and the SBA Statement of
Personal History related to Ms. X, not to the defendant. In considering whether to grant
the second loan, the bank already had a significant amount of information about WVC
and Ms. X, which had been previously provided by the defendant or at his direction.
WebBank approved a loan for $300,000 and funded it by wiring the proceeds,
$291,742.00, to a WVC account on May 9, 2008. Instead of using the loan proceeds for
the purposes authorized for the SBA-guaranteed loan, the defendant used most, if not
all of it for other purposes, including the purchase of two new Mercedes Benz
automobiles, one for himself and one for his daughter.

p. Shortly after the $300,000 loan was funded, the defendant approached WebBank again for additional funding for WVC. On June 10, 2008, WebBank granted the defendant's request to lend an additional $60,000 to WVC. It did so by modifying the May 9 SBA-guaranteed loan. As with the previous WebBank loans, the defendant caused the loan to be issued to WVC based on Ms. X's purported position as president and owner and her personal guarantee. As he had done previously, he again caused documents bearing or purporting to bear Ms. X's signature to be delivered to the bank. He represented that the funds were needed to purchase vehicles to transport inventory to support the company's new vending machines.  In support of that, the defendant submitted invoices from Specialty Trux.  The bank funded the loan by issuing a check in the amount of $58,650.00 payable to WVC and Specialty Trux on June 16, 2008. The defendant endorsed the check for both payees and deposited it to a WVC account, but failed to use the loan proceeds to pay the Specialty Trux invoices, as he had represented.

q. Shortly after WebBank had funded the $60,000 to WVC, the defendant attempted to obtain an additional loan from WebBank  to WVC, still falsely representing that Ms. X was the president and 100% owner, and again offering her as personal guarantor. He originally requested $603,600, but later reduced that to $550,000. He falsely represented to WebBank that the funds were needed to purchase equipment for a contract WVC had entered with the City and County of Denver to be the exclusive provider of vending equipment, merchandise, and related services to the Denver Public Schools. In fact, Denver Public Schools had no such agreement with WVC. The defendant also caused a fraudulent document which purported to be a Citicorp

7

Case 1:15-cr-00395-REB   Document 1   Filed 10/07/15   Page 8 of 10

Investment Services Statement on Ms. X's account to be sent to the bank. It falsely represented that her account value was over $317,000. Further, in order to make it appear that WVC's liabilities had decreased significantly, the defendant falsely represented that the company had reduced its debt to Ms. X from $632,888 to $199,200, and produced a promissory to Ms. X in the amount of $199,200.42 to prove it. In fact, Ms. X had never loaned any money to or invested in the company, and the defendant did not intend to pay her $199,200.42 as represented.

    r. On or about August 5, 2008, WebBank denied the requested $550,000 loan.

  3. On or about December 28, 2007 and January 31, 2008, the defendant, Alan Alonzo Williams, did knowingly execute and attempt to execute the scheme described in Paragraphs 1 and 2 of this indictment by causing WebBank to fund a loan in the amount of $800,000 to Williams Vending Company, Inc., all in violation of Title 18, United States Code, Sections 1344 and 2(b).

## Count 2

  4. The allegations set forth in Paragraphs 1 and 2 of this indictment are re-alleged and incorporated by reference here, as though set forth in their entirety.

  5.  On or about May 9, 2008, the defendant, Alan Alonzo Williams, did knowingly execute and attempt to execute the scheme described in Paragraphs 1 and 2 of this indictment by causing WebBank to fund a loan in the amount of $300,000 loan to Williams Vending Company, Inc., all in violation of Title 18, United States Code, Sections 1344 and 2(b).

## Count 3

  6.  The allegations set forth in Paragraphs 1 and 2 of this indictment are re-alleged and incorporated by reference here, as though set forth in their entirety.

  7. On or about June 16, 2008, the defendant, Alan Alonzo Williams, did knowingly execute and attempt to execute the scheme described in Paragraphs 1 and 2 of this indictment by causing WebBank to approve and fund a $60,000 modification to the May 9, 2008 loan to Williams Vending Company, Inc., all in violation of Title 18, United States Code, Sections 1344 and 2(b).

## Count 4

  8.  The allegations set forth in Paragraphs 1 and 2 of this indictment are re-alleged and incorporated by reference here, as though set forth in their entirety.

  9.  Between about June 26, 2008 and August 5, 2008, the defendant, Alan Alonzo Williams, did knowingly attempt to execute the scheme described in Paragraphs 1 and 2 of this indictment by attempting to cause WebBank to fund a loan in the amount of $550,000 to Williams Vending Company, Inc., all in violation of Title 18, United States Code, Sections 1344 and 2(b).

A TRUE BILL

Ink signature on file in Clerk's Office
FOREPERSON

JOHN F. WALSH
UNITED STATES ATTORNEY

By:  s/Linda Kaufman
Linda Kaufman
Assistant United States Attorney
1225 17th Street, Suite 700

9

Case No. 1:15-cr-00395-REB   Document 173-1   filed 09/10/19   USDC Colorado   pg 18 of
271
Case 1:15-cr-00395-REB   Document 11   Filed 10/07/15   USDC Colorado   Page 10 of 10

Denver, Colorado 80202
Telephone: 303-454-0100
Facsimile: 303-454-0402
E-mail: linda.kaufman@usdoj.gov
Attorney for the United States

10/6/15

DEFENDANT:  Alan Alonzo Williams

YOB:    1962

ADDRESS:   Aurora, Colorado

COMPLAINT FILED? \_\_\_\_\_ YES \_✓\_\_ NO

   IF YES, PROVIDE MAGISTRATE CASE NUMBER: _____

HAS DEFENDANT BEEN ARRESTED ON COMPLAINT? _____ YES \_✓\_\_\_ NO

OFFENSES: COUNTS 1-4: 18 U.S.C. §§ 1344 and 2(b) (Bank Fraud)

LOCATION OF OFFENSE: Adams, Colorado
(COUNTY/CITY/STATE)

PENALTIES: NMT 30 years and/or NMT $1,000,000 per count, or the greater of twice the
     gross gain or twice the gross loss plus a $100 victim assessment fee per count

AGENT:   Special Agent Holly Anderson (FBI), Special Agent Tim Chase (IRS)

AUTHORIZED BY: Linda Kaufman
       Assistant U.S. Attorney

ESTIMATED TIME OF TRIAL:

\_✓\_\_\_ five days or less \_\_\_\_\_ over five days \_\_\_\_\_ other

THE GOVERNMENT

\_✓\_\_\_ **will** seek detention in this case \_\_\_\_\_ will not seek detention in this case

The statutory presumption of detention **is not** applicable to this defendant.

OCDETF CASE: _____ Yes \_\_✓\_\_ No

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the

District of Colorado

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| ALAN ALONZO WILLIAMS | ) | Case No.   15-cr-00395-REB |
| | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   ALAN ALONZO WILLIAMS                                                                          ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ❏ Superseding Indictment    ❏ Information    ❏ Superseding Information    ❏ Complaint
❏ Probation Violation Petition    ❏ Supervised Release Violation Petition    ❏ Violation Notice    ❏ Order of the Court

This offense is briefly described as follows:
  4 counts of Bank Fraud in violation of 18 U.S.C. §§ 1344 and 2(b)

Date:  10/07/2015                                                              s/M. Lacey, Deputy Clerk
                                                                              *Issuing officer's signature*

City and state:    Denver, CO                                       Jeffrey P. Colwell, Clerk of Court
                                                                              *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date:  _____                             _____ <br> *Arresting officer's signature* <br><br> _____ <br> *Printed name and title* |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.    15-cr-00395-REB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ALAN ALONZO WILLIAMS,

       Defendant.

_____

## NOTICE OF APPEARANCE
_____

     The Office of the Federal Public Defender, by and through undersigned counsel,

hereby enters its appearance in the above captioned case.

Respectfully submitted,

VIRGINIA GRADY
Federal Public Defender

s/ Matthew Golla
Matthew C. Golla
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Matthew_Golla@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2016, I electronically filed the foregoing **NOTICE OF APPEARANCE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Linda Kaufman, Assistant United States Attorney
      Linda.Kaufman@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Alan Williams       *via U.S. mail*

            s/ Matthew Golla
            Matthew C. Golla
            Assistant Federal Public Defender
            633 17th Street, Suite 1000
            Denver, CO  80202
            Telephone:  (303) 294-7002
            FAX:  (303) 294-1192
            Matthew_Golla@fd.org
            Attorney for Defendant

Case No. 1:15-cr-00395-REB   Document 173-1   filed 09/10/19   USDC Colorado   pg 23 of
271
Case 1:15-cr-00395-REB   Document 1   Filed 09/23/15   USDC Colorado   Page 1 of 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 15-cr-395-REB )
)  JUDGE ASSIGNED: BLACKBURN
UNITED STATES OF AMERICA,          )
)  ESTIMATED TRIAL
    Plaintiff,                     )  TIME: 4
)
v.                                 )  NUMBER OF
)  DEFENDANTS: 1
ALVIN ALONZO WILLIAMS              )
)  DOCUMENT DISCLOSURE EXTENSIVE
    Defendant.                     )      ☑ Yes    ○ No
)
)      (Please select one)
)

---

**DISCOVERY CONFERENCE
MEMORANDUM AND ORDER**

---

## INTRODUCTION

    Rule 16, Federal Rules of Criminal Procedure, is entitled <u>Discovery and Inspection</u> and

provides for discovery by both defendant and the government. D.C.COLO.LCrR 17.1.1 requires a

discovery hearing to be held by a magistrate judge.

    A defendant may discover certain material as a matter of right without any obligation to permit

discovery by the government. However, if a defendant requests certain materials by discovery, namely,

documents and tangible objects, as well as reports of examinations and tests, then the defendant is

obligated to permit similar discovery by the government.

    In addition to discovery we will take up the matter of notice, as required by Rules 12.1 and

12.2, Fed.R.Crim.P., if the defense of alibi or mental capacity is contemplated. Further, a date will be

set for the filing of all motions.

Revised January 13, 2016 – Page 1

Case No. 1:15-cr-00395-RBB  Document 173-1  Filed 09/10/18  USDC Colorado  pg 24 of
Case 1:19-cr-00395-RBB  Document 1-1  Filed 09/23/19  USDC Colorado  Page 2 of 10
271

At the conclusion of this hearing the report will be signed by defendant and/or his counsel, and government counsel, as well as the magistrate judge. The discovery hearing proceedings will be recorded.

## I. <u>DEFENDANT'S REQUEST FOR DISCOVERY AND NOTICE</u>

(A)     <u>Request for Rule 16 Material</u>

1.      The defendant requests disclosure of the substance of any relevant oral statements made by the defendant, before or after arrest, in response to interrogation by any person the defendant knew to be a government agent if the government intends to use that statement at trial. Rule 16(a)(1)(A). The government states that it will disclose to the defendant and make available for inspection, copying, or photographing such statements in accordance with Rule 16(a)(1)(A).

2.      The defendant requests disclosure of any relevant written or recorded statement made by the defendant within the government's possession, custody, or control, which the attorney for the government knows – or through due diligence could know – that the statement exists; the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by any person the defendant knew to be a government agent. Rule 16(a)(1)(B)(i) and (ii).

3.      The defendant requests disclosure of any recorded testimony of the defendant before a grand jury which relates to the offense charged pursuant to Rule 16(a)(1)(B)(iii). The government states it will permit the defendant to inspect and copy such statements.

4.      If government counsel knows of such statements he will so indicate by initialing here.

_____

5. The defendant requests, if the defendant is an organization, the government's disclosure to the defendant of any statement described in Rule 16(a)(1)(A) and (B), if the government contends that the person making the statement; (i) was legally able to bind the defendant regarding the subject of the statement because of that person's position as the defendant's director, officer, employee, or agent; or (ii) was personally involved in the alleged conduct constituting the offense and was legally able to bind the defendant regarding that conduct because of that person's position as the defendant's director, officer, employee or agent. Rule 16(a)(1)(C).

6. The defendant requests a copy of his prior criminal record. The government states it will furnish to the defendant a copy of his prior criminal record, if any, in accordance with Rule 16(a)(1)(D).

7. The defendant, understanding his burden of reciprocal discovery as set forth in Rule 16(b)(1)(A), (requests) (does not request) disclosure of books, papers, documents, data, photographs, tangible objects, buildings or places, and copies or portions thereof, which are within the possession, custody, or control of the government, and which are material to the preparation of his defense, or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

8. The defendant, understanding his burden of reciprocal discovery as set forth in Rule 16(b)(1)(B), (requests) (does not request) disclosure of any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the

Revised January 13, 2016 – Page 3

government, and which are material to the preparation of the defense or are intended for
use by the government as evidence in chief at the trial.

9.      The defendant, understanding his burden of reciprocal discovery as set forth in Rule
16(b)(1)(C), (requests) (does not request) disclosure of a written summary of testimony
the government intends to use under Rule 702, 703, or 705 of the Federal Rules of
Evidence, relating to expert testimony and opinions of experts, during its case in chief at
trial, as set forth in Rule 16(a)(1)(G).

10.     The government acknowledges its continuing duty to disclose under Rule 16(c).

(B)     Request for Exculpatory Evidence

The defendant requests disclosure of evidence favorable to the defendant on the issue of guilt
and/or sentencing. The government states it will disclose material evidence which is favorable to the
defendant as required by Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150
(1972); and United States v. Bagley, 473 U.S. 667 (1985). The government acknowledges its
continuing duty to make these disclosures. This request does not foreclose the defendant from filing a
more specific motion requesting exculpatory evidence.

(C)     Request for Evidence of Other Crimes, Wrongs, or Acts

The defendant requests notice of other crimes, wrongs or acts under Rule 404(b) of the Federal
Rules of Evidence. The government states that if it intends to introduce such evidence at trial it will
provide written notice to the defendant no later than 21 days before trial unless, for good cause shown,
the court permits less notice in accordance with Rule 404(b).

Revised January 13, 2016 – Page 4

(D)     Request for Disclosure of the Identity of Confidential Informants

      1.     The government states there (was) (was not) a confidential informant who was a

            participant in or a witness to the crime charged and that the informant (may) (will) (will

            not) be called as a witness at trial. The government further states it (has supplied) (will

            claim privilege of non-disclosure of) the identity of the confidential informant. <u>Rovario</u>

            <u>v. United States</u>, 353 U.S. 53 (1957).

(E)     The Government States There Have Been in this Case:

      (Circle those which are applicable)

      1.     Telephone tape recordings;

      2.     Electronic surveillance of the defendant or his premises;

      3.     Leads obtained by electronic surveillance of defendant's person or premises; and

      4.     Photographic surveillance.

The government (may) (will) (will not) permit discovery of the foregoing items.

## II.  GOVERNMENT'S REQUEST FOR DISCLOSURE AND NOTICE

(A)  Request for Rule 16 Material

      1.     The government requests disclosure of books, papers, documents, data, photographs,

            tangible objects, or copies or portions thereof, which are within the possession, custody

            or control of the defendant and which the defendant intends to introduce as evidence in

            chief at the trial. If the defendant made a similar request under Rule 16(a)(1)(E), the

            defendant states that upon compliance by the government with the defendant's request

            he will permit the government to inspect and copy or photograph such items in

            accordance with Rule 16(b)(1)(A).

Revised January 13, 2016 – Page 5

Case No. 1:15-cr-00395-RBS Document 173-1 filed 09/10/19 USDC Colorado pg 28 of
Case 1:19-cr-00595-RBS Document 11 Filed 09/23/19 Page 8 of 10
271

2. The government requests disclosure of any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, within the possession or control of the defendant as described in Rule 16(b)(1)(B). If the defendant made a similar request under Rule 16(a)(1)(F), the defendant states that upon compliance by the government with the defendant's request he will permit the government to inspect and copy or photograph such items in accordance with Rule 16(b)(1)(B).

3. The government requests disclosure of a written summary of testimony the defendant intends to use under Rules 702, 703 and 705, F.R.E. as evidence at trial. If the defendant made a similar request under Rule 16(a)(1)(G), the defendant states that upon compliance by the government with the defendant's request he will disclose such summaries in accordance with Rule 16(b)(1)(C).

4. The defendant acknowledges his continuing duty to disclose under Rule 16(c).

(B)    Request for Notice of Alibi

1. The government hereby requests notice of the defendant's intent to rely on an alibi defense pursuant to Rule 12.1(a) of the Federal Rules of Criminal Procedure. The parties agree that the indictment/information and the discovery provided by the government give the defendant sufficient notice of the time, date, and place at which the alleged offense was committed and triggers the defendant's obligation under Rule 12(a) to serve upon the attorney for the government a written notice of alibi within 20 days from the date of this request, or at such different time as the court may direct. Should the defendant require additional information concerning the time, date, or place at which the alleged offense was committed, it is the defendant's obligation to file a request for additional information in the time provided for filing motions.

Revised January 13, 2016 – Page 6

Case No. 1:15-cr-00395-RBS    Document 173-1    filed 09/23/19    USDC Colorado    pg 29 of
Case 1:15-cr-00395-REB   Document 1   Filed 09/10/15   Page 7 of 10
271

2. The government states that if the defendant files a notice of intent to rely upon alibi, the attorney for the government shall serve upon the defendant or the defendant's attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut the testimony of any of the defendant's alibi witnesses. The government's written notice shall be filed within 10 days of its receipt of the defendant's Rule 12.1(a) notice, but in no event less than 10 days before trial, unless the court otherwise directs.

3. The parties acknowledge their continuing duty to disclose under Rule 12.1(c).

(C) Request for Notice of Insanity Defense and Expert Testimony Regarding Defendant's Mental Condition

The government hereby requests notice of the defendant's intent to rely on a defense based on insanity or to introduce expert testimony relating to mental condition. If the defendant intends to rely on the defense of insanity or introduce expert testimony relating to mental disease or defect or any other mental condition bearing on the issue of guilt, he agrees to file a written notice and disclosure of the same within 20 days from the date of this request, or at such different time as the court may direct.

### III. LIKELIHOOD OF DISPOSITION OR TRIAL

(A) There is a (good) (fair) (poor) chance of a Rule 11 disposition of this case.

(B) The parties understand that the court must be given notice of any proposed disposition no less than 10 days before the scheduled trial date. Unless otherwise ordered, notice of disposition shall be filed no later than 14 days before the date set forth for trial. (D.C.COLO LCrR 11.1A)

(C)     The defendant will receive a jury trial in accordance with F.R.Crim.P. 23(a). Waiver of jury can

only be accomplished by filing a motion with the trial court.

## IV. **SPEEDY TRIAL**

(A)     The speedy trial time limits of 18 U.S.C. § 3161 are as follows:

30 days     _4-17-16_

70 days     _5-27-16_

90 days     _6-16-16_

_____
Date Signed

_3/23/16_
_____
Date Signed

_____
Defendant

_____
Attorney for Defendant

Attorney for Defendant will use the following for viewing discovery received from the Government:

_____ PC/Windows

_____ Mac/OS

_3/23/16_
_____
Date Signed

30 - 4/17/16          _____

70 - 5/27/16

90 - 6/16/16

## V.  **DISCOVERY ORDER**

(A)     Effect of Report

The responses by the parties set forth in this Report shall have the effect of a binding discovery order. All requests for discovery will be considered continuing requests, and any discoverable information and/or material coming into the possession or knowledge of either party prior to or during the trial shall be made available to the opposing party promptly, consistent with the law and on an ongoing basis.

(B)     U.S. Probation Office

Unless otherwise specified in this Discovery Order, at the time of the detention hearing or by _3-23-16_ [date], the U.S. Probation Office will disclose any criminal history information compiled on the defendant to both parties.

(C)     Disclosure by the Government

Unless otherwise specified in this Discovery Order, the government on or before _3/24/16_, shall disclose those materials that are on that date within the possession of the attorney for the government and are subject to disclosure under the provisions of Rule 16. If additional material subject to the disclosure obligations of Rule 16 come into the possession of the attorney for the government, the attorney for the government shall promptly disclose the material to the defendant. The attorney for the government shall exercise due diligence as expressly required by provisions of Rule 16 to fulfill his or her discovery obligations under the provisions of Rule 16.

Written summaries of any testimony that the government intends to use under Rules 702, 703, or 705, Fed. R.Crim P. 16(a)(1)(G) shall be provided on such schedule as the District Court shall determine upon motion by either party.

(D)     Disclosure by the Defendant

Unless otherwise specified in this Discovery Hearing Report, the defendant shall disclose its Rule

Revised January 13, 2016 – Page 9

16 discovery material to counsel for the government on or before_____ 4/25/16 _____.

Written summaries of any testimony that the defendant intends to use under Rules 702, 703, or 705,

Fed.R.Crim P. 16(b)(1)(C) shall be provided on such schedule as the District Court shall determine

upon motion by either party.

(E)     Any motion alleging a failure to comply with the time limits set forth in this report and order

       must be filed promptly.

(F)     Any pretrial motions shall be filed on or before_____.


      IT IS SO ORDERED.


            BY THE COURT

            U.S. Magistrate Judge

            3-23-16

            Date


Revised January 13, 2016 – Page 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Criminal Action No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## ORDER OF DETENTION

---

THIS MATTER came before the Court for a detention hearing on March 23, 2016.

The government is requesting detention in this case. The defendant did not contest detention and neither side offered argument beyond the contents of the bail report. In making my findings of fact, I have taken judicial notice of the information set forth in the court's docket of proceedings and the Pretrial Services Report.

In order to sustain a motion for detention, the government must establish that there is no condition or combination of conditions which could be imposed in connection with pretrial release that would reasonably assure (a) the appearance of the defendant as required or (b) the safety of any other person or the community. 18 U.S.C. § 3142(b). The former element must be established by a preponderance of the evidence, and the latter requires proof by clear and

1

convincing evidence.

The Bail Reform Act establishes the following factors to be considered in determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community:

(1)      The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2)      the weight of the evidence against the person;

(3)      the history and characteristics of the person including–

(A)      the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)      whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)      the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Weighing the factors set out in the Bail Reform Act, I find the following:

The defendant has two misdemeanor convictions and nine felony convictions and he has an extensive history of arrests and convictions for fraud and theft.   The defendant has failed to

2

comply with probation on three occasions, which resulted in a revocation of probation; has failed

to pay on at least one occasion; and absconded from parole.   Records from NCIC reflect that the

defendant has used at least five alias names, two alias dates of birth, and two alias social security

numbers and he has failed to appear on at least 10 occasions, which resulted in the issuance of a

warrant.

  Additionally, the Defendant has the following pending cases: ) Theft $20,000 or More

(felony), 2-3) Forgery-Check/Commercial Instrument (felony), 4-10) Habitual Criminal (sentence

enhancement) Denver County District Court, Case No. 2012CR525; 1) Identity Theft-Uses

Information to Obtain (felony) 2-7) Habitual Criminal (sentence enhancement), Arapahoe County

District Court, Case No. 2011CR2326; and 1) Criminal Impersonation -Gain Benefit (felony), 2)

Criminal Possession of Financial Device- 4 Different Names (felony), 3) Identity Theft-Uses

Information to Obtain (felony), Broomfield County District Court, Case No. 2016CR103.

  After considering all appropriate factors, I conclude that the preponderance of the evidence

establishes that no condition or combination of conditions of release will reasonably assure the

appearance of the defendant as required.   Further, I conclude by clear and convincing evidence

that no condition or combination of conditions of release will reasonably insure the safety of other

persons, including the defendant, or the community.

  IT IS HEREBY ORDERED that the defendant is committed to the custody of the Attorney

General or their designated representative for confinement in a corrections facility separate, to the

extent practicable, from persons awaiting or serving sentences or being held in custody pending

3

appeal; and

      IT IS FURTHER ORDERED that the defendant is to be afforded a reasonable opportunity to consult confidentially with defense counsel; and

      IT IS FURTHER ORDERED that upon order of this Court or on request of an attorney for the United States of America, the person in charge of the corrections facility shall deliver defendant to the United States Marshal for the purpose of an appearance in connection with this proceeding.

      DATED:   March 23, 2016.

                              BY THE COURT:

                              Kathleen M. Tafoya
                              United States Magistrate Judge

Case 1:15-cr-00395-REB    Document 12    Filed 03/23/16    Page 1 of 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Criminal Case No.  15-cr-00395-REB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

     Defendant.

---

## TRIAL PREPARATION CONFERENCE ORDER

---

**Blackburn, J.**

Pursuant to Fed. R. Crim. P. 17.1, and D.C.COLO.LCrR 17.1.1 and 53.1, the court

enters this **Trial Preparation Conference Order**.

**IT IS ORDERED** as follows:

1. That all non-CJA[1] pretrial motions shall be filed by **April 7, 2015**;

2. That a response to a pretrial motion shall be filed within fourteen (14) days of the

filing of the corresponding pretrial motion;

3.  That regardless of how denominated, non-CJA motions shall not be filed out of

time without leave of court[2]; regardless of how denominated, amended papers, including

amended motions, petitions, responses, or replies shall not be filed without leave of court;

regardless of how denominated, supplements to papers, including motions, petitions,

---

[1] "CJA" are the initials for **C**riminal **J**ustice **A**ct codified at **18 U.S.C. § 3006A**.

[2] Motions to continue and motions affecting the attorney-client relationship, e.g., motions to withdraw, motions for substitute counsel, motions to terminate the attorney-client relationship, etc., are excluded from this requirement.

responses, or replies, shall not be filed without leave of court; and regardless of how denominated, replies to responses shall not be filed without leave of court;

4. That any pretrial motion that the court determines should be set for hearing shall be set for hearing during a telephonic (non-appearance) setting conference on **April 22, 2016**, at 10:00 a.m. (MDT);

5.  That counsel for the government shall arrange, initiate, and coordinate the conference call necessary to facilitate the setting conference;

6. That trial by jury shall commence **May 23, 2016**, at 8:30 a.m. (MDT), in courtroom A1001, located on the 10th Floor of the Alfred A. Arraj Courthouse Annex, 901 19th Street, Denver, Colorado 80294, at which the defendant shall appear in person without further notice, order, or subpoena;

7. That the court reserves four (4) days for trial: Monday, May 23, 2016, through Thursday, May 26, 2016;

8.  That any motion brought under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-74, to exclude time for a speedy trial shall note and circumstantiate, *inter alia*, the specific amount of time to be excluded in computing the time for speedy trial under the act and shall provide non-conclusory reasons to justify the amount of time to be excluded as provided in ***United States v. Toombs***,  574 F.3d 1262 (10th Cir. 2009); provided, furthermore, that, any motion to vacate and/or continue the trial, or any motion, which, if granted, would cause the trial to be vacated or continued  shall address the factors enunciated in ***United States v. West***, 828 F.2d 1468, 1469-70 (10th Cir. 1987), pursuant to REB Cr. Practice Standard II.E.1;

2

9. That counsel and the defendant shall appear in courtroom A1001 on the first day of trial at 8:00 a.m., to review and discuss with the courtroom deputy clerk and the court, if necessary, any final details, arrangements, or requirements concerning the trial;

10. That a Trial Preparation Conference shall commence on **May 20, 2016**, at 2:00 p.m. (MDT), in courtroom A1001;

11. That lead counsel and the defendant shall attend the Trial Preparation Conference;

12. That at the outset of the Trial Preparation conference, each party shall submit on the Witness List form required by the court (an original for the court with copies for the courtroom deputy clerk and all other parties) a "will call" witness list enumerating the name and address of each witness that will be called and a "may call" witness list enumerating the name and address of each witness that may be called; provided, furthermore, that the "will call" witness list constitutes a representation on which the court and every other party may rely that the witnesses listed will be present and available to testify during trial;

13. That at the Trial Preparation Conference the parties shall be prepared to review and discuss, *inter alia*, the following:

a. stipulated and proposed jury instructions and verdict forms;

b. *voir dire* questions;

c. the jury selection process, including alternate jurors, and peremptory challenges:

1. The use of the one or more alternate jurors [Review Fed.R.Crim.P. 24(c)];

2. Pretrial designation of the alternate juror(s);

3

Case No. 1:15-cr-00395-REB   Document 173-1   filed 09/10/19   USDC Colorado   pg 40 of
271
Case 1:15-cr-00395-REB   Document 12   Filed 08/23/16   Page 4 of 6

3. The number and allocation of peremptory challenges [Review Fed.

R. Crim. P. 24(b) and (c)(4)]; and

4. Retention or dismissal of alternate juror(s) [Review Fed. R. Crim.

P. 24(c)(3)];

d. use of juror questionnaires (if a questionnaire is used, the parties shall

surrender their copies for destruction immediately subsequent to completion of jury

selection);

e. identification of all persons permitted to be seated at each party's table;

f. the pronunciation of problematic party's and witness' names;

g. the names or monikers that may be used when referring to the defendant

or a witness;

h. identification of "will call" and "may call" witnesses;

i. use of deposition testimony:

1. designation of specific testimony by page and line; and

2. identification of the person selected to read deposition answers;

j. use of video depositions:

1. resolution of objections;

2. pretrial redaction, if necessary; and

3. arrangements for necessary equipment to broadcast the

deposition;

k. the admission of stipulated exhibits or exhibits about which there are no

objections;

l. the allocation of trial time between the parties;

4

m. the necessity for cautionary or limiting instructions;

n. timing and manner of publication, if any, of trial exhibits to the jury;

o. appropriate attire and clothing for defendant;

p. security precautions, requirements, or issues;

r.  training on the use of courtroom technology;

s.  transporting and bringing equipment, models, props, or other property into the courthouse and courtroom for use during trial;[3] and

t. courtroom etiquette and protocol;

14.  That unless ordered otherwise, each side shall be permitted voir dire examination not to exceed 15 minutes following voir dire examination by the court, but shall not reiterate questions previously propounded by the court or another party;

15. That unless ordered otherwise, the jurors shall not be sequestered before deliberations;

16. That trial witnesses subject to sequestration under Fed. R. Evid. 615 shall be sequestered by order entered *sua sponte* immediately before opening statements;

17. That unless ordered otherwise, opening statements shall be limited to **thirty (30)** minutes per party;

18. That the court will not engage in the examination of any witness, except to eschew plain error;

---

[3]The court has audio, video, audio-visual, evidentiary presentation, and other special equipment that may be used by the parties.  A listing of available equipment can be found on the District Court's website at http://www.cod.uscourts.gov/AttorneyInformation/GeneralAttorneyInformation.aspx under "Courtroom Technology Manual for Attorneys."  Arrangements for training on courtroom technology must be made with the courtroom deputy clerk, **Kathleen Finney, at (303)335-2099**, at least 14 days before trial.  Notify the courtroom deputy clerk no later than **fourteen (14) days** before the date and time you need such equipment or need your own equipment to be brought through security for use in the courtroom.

5

19. That pursuant to REB Cr. Practice Standard III.B., immediately before commencement of trial, the parties shall submit to the courtroom deputy clerk the exhibits identified in their respective exhibit lists (a set of original exhibits for use by the witnesses and copies for the court, the courtroom deputy clerk, opposing counsel (one set per party), and any *pro se* party);

20. That objections made in the presence or hearing of the jury shall be stated as succinctly as practicable and supported by recitation of apposite authority when possible; however, counsel and a pro se defendant shall not speechify an objection in the presence or hearing of the jury [Review Fed. R. Evid.103(d) and 104(c)];

21. That unless interrupted or otherwise ordered by the court, in marshaling motions or objections during trial, the following sequential protocol shall be observed: objection, response, reply, ruling;

22. That to eliminate or minimize bench or sidebar conferences, each party shall be responsible to inform the courtroom deputy clerk in writing before the conclusion of a trial day specifying any issue which should be considered before commencing trial on the next scheduled day of trial and at the outset of a trial day specifying any issue which should be considered at the conclusion of that trial day;

23. That to facilitate preparation, marshaling, and consideration of proposed jury instructions and verdict forms consistent with REB Cr. Practice Standard V.A.5., the government shall identify and enumerate each individual jury instruction in the heading or title as INSTRUCTION NO. G-1, G-2, G-3, etc., and the defendant shall identify and enumerate each individual jury instruction in the heading or title as INSTRUCTION NO. D-1, D-2, D-3, etc.; provided, furthermore, the parties shall similarly identify and enumerate

all proposed verdict forms and special interrogatories;

24. That unless ordered otherwise, closing argument shall be limited to forty-five **(45)** minutes total for each party;

25.  That for additional information about courtroom protocol, courtroom technology and training, trial preparation, transportation of items into the courthouse and courtroom, or submission of trial exhibits, the courtroom deputy clerk, **Kathleen Finney, at (303)335-2099**, should be contacted; and

26.  That pursuant to REB Cr. Practice Standard VI.A.1., a notice of disposition filed pursuant to D.C.COLO.LCrR 11.1(a), shall be considered to be a delay resulting from consideration by the court of a proposed plea agreement within the meaning of 18 U.S.C. § 3161(h)(1)(G) for the purpose of computing time under the Speedy Trial Act of 1974, 18 U.S.C. § 3161; provided, further, that a defendant contesting this characterization shall state his objection in the notice of disposition or shall be deemed to have waived the objection.

Dated March 23, 2016, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

Case No. 1:15-cr-00395-REB   Document 172-1   filed 09/10/19   USDC Colorado   pg 44 of
271
Case 1:15-cr-00395-REB   Document 14   Filed 08/24/16   Page 1 of 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

  **1.  ALAN ALONZO WILLIAMS**

      Defendant.

---

**PLAINTIFF'S MOTION TO DISCLOSE MATTERS OCCURING BEFORE GRAND
JURY TO DEFENDANT**

---

      Plaintiff UNITED STATES OF AMERICA, by Assistant United States Attorney
Linda Kaufman, respectfully moves the Court, pursuant to Fed. R. Crim. P. 6 (e) (3) (E) (i),
for an order authorizing the plaintiff to disclose testimony of witnesses before the grand
and exhibits presented to the grand jury to the defendant and his counsel, as part of
discovery in this case, on the terms and conditions outlined below.

      AS GROUNDS FOR THIS MOTION, Plaintiff states as follows:

1. Fed. R. Crim. P. 6 (e), with various exceptions, prohibits the disclosure of a
   matter occurring before the grand jury.

2. Grand jury transcripts of testimony and grand jury exhibits reveal matters
   occurring before the grand jury.

3. Fed. R. Crim. P. 6 (e) (3) (E) (i) allows for court-authorized disclosure of matters
   occurring before a grand jury, when such disclosure is preliminary to or in
   connection with a judicial proceeding.

1

4. The pending case against the defendant is a judicial proceeding which will be set for trial or pretrial disposition, also judicial proceedings.   The requested disclosure is in connection with such proceedings. The plaintiff wishes to provide this discovery, but only do so with the Court's approval.

5. Since matters occurring before the grand jury must, pursuant to Fed. R. Crim, P. 6(e), remain secret, the plaintiff moves that disclosure be allowed only for purposes of defending this case, and that such disclosure be made only to the defendant and his attorney; that if copies of any transcripts of testimony or exhibits are made for the defense, that they shall be maintained in the custody of the defense attorney; that such material shall not be reproduced or disseminated; and that such materials shall be returned to the plaintiff at the completion of this case.

WHEREFORE, the plaintiff respectfully requests that the Court authorize the disclosure of grand jury testimony and exhibits to the defendant and his counsel, in the course of providing discovery in this case, on the terms and conditions outlined above.

Respectfully submitted this 24th day of March, 2016.

JOHN F. WALSH
United States Attorney

s/ Linda Kaufman
LINDA KAUFMAN
Assistant U.S. Attorney
1225 17th Street, Suite 700
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Email: linda.kaufman@usdoj.gov

2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of March, 2015, I electronically filed the foregoing **PLAINTIFF'S MOTION TO DISCLOSE MATTERS OCCURING BEFORE GRAND JURY TO DEFENDANT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Mr. Matthew Golla
Matt_Golla@fd.org

s/*Mariah Tracy*
Mariah Tracy
Legal Assistant
United States Attorney's Office
1225 17th Street, Suite 700
Denver, CO 80202
303 454-0100
Fax: 303 454-0402
Email: mariah.tracy@usdoj.gov

3

Case No. 1:15-cr-00395-REB Document 173-1 Filed 09/10/18 USDC Colorado pg 47 of
Case 1:15-cr-00395-REB Document 14 Filed 03/24/16 Page 1 of 2
271

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**1. ALAN ALONZO WILLIAMS,**

     Defendant.

---

## ORDER GRANTING PLAINTIFF'S MOTION TO DISCLOSE
## MATTERS OCCURRING BEFORE GRAND JURY TO DEFENDANT

---

This matter is before the Court on Plaintiff's Motion to Disclose Matters Occurring Before Grand Jury to Defendant (Doc. 18), pursuant to Fed. R. Crim. P. 6 (e) (3) (E) (i). Having reviewed the motion and being otherwise advised in the premises, the Court finds that good and sufficient cause supports the same, and it is therefore

ORDERED that Plaintiff's motion is granted. Testimony of witnesses before the grand jury and exhibits presented to the grand jury may be disclosed to the defendant and his counsel in the course of discovery in this case. It is further

ORDERED that such materials shall only be used in defending this case; that such materials may be disclosed only to the defendant and his attorney; that if copies are made, the defendant's attorney shall maintain custody of such copies, and shall not reproduce or disseminate them; and that any material provided pursuant to this Order shall be returned to the plaintiff at the completion of the case.

Case No. 1:15-cr-00395-REB   Document 173-14   filed 09/10/18   USDC Colorado   pg 48 of
271
Case 1:15-cr-00395-REB   Document 14   Filed 03/24/16   Page 2 of 2

DATED: _____   ____, 2016.


BY THE COURT:


_____
ROBERT E. BLACKBURN
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.    15-cr-00395-REB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ALAN ALONZO WILLIAMS,

        Defendant.

_____

## AMENDED NOTICE OF APPEARANCE
_____

      The Office of the Federal Public Defender, by and through undersigned counsel,

hereby enters its appearance in the above captioned case.

                                 Respectfully submitted,

                                 VIRGINIA GRADY
                                 Federal Public Defender

                                 s/ Matthew Golla
                                 Matthew C. Golla
                                 Assistant Federal Public Defender
                                 633 17th Street, Suite 1000
                                 Denver, CO  80202
                                 Telephone:  (303) 294-7002
                                 FAX:  (303) 294-1192
                                 Matt_Golla@fd.org
                                 Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2016, I electronically filed the foregoing **NOTICE OF APPEARANCE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Linda Kaufman, Assistant United States Attorney
      Linda.Kaufman@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Alan Williams       *via U.S. mail*

        s/ Matthew Golla
        Matthew C. Golla
        Assistant Federal Public Defender
        633 17th Street, Suite 1000
        Denver, CO  80202
        Telephone:  (303) 294-7002
        FAX:  (303) 294-1192
        Matt_Golla@fd.org
        Attorney for Defendant

Case 1:15-cr-00395-REB   Document 16   Filed 03/25/16   Page 1 of 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO DISCLOSE MATTERS OCCURING
[*sic*]  BEFORE GRAND JURY TO DEFENDANT**

---

**Blackburn, J.**

     This matter is before me on **Plaintiff's Motion To Disclose Matters Occuring**
[*sic*] **Before Grand Jury to Defendant** [#14][1] filed March 24, 2016.  Having reviewed
the motion and being otherwise advised in the premises, I find that good and sufficient
cause supports the same.

     **THEREFORE, IT IS ORDERED** as follows:

     1.  That the **Plaintiff's Motion To Disclose Matters Occuring** [*sic*] **Before
Grand Jury to Defendant** is granted;

     2.  That the testimony of witnesses before the grand jury and exhibits presented
to the grand jury may be disclosed to the defendant and his counsel in the course of

---

[1]  "[#14]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this
convention throughout this order.

discovery in this case;

    3.  That such materials shall be used only in defending this case;

    4.  That such materials may be disclosed only to the defendant and his attorney;

    5.  That if copies are made, the defendant's attorney shall maintain custody of such copies, and shall not reproduce or disseminate them; and

    6.  That any material provided pursuant to this Order shall be returned to the plaintiff at the completion of the case.

    Dated March 25, 2016, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

CASE NO.     15-cr-00395-REB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ALAN ALONZO WILLIAMS,

       Defendant.

_____

## UNOPPOSED MOTION TO EXTEND PRETRIAL MOTIONS DEADLINE
_____

Defendant, Alan Alonzo Williams ("Mr. Williams"), by and through counsel, Matthew C. Golla, Assistant Federal Public Defender, respectfully moves this Court to extend the deadlines for filing pretrial motions until April 17, 2016.  In support of this motion Mr. Williams states as follows:

1.     Mr. Williams is charged with four counts of bank fraud in violation of 18 U.S.C. § 1344.

2.     Pretrial motions are currently due in this case on April 7, 2016. A trial is scheduled for May 23, 2016 at 8:30 a.m.

3.     Counsel needs an additional ten days to become better acquainted with the voluminous discovery and determine the appropriate motions in this case.

4.      Counsel has contacted Assistant U.S. Attorney, Linda Kauffman, and she does not oppose this motion.

WHEREFORE, Mr. Williams respectfully moves this Court to extend the deadlines for filing pretrial motions until April 17, 2016.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Matthew C. Golla
MATTHEW C. GOLLA
Assistant Federal Public Defender
633 - 17th Street, Suite 1000
Denver, Colorado    80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
E-mail: Matt_Golla@fd.org
Attorney for Defendant

2

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2016, I electronically filed the foregoing

### UNOPPOSED MOTION TO EXTEND PRETRIAL MOTIONS DEADLINE

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Linda Kaufman, Assistant United States Attorney
      Linda.Kaufman@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Alan Williams *via U.S. mail*

                             s/Matthew C. Golla
                             MATTHEW C. GOLLA
                             Assistant Federal Public Defender
                             633 17th Street, Suite 1000
                             Denver, CO  80202
                             Telephone:  (303) 294-7002
                             FAX:  (303) 294-1192
                             matt.golla@fd.org
                             Attorney for Defendant

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.     15-cr-00395-REB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ALAN ALONZO WILLIAMS,

        Defendant.

_____

**DEFENDANT'S UNOPPOSED MOTION FOR AN EXCLUSION OF
120 DAYS FROM THE SPEEDY TRIAL ACT**
_____

Defendant, Alan Alonzo Williams ("Mr. Williams"), by and through counsel, Matthew C. Golla, Assistant Federal Public Defender,  respectfully moves this Court to for an order excluding another 120 days from the speedy trial computations and extend the deadline for pretrial motions.  In support of this motion, Mr. Williams states as follows:

1.      On October 2, 2015, a grand jury returned a four count indictment against Mr. Williams.  In counts 1 through 4, Mr. Williams is charged with Bank Fraud, in violation of 18 U.S.C. § 1344 and 2(b).

2.      The Court has set a trial date of May 23, 2016.  Pretrial motions are due April 17, 2016.

3.      18 U.S.C. § 3161(h)(7)(A) authorizes this Court to exclude from the time limitations set forth in the Speedy Trial Act any delay for which the ends of justice served by the

delay outweigh the best interest of the public and the defendant in a speedy trial.  18 U.S.C. § 3161(7)(B)(i) provides that a factor for the Court to consider in granting this delay is "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in the miscarriage of justice."  An additional factor, set forth in 18 U.S.C.§3161(h)(7)(B)(iv) is whether the failure to grant such a continuance "would deny counsel for the defendant... the reasonable time necessary for effective preparation taking into account the exercise of due diligence."  18 U.S.C. § 3161(h)(7)(B)(iv).  Mr. Williams submits that this case meets this criteria and respectfully requests that the Court exclude 120 days from the Speedy Trial calculations.

In *United States v. Williams*, 511 F.3d 1044, 1057 (10th Cir. 2007), the Circuit observed that although "the trial court must make explicit findings regarding why granting the continuance will strike a proper balance between the ends of justice and the best interest of the public and the defendant in a speedy trial," it "need not articulate facts which are obvious and set forth in the motion for the continuance itself."(internal citations omitted) (quoting *United States v. Lattany*, 982 F.2d 866, 879 (3d Cir.1992)).

In *United States v. West*, 828 F.2d 1468, 1469-70 (10th Cir 1987), the Circuit outlined certain factors to consider when weighing whether a denial of a continuance is arbitrary or unreasonable.  These factors include the following:

A.  <u>The diligence of the party requesting the continuance</u>

After counsel's initial review of discovery, it is clear that the investigation required to prepare for trial will necessitate the time requested.  An initial evaluation of this case indicates that there are approximately 8,000 pages of discovery which need to be reviewed and examined.

The four counts of bank fraud are based on four separate applications, with each loan supported by various financial documents that need to be evaluated separately by the defense.

These records are quite extensive encompassing numerous financial records. Preparation will entail reviewing the bank records and related financial documentation. For example, one of alleged false representations made to WebBank relates to ownership of the names borrower's house in Denver, That in turn, relates to a $900,000 loan from Aurora Loan Services to purchase the home. Documentation supporting this particular loan includes bank records, W-2's, earning statements, employment, and tax records.

Another allegation in the indictment is that of a fraudulent $800,000 loan to Mr. Williams business, Williams' Vending Company ("WVC"). Complex documentation supporting this loan includes WVC invoices, bank accounts, personal assets, records, tax records, and managerial qualifications of the applicant. These complex documents need to be reviewed and analyzed.

Approximately five separate bank accounts were allegedly involved in the acquired loans outlined in the indictment. Counsel for Mr. Williams will have to review these bank accounts in conjunction with the separate loan applications.

Several of the loans described in the indictment were Small Business Administration ("SBA") guaranteed loans. Required documentation for this type of loan is usually more voluminous since the SBA requires extensive qualifying paperwork. For example, a personal guarantee of the applicant was required with this particular loan, as well as documentation regarding the applicant's personal history and managerial experience.

In addition, two other loans which the government is likely to designate as 404(b) evidence, both SBA loans, will also need to be reviewed for purposes of trial. The supporting

3

documentation underlying all of these loans are complex financial documents consisting of business contracts, asset and liability sheets, and invoices.

Mr. Williams provided a two hour interview to investigating agents on the day of his arrest.  This interview and the preceding events will need to be analyzed and researched with respect to a potential motion to suppress.

Finally, there are several witnesses who are located out of state.  Additional time will be needed to locate, schedule and interview these witnesses.

While each case is different, in undersigned counsel's experience, white collar cases similar to those alleged here, may involve more complex pretrial motions.  Given the volume of discovery in this case, the defense cannot reasonably review all of the discovery, analyze potential defenses and the need for expert witnesses, interview and retain any expert witnesses, by late May of 2016.  To provide effective representation, a continuance of the current deadline is needed.

B.  The likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance

A continuance of the trial in this matter would allow adequate time for counsel to accomplish the purposes set forth above as the need for the continuance.  Mr. Williams requests a continuance so that the defense will have sufficient time to investigate the case, research the legal issues surrounding the case, file any necessary pretrial motions, and properly defend against the allegations.

4

C. The inconvenience to the opposing party, its witnesses, and the court resulting from the continuance:

There is no information to suggest that the government or its witnesses would be inconvenienced by this requested continuance. As set forth above, the government does not oppose this motion. Counsel is not aware of any inconvenience that will result to this Honorable Court as a result of this requested continuance, but Counsel respectfully cannot presume in any given instance that the Court would or would not be inconvenienced by this request. Counsel does not intend inconvenience to this Court and knows of no particular aspect of this request which would cause such a problem.

D. The need asserted for the continuance and the harm the appellant might suffer as a result of the district court's denial of the continuance:

The need for the continuance is great. Without such a continuance, counsel for the defendant would be denied "reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv).

Until all the discovery is reviewed, the necessary investigation has been completed, and the legal issues have been researched, counsel cannot effectively prepare pretrial motions and defend against the pending charges. The harm that would result by this Court's denial of the request for a continuance would be great as it would deprive the defendant of adequate and competent counsel. Without the requested continuance, the defense will be unable to prepare a defense in this case and counsel will not be able to provide effective assistance of counsel.

Under the factors set forth in *West*, *supra*, as well as the teachings of *Williams, supra*, *United States v. Toombs*, 475 F.3d 1262, 1268 (10th Cir. 2009), and *United States v. Medrano*, 2009 WL 45547801 *4-7 (08-1273)(10th Cir. December 7, 2009), even exercising due diligence

5

undersigned counsel could not be prepared for trial within the time limits of the Speedy Trial
Act.

      4.     Because it would be unreasonable to expect adequate preparation for pretrial
proceedings or the trial itself without the normal speedy trial limits, the Defendant respectfully
requests that this Court vacate all current trial dates and allow a significant additional period of
time to prepare this case for trial.  As a result, the defense respectfully requests that the Court
exclude 120 days from the Speedy Trial limits.

      5.     Undersigned counsel has contacted Assistant United States Attorney Linda
Kaufman and she does not oppose this motion.

      WHEREFORE, Mr. Williams respectfully moves this Court for an order excluding 120
days from the speedy trial computations, vacating the May 23, 2016 trial, the deadline for filing
of pretrial motions, and all related deadlines.


          Respectfully submitted,

          VIRGINIA L. GRADY
          Federal Public Defender



          s/ Matthew C. Golla
          MATTHEW C. GOLLA
          Assistant Federal Public Defender
          633 - 17th Street, Suite 1000
          Denver, Colorado    80202
          Telephone:  (303) 294-7002
          FAX:  (303) 294-1192
          E-mail: Matt_Golla@fd.org
          Attorney for Defendant

6

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2016, I electronically filed the foregoing

### DEFENDANT'S UNOPPOSED MOTION FOR AN EXCLUSION OF 180 DAYS FROM THE SPEEDY TRIAL ACT

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Linda Kaufman, Assistant United States Attorney
        Linda.Kaufman@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Alan Williams            *via U.S. mail*

> s/Matthew C. Golla
> MATTHEW C. GOLLA
> Assistant Federal Public Defender
> 633 17th Street, Suite 1000
> Denver, CO  80202
> Telephone:  (303) 294-7002
> FAX:  (303) 294-1192
> matt.golla@fd.org
> Attorney for Defendant

7

Case No. 1:15-cr-00395-REB   Document 172-1   filed 09/10/19   USDC Colorado   pg 63 of
271
Case 1:15-cr-00395-REB   Document 21   Filed 04/25/16   Page 1 of 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No.  15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

      Defendant.

---

**MINUTE ORDER**[1]

---

      The matter is before the court on the **Defendant's Unopposed Motion for an Exclusion of 120 Days from the Speedy Trial Act** [#20][2] filed April 15, 2016.  This order is entered to set a date and time at which the court will hear the motion.

      **THEREFORE, IT IS ORDERED** as follows:

      1.  That on **May 6, 2016**, commencing at 2:00 p.m. (MDT), the court shall hear the **Defendant's Unopposed Motion for an Exclusion of 120 Days from the Speedy Trial Act**; and

      2.  That, to the extent necessary, the United States Marshal for the District of Colorado shall assist the court in securing the appearance of the defendant for this hearing.

      Dated:  April 25, 2016

---

[1] This minute order is issued pursuant to the express authority of the Honorable Robert E. Blackburn, United States District Judge for the District of Colorado.

[2] "[#20]" is an example of the convention the court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  The court uses this convention throughout this order.

Case No. 1:15-cr-00395-REB   Document 173-1   Filed 09/10/19   USDC Colorado   pg 64 of
271
Case 1:15-cr-00395-REB   Document 22   Filed 05/02/16   Page 1 of 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No.  15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

      Defendant.

---

**MINUTE ORDER**[1]

---

The matter is before the court *sua sponte*.  Due to a conflict in the court's calendar, the time of the hearing on the **Defendant's Unopposed Motion for an Exclusion of 120 Days from the Speedy Trial Act** [#20][2] filed April 15, 2016, must be changed.  After conferring with counsel, and with their agreement,

**IT IS ORDERED** as follows:

1.  That the time of the hearing on the **Defendant's Unopposed Motion for an Exclusion of 120 Days from the Speedy Trial Act** is reset from May 6, 2016, at 2:00 p.m. to the same date at 10:30 a.m. (MDT); and

2.  That, to the extent necessary, the United States Marshal for the District of Colorado shall assist the court in securing the appearance of the defendant for this hearing.

      Dated:  May 2, 2016

---

[1] This minute order is issued pursuant to the express authority of the Honorable Robert E. Blackburn, United States District Judge for the District of Colorado.

[2]  "[#20]" is an example of the convention the court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  The court uses this convention throughout this order.

Case No. 1:15-cr-00395-REB  Document 173-1  filed 09/10/19  USDC Colorado  pg 65 of
271
Case 1:15-cr-00395-REB  Document 29  Filed 05/06/16  Page 1 of 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Date:              May 6, 2016

Deputy Clerk:      Kathleen Finney
Court Reporter:    Gwen Daniel

---

**Criminal Action No.  15-cr-00395-REB**

*Parties:*                              *Counsel:*

UNITED STATES OF AMERICA,               Linda Kaufman

      Plaintiff,

v.

ALAN ALONZO WILLIAMS,                   Matthew Golla

      Defendant.

---

**COURTROOM MINUTES**

---

**Motion Hearing on #20**

**10:44 a.m.    Court in session.**

Appearances of counsel.

Defendant is present in custody.

Opening statements by the court.  The matter is before the court for hearing and
consideration on the **Defendant's Unopposed Motion for an Exclusion of 120 Days
from the Speedy Trial Act** [#20] filed April 15, 2015.

Argument by Mr. Golla.

Argument by Ms. Kaufman.

Court's findings of fact, conclusions of law, and order.

Case No. 1:15-cr-00395-REB Document 173-1 Filed 09/10/16 USDC Colorado pg 66 of
Case 1:15-cr-00395-REB Document 25 Filed 05/06/16 Page 2 of 2
271

**IT IS ORDERED** as follows:

1. That the **Defendant's Unopposed Motion for an Exclusion of 120 Days
   from the Speedy Trial Act** [#20] is **GRANTED**; insofar as consistent with
   the foregoing findings, conclusions, and the following orders;

2. That the time from and including today through and including October 3,
   2016 is **excluded** from the time for a speedy trial under the Speedy Trial
   Act of 1974;

3. That any non-CJA pretrial motions shall be filed by **August 8, 2016**, and
   any corresponding responses shall be filed by **August 26, 2016**;

4. That a further Status Conference is set **September 22, 2016**, commencing
   at **1:15 p.m.** (MDT), at which counsel and the defendant shall appear
   before the court without further notice or order; provided further, that to the
   extent necessary, the United States Marshal for the District of Colorado
   shall assist the court in securing the appearance of the defendant;

5. That the Trial Preparation Conference now set May 20, 2016, is **vacated**
   and **continued** pending further order of court;

6. That the trial by jury now set to commence May 23, 2016, is **vacated** and
   **continued** pending further order of court; and

7. That the defendant is remanded to the United States Marshal for continued
   detention.

**11:01 a.m.    Court in recess.**

Total time in court:00:17

Hearing concluded.

Case No. 1:15-cr-00395-REB  Document 172-1  Filed 09/10/19  USDC Colorado  pg 67 of
Case 1:15-cr-00395-REB  Document 24  Filed 07/15/16  Page 1 of 3
271

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.     15-cr-00395-REB

UNITED STATES OF AMERICA,

   Plaintiff,

v.

ALAN ALONZO WILLIAMS,

   Defendant.
_____

**MOTION TO WITHDRAW AS COUNSEL OF RECORD AND TO
APPOINT NEW COUNSEL FROM THE CRIMINAL JUSTICE ACT PANEL**
_____

   The Office of the Federal Public Defender, by and through undersigned counsel, moves

to withdraw as counsel for the above named Defendant, Alan Williams.  An irreconcilable

concurrent conflict of interest has been discovered to exist within the Office of the Federal

Public Defender to the extent that continued representation of Mr. Williams could violate Rules

1.7(a)(2) and 1.16(a)(1) of the Colorado Rules of Professional Conduct, which have been

adopted by the Court in D.C.Colo. L.Cr.R. 57.6.

   Rule 1.7(a)(2) of the Colorado Rules of Professional Conduct states that " a lawyer shall

not represent a client if the representation involves a concurrent conflict of interest.  A

concurrent conflict of interest exists if there is a significant risk that the representation of one or

more clients will be materially limited by the lawyer's responsibilities to another client, former

client or a third person or by a personal interest of the lawyer."

   Rule 1.16(a)(1) of the Colorado Rules of Professional Conduct further states that, "a

lawyer shall not represent a client or, where representation has commenced, shall withdraw from

the representation of a client if the representation will result in violation of the rules of

professional conduct or other law."

   After reviewing the facts and circumstances surrounding the allegations against Mr.

Williams, undersigned counsel believes that there is a significant risk that the continued

representation of Mr. Williams will be materially limited by the responsibilities to another

current client of the Federal Public Defender's Office.  Based on this conflict, the Office of the

Federal Public Defender moves to withdraw as counsel and would further request that the Court

appoint an attorney from the CJA panel to represent Mr. Williams in the above-referenced case.


                              Respectfully submitted,

                              VIRGINIA GRADY
                              Federal Public Defender



                              s/ Matthew Golla
                              Matthew C. Golla
                              Assistant Federal Public Defender
                              633 17th Street, Suite 1000
                              Denver, CO  80202
                              Telephone:  (303) 294-7002
                              FAX:  (303) 294-1192
                              Matt_Golla@fd.org
                              Attorney for Defendant


                                   2

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Linda Kaufman, Assistant United States Attorney
       Linda.Kaufman@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Alan Williams            *via U.S. mail*


                         s/Matthew C. Golla
                         MATTHEW C. GOLLA
                         Assistant Federal Public Defender
                         633 17th Street, Suite 1000
                         Denver, CO  80202
                         Telephone:  (303) 294-7002
                         FAX:  (303) 294-1192
                         matt.golla@fd.org
                         Attorney for Defendant

3

Case No. 1:15-cr-00395-REB   Document 172-1   Filed 09/10/19   USDC Colorado   pg 70 of
271
Case 1:15-cr-00395-REB   Document 26   Filed 07/19/16   Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  15-CR-00395-REB

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALAN ALONZO WILLIAMS.

Defendant.

## MINUTE ORDER

Entered by Magistrate Judge Michael J. Watanabe

It is hereby ORDERED that Assistant Federal Public Defender Matthew Golla's
Motion to Withdraw as Counsel of Record and to Appoint Counsel from the Criminal
Justice Act Panel (docket no. 24) is GRANTED finding good cause shown.  Assistant
Federal Public Defender Matthew Golla is WITHDRAWN as counsel of record for
Defendant Alan Alonzo Williams.

It is FURTHER ORDERED that substitute counsel from the CJA Panel is
appointed to represent Defendant Alan Alonzo Williams.

Date: July 19, 2016

Case No. 1:15-cr-00395-REB   Document 172-1   Filed 09/10/19   USDC Colorado   pg 71 of
271
Case 1:15-cr-00395-REB   Document 27   Filed 07/26/16   Page 1 of 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## ENTRY OF APPEARANCE

---

Michael J. Gallagher, of the law firm of Davis Graham & Stubbs, LLP, hereby enters his

appearance on behalf of Defendant Alan Alonzo Williams in this matter.

Respectfully submitted this 26th day of July, 2016.


    */s/ Michael J. Gallagher*
    MICHAEL J. GALLAGHER
    DAVIS GRAHAM & STUBBS LLP
    1550 Seventeenth Street, Suite 500
    Denver, CO  80202
    Telephone:  (303) 892-9400
    Mike.Gallagher@dgslaw.com

    Attorney for Defendant Alan Alonzo Williams

4196998.1

Case 1:15-cr-00395-REB  Document 27  Filed 07/26/16  Page 2 of 2

**Certificate of Service**

I certify that on July 26, 2016, I electronically filed the foregoing *ENTRY OF APPEARANCE* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

　　　　　　　　　　　　　　 */s/ Patricia Henson*
　　　　　　　　　　　　　　 Patricia Henson

2

Case No. 1:15-cr-00395-REB   Document 173-1   Filed 09/10/19   USDC Colorado   pg 73 of
271
Case 1:15-cr-00395-REB   Document 28   Filed 08/08/16   Page 1 of 4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.      ALAN ALONZO WILLIAMS,

      Defendant.

---

## DEFENDANT'S UNOPPOSED MOTION TO EXTEND PRE-TRIAL MOTIONS DEADLINES AND EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

---

      Defendant Alan Alonzo Williams ("Defendant"), by his undersigned counsel, requests a three-week extension of his deadline to file pre-trial motions and related deadlines ("Motion"), and that this additional time be excluded from calculations under the Speedy Trial Act. In support of this Motion, Defendant states as follows:

      1.      Defendant has been in federal custody since his arrest in this case on March 18, 2016. That same day, the Federal Public Defender was appointed to represent Defendant.

      2.      On April 15, 2016, Defendant filed a motion to exclude 120 days under the Speedy Trial Act, and on May 6, 2016, the Court heard argument on Defendant's motion. The Court granted Defendant's motion, setting a revised pre-trial motions deadline of Monday, August 8, 2016, with responses due by Friday, August 26, 2016.

3.     In granting Defendant's motion, the Court excluded the time period from May 6, 2016 through October 3, 2016, a period of approximately 153 days.

4.     This Motion incorporates and adopts Defendant's earlier motion to exclude time under the Speedy Trial Act, as well as the Court's subsequent order.  The reasoning cited by the Federal Public Defender is equally valid today for Defendant's newly appointed attorney.  *See United States v. West*, 828 F.2d 1468 (10th Cir. 1987), and *United States v. Toombs*, 475 F.3d 1262 (10th Cir. 2009).

5.     On July 15, 2016, the Federal Public Defender filed a motion to withdraw as counsel for Defendant.  On July 19, 2016, the Court granted the motion to withdraw.

6.     On July 27, 2016, undersigned counsel filed his Entry of Appearance in this case.

7.     Since that time, undersigned counsel has received from the Federal Public Defender and Assistant U.S. Attorney Linda Kaufman extensive discovery in this matter, including over a thousand pages of bank records.  (The Indictment in this case alleges multiple violations of 18 U.S.C. § 1344 – bank fraud.)  Defense counsel has diligently begun the review of these materials, but additional time is needed to evaluate these materials and otherwise investigate the underlying facts.

8.     Defendant makes this request so that his new appointed attorney may have "the reasonable time necessary for effective preparation taking into account the exercise of due diligence" prior to the pre-trial motions deadline and status conference in this case.  *See* 18 U.S.C. §3161(h)(7)(B)(iv).  Defendant makes this Motion not for purposes of delay, but so that his newly-appointed counsel may perform due diligence in reviewing discovery to determine what, if any, pre-trial motions should be filed.  Defendant believes such an extension will be

sufficient to accomplish this purpose, and that the Government will not be inconvenienced by this request. Pursuant to 18 U.S.C. § 3161(h)(7)(A), Defendant asks that this extension of time be excluded from the Speedy Trial Act because the ends of justice served by this delay outweigh the best interest of the public and Defendant in a speedy trial.

9. Undersigned counsel has discussed this Motion with Defendant, who agrees that an extension of the pre-trial motions deadline and exclusion of this additional time period under the Speedy Trial Act are in his best interests.

10. Undersigned counsel has discussed this Motion with counsel for the Government, Assistant U.S. Attorney Linda Kaufman. Ms. Kaufman is not opposed to the Motion.

11. This Motion is undersigned counsel's first request for continuance in this matter, and Defendant's second such filing. (Prior counsel requested a previous extension on April 7, 2016.)

Defendant respectfully requests a three-week extension of his pre-trial motions filing deadline until on or about August 29, 2016, with responses thereby due by Friday, September 16, 2016. Defendant additionally asks that the status conference scheduled in this matter also be continued three weeks from September 22, 2016 until October 13, 2016, and that the time period from May 6, 2016, through October 13, 2016, be excluded from the calculation under the Speedy Trial Act.

Respectfully submitted this 8th day of August, 2016.

*/s/ Michael J. Gallagher*
MICHAEL J. GALLAGHER

DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, CO  80202
Telephone:  (303) 892-9400
Mike.Gallagher@dgslaw.com

Attorney for Defendant Alan Alonzo Williams

## Certificate of Service

I certify that on August 8, 2016, I electronically filed the foregoing *DEFENDANT'S UNOPPOSED MOTION TO EXTEND PRE-TRIAL MOTIONS DEADLINES AND EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

    */s/ Lyn Buchele*
Lyn Buchele

Case No. 1:15-cr-00395-REB   Document 173-1 filed 09/10/18   USDC Colorado   pg 77 of
271
Case 1:15-cr-00395-REB   Document 128   Filed 08/08/16   Page 1 of 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## [PROPOSED] ORDER

---

Having considered Defendant's Unopposed Motion to Extend Pre-Trial Motions Deadlines and Exclude Time Under the Speedy Trial Act ("Motion"), the Court finds that the Motion should be GRANTED.  As such, pre-trial motions in this case are now due no later than August 29, 2016, with corresponding responses due no later than September 16, 2016, and the Status Conference in this matter is reset to October 13, 2016, at _____. Additionally, the time period from May 6, 2016, and October 13, 2016, is excluded from the Speedy Trial Act.

So ORDERED this _____ day of August, 2016.

_____
HON. ROBERT E. BLACKBURN
Senior United States District Judge for the
District of Colorado

4201438.2

Case No. 1:15-cr-00395-REB   Document 172-1   filed 09/10/19   USDC Colorado   pg 78 of
271
Case 1:15-cr-00395-REB   Document 29   Filed 08/19/16   Page 1 of 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No.  15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

      Defendant.

---

**MINUTE ORDER**[1]

---

      The matter is before the court on the **Defendant's Unopposed Motion To Extend Pre-Trial Motions Deadlines and Exclude Time under the Speedy Trial Act** [#28][2] filed August 8, 2016.  This order is entered to schedule and coordinate a date and time at which the court will hear the motion.

      **THEREFORE, IT IS ORDERED** as follows:

      1.  That on **August 23, 2016**, at 9:30 a.m. (MDT), the court shall conduct a telephonic (non-appearance) setting conference to set the motion for hearing; and

      2.  That counsel for the defendant shall arrange, initiate, and coordinate the conference call to chambers at **303-335-2350** to facilitate the setting conference.

      Dated:  August 19, 2016

---

[1] This minute order is issued pursuant to the express authority of the Honorable Robert E. Blackburn, United States District Judge for the District of Colorado.

[2] "[#28]" is an example of the convention the court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  The court uses this convention throughout this order.

Case No. 1:15-cr-00395-REB   Document 172-1   filed 09/10/19   USDC Colorado   pg 79 of
271
Case 1:15-cr-00395-REB   Document 30   Filed 08/23/16   Page 1 of 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No.  15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

      Defendant.

---

**MINUTE ORDER**[1]

---

      On August 23, 2016, the court conducted a telephonic setting conference to set
the **Defendant's Unopposed Motion To Extend Pre-Trial Motions Deadlines and
Exclude Time under the Speedy Trial Act** [#28][2] filed August 8, 2016, for hearing.
After conferring with counsel, and by agreement of all,

      **IT IS ORDERED** as follows:

      1.  That on **August 24, 2016**, commencing at 11:00 a.m. (MDT), the court shall
hear the **Defendant's Unopposed Motion To Extend Pre-Trial Motions Deadlines
and Exclude Time under the Speedy Trial Act**; and

      2.  That, to the extent necessary, the United States Marshal for the District of
Colorado shall assist the court in securing the appearance of the defendant for this
hearing.

      Dated:  August 23, 2016

---

[1] This minute order is issued pursuant to the express authority of the Honorable Robert E.
Blackburn, United States District Judge for the District of Colorado.

[2] "[#28]" is an example of the convention the court uses to identify the docket number assigned to
a specific paper by the court's case management and electronic case filing system (CM/ECF).  The court
uses this convention throughout this order.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Date:                    August 24, 2016

Deputy Clerk:        Kathleen Finney
Court Reporter:      Julie Thomas

---

**Criminal Action No.  15-cr-00395-REB**

_Parties:_                                      _Counsel:_

UNITED STATES OF AMERICA,          Linda Kaufman

     Plaintiff,

v.

ALAN ALONZO WILLIAMS,              Michael Gallagher

     Defendant.

---

**COURTROOM MINUTES**

---

**Motion Hearing on #28.**

**11:07 a.m.    Court in session.**

Appearances of counsel.

Defendant is present in custody.

Opening statements by the court.  The matter is before the court for hearing and consideration on the **Defendant's Unopposed Motion to Extend Pre-Trial Motions Deadlines and Exclude Time Under the Speedy Trial Act** [#28] filed August 8, 2016.

Statement by Ms. Kaufman.

Argument by Mr. Gallagher.

Court's findings of fact, conclusions of law, and order.

Case No. 1:15-cr-00395-REB  Document 172-1  filed 09/10/19  USDC Colorado  pg 81 of
271
Case 1:15-cr-00395-REB  Document 31  Filed 08/24/16  Page 2 of 2

**IT IS ORDERED** as follows:

1. That the **Defendant's Unopposed Motion to Extend Pre-Trial Motions
   Deadlines and Exclude Time Under the Speedy Trial Act** [#28] is
   **GRANTED**;

2. That the time from and including **October 3, 2016** through and including
   **October 13, 2016** is **excluded** from the time for a speedy trial under the
   Speedy Trial Act of 1974;

3. That any non-CJA pretrial motions shall be filed by **August 29, 2016**, and
   any corresponding responses shall be filed by **September 16, 2016**;

4. That the Status Conference now set September 22, 2016 is **vacated** and
   **continued** to **October 13, 2016**, commencing at **1:30 p.m.** (MDT), at
   which counsel and the defendant shall appear before the court without
   further notice or order; provided further, that to the extent necessary, the
   United States Marshal for the District of Colorado shall assist the court in
   securing the appearance of the defendant; and

5. That the defendant is remanded to the United States Marshal for continued
   detention.

**11:22 a.m.   Court in recess.**

Total time in court:00:17

Hearing concluded.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## DEFENDANT'S UNOPPOSED MOTION TO CONTINUE STATUS CONFERENCE AND EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

---

Defendant Alan Alonzo Williams ("Defendant"), by his undersigned counsel, requests an additional thirty day continuance of the status conference currently set in this matter for 1:30 P.M. on Thursday, October 13, 2016 ("Motion"), and that this additional time be excluded from calculations under the Speedy Trial Act. In support of this Motion, Defendant states as follows:

1.     Defendant has been in federal custody since his arrest in this case on March 18, 2016. That same day, the Federal Public Defender was appointed to represent Defendant.

2.     On April 15, 2016, Defendant filed a motion to exclude 120 days under the Speedy Trial Act, and on May 6, 2016, the Court heard argument on Defendant's motion. The Court granted Defendant's motion, setting a revised pre-trial motions deadline of Monday, August 8, 2016, with responses due by Friday, August 26, 2016.

3.      In granting Defendant's motion, the Court excluded the time period from May 6, 2016 through October 3, 2016, a period of approximately 153 days.

4.      On July 15, 2016, the Federal Public Defender filed a motion to withdraw as counsel for Defendant.  On July 19, 2016, the Court granted the motion to withdraw.

5.      On July 27, 2016, undersigned counsel filed his Entry of Appearance in this case.

6.      On August 8, 2016, Defendant, via undersigned counsel, filed a motion to extend pre-trial deadlines and exclude time under the Speedy Trial Act.  This motion sought additional time for newly appointed counsel to review the extensive discovery in this case and evaluate the need for filing of motions.

7.      After a hearing on August 24, 2016, the Court granted Defendant's motion, and excluded the time from October 3, 2016, to October 13, 2016, from calculations under the speedy trial act.  During the additional time provided, undersigned counsel conferred with the government on a number of issues and resolved them without the necessity of filing motions.  During this additional time, undersigned counsel also began to investigate the status of three state felony cases pending against Mr. Williams.

8.      This Motion incorporates and adopts Defendant's earlier motions to exclude time under the Speedy Trial Act, as well as the Court's subsequent orders.  The reasoning cited therein is equally valid today.  *See United States v. West*, 828 F.2d 1468 (10th Cir. 1987), and *United States v. Toombs*, 475 F.3d 1262 (10th Cir. 2009).

9.      Since the Court granted the Defendant's last motion for additional time, undersigned counsel has vigorously pursued a "global resolution" of Defendant's four pending criminal cases.  In addition to this pending matter, the Defendant has unresolved criminal cases

pending in the City and County of Denver, Arapahoe County, and Broomfield County. Undersigned counsel's efforts have involved multiple discussions with prosecutors from each of the three separate jurisdictions, discussions with multiple Public Defenders, and researching the pending charges and possible sentences that the Defendant may face in those cases. Undersigned counsel has kept the government advised of these discussions.

10.     Proper representation of the Defendant necessarily must take into account the impact of all of the charges pending against him. Though substantial progress has been made towards a "global resolution," of Defendant's four pending cases, Defendant requests additional time so that undersigned counsel may have "the reasonable time necessary for effective preparation taking into account the exercise of due diligence" prior to the status conference in this case. *See* 18 U.S.C. §3161(h)(7)(B)(iv). Defendant makes this Motion not for purposes of delay, but so undersigned counsel may finish performing due diligence in attempting to reach a global resolution that includes discussions with state authorities. This extension should be sufficient to accomplish this purpose, and the Government will not be inconvenienced by this request. Pursuant to 18 U.S.C. § 3161(h)(7)(A), Defendant asks that this extension of time be excluded from the Speedy Trial Act because the ends of justice served by this delay outweigh the best interest of the public and Defendant in a speedy trial.

11.     Defendant also makes this request so as to avoid any potential "miscarriage of justice" resulting from the premature termination of Defendant's efforts at achieving a "global resolution" of his four pending cases. *See* 18 U.S.C. § 3161(h)(7)(B)(i). Undersigned counsel has invested substantial efforts investigating Defendant's pending cases, and believes that "global resolution" can be achieved within this additional 30 day period.

3

Case No. 1:15-cr-00395-REB   Document 172-1   filed 04/10/19   USDC Colorado   pg 85 of
271
Case 1:15-cr-00395-REB   Document 32   Filed 10/12/16   Page 4 of 5

12.     Undersigned counsel has discussed this Motion with Defendant, who agrees that a
continuance of the status conference and exclusion of this additional time period under the
Speedy Trial Act are in his best interests.

13.     Undersigned counsel has discussed this Motion with counsel for the Government,
Assistant U.S. Attorney Linda Kaufman.  Ms. Kaufman is not opposed to the Motion.

14.     This Motion is undersigned counsel's second request for continuance in this
matter, and Defendant's third such filing.  (Prior counsel requested a previous extension on April
7, 2016.)

Defendant respectfully requests a thirty-day extension of the status conference scheduled
in this matter for October 13, 2016, until on or about Monday, November 14, 2016, and that the
time period from October 13, 2016 through November 14, 2016 be excluded from the calculation
under the Speedy Trial Act.

Respectfully submitted this 12th day of October, 2016.

   /s/ Michael J. Gallagher
MICHAEL J. GALLAGHER
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado  80202
Telephone:  (303) 892-9400
Mike.Gallagher@dgslaw.com

Attorney for Defendant Alan Alonzo Williams

4

**Certificate of Service**

I certify that on October 12, 2016, I electronically filed the foregoing *DEFENDANT'S UNOPPOSED MOTION TO CONTINUE STATUS CONFERENCE AND EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

    *s/ Kathrine M. Aragon*
Kathrine Aragon

Case No. 1:15-cr-00395-REB Document 173-1 Filed 09/10/18 USDC Colorado pg 87 of
271
Case 1:15-cr-00395-REB Document 132-1 Filed 10/12/16 Page 1 of 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.    ALAN ALONZO WILLIAMS,

     Defendant.

---

## [PROPOSED] ORDER

---

Having considered Defendant's Unopposed Motion to Continue Status Conference and Exclude Time Under the Speedy Trial Act ("Motion"), the Court finds that the Motion should be GRANTED. The Court finds that the representations made in said Motion support the following findings, here made: The requested continuance is necessary to avoid a miscarriage of justice to Defendant Williams under 18 U.S.C. § 3161(h)(7)(B)(iv) and to provide Defense counsel the reasonable time necessary for effective preparation under 18 U.S.C. § 3161(h)(7)(B)(i), and that the ends of justice served by granting this continuance outweigh the best interests of the public and the Defendant in a speedy trial.

As such, the Status Conference in this matter is reset to _____ at _____, and the time period from October 13, 2016 until the date of the Status Conference, _____, is excluded from the Speedy Trial Act.

4224386.1

Case 1:15-cr-00395-REB  Document 132-1  Filed 10/12/18  Page 2 of 2

So ORDERED this _____ day of _____, 2016.


_____
HON. ROBERT E. BLACKBURN
Senior United States District Judge for the
District of Colorado

Case No. 1:15-cr-00395-REB   Document 172-1   filed 09/10/19   USDC Colorado   pg 89 of
271
Case 1:15-cr-00395-REB   Document 35   Filed 10/12/16   Page 1 of 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Criminal Case No.  15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

      Defendant.

---

### MINUTE ORDER[1]

---

The matter is before the court on the **Defendant's Unopposed Motion To Continue Status Conference and Exclude Time under the Speedy Trial Act** [#32],[2] filed October 12, 2016.  After careful review of the motion and the file, the court concludes that the motion should be granted.

      **THEREFORE, IT IS ORDERED** as follows:

      1.  That the status conference set October 13, 2016, is vacated and continued pending further order;

      2.  That on **October 18, 2016**, at 10:00 a.m. (MDT), the court shall conduct a telephonic (non-appearance) setting conference to reset the status conference;

      3.  That counsel for the defendant shall arrange, initiate, and coordinate the conference call to chambers at **303-335-2350** to facilitate the setting conference; and

      4.  That the court will issue a separate order addressing excludable time under the Speedy Trial Act.

      Dated:  October 12, 2016

---

[1] This minute order is issued pursuant to the express authority of the Honorable Robert E. Blackburn, United States District Judge for the District of Colorado.

[2] "[#32]" is an example of the convention the court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  The court uses this convention throughout this order.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1. ALAN ALONZO WILLIAMS,

 Defendant.

---

## ORDER EXCLUDING ADDITIONAL TIME UNDER THE SPEEDY TRIAL ACT

---

**Blackburn, J.**

 The matter is before me on the **Defendant's Unopposed Motion To Continue Status Conference and Exclude Time under the Speedy Trial Act** [#32],[1] filed October 12, 2016. After careful review of the motion and the file, the court concludes that the motion should be granted.

 The motion to exclude additional time from the time for a speedy trial implicates the Speedy Trial Act of 1974, codified at 18 U.S.C. §§ 3161-3174. Specifically, the request implicates 18 U.S.C. § 3161(h) which provides, in relevant part:

> The following periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence:
> . . . .

---

[1] "[#32]" is an example of the convention the court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). The court uses this convention throughout this order.

Case No. 1:15-cr-00395-REB   Document 172-1   filed 09/10/19   USDC Colorado   pg 91 of
271
Case 1:15-cr-00395-REB   Document 34   Filed 10/14/16   Page 2 of 6

> (7)(A) Any period of delay resulting from a continuance
> granted by any judge . . . at the request of the defendant or
> his counsel or at the request of the attorney for the
> Government, if the judge granted such continuance on the
> basis of his findings that the ends of justice served by taking
> such action outweigh the best interest of the public and the
> defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).

The Speedy Trial Act is "designed to protect a defendant's constitutional right to

a speedy indictment and trial, and to serve the public interest in ensuring prompt

criminal proceedings." *United States v. Hill*, 197 F.3d 436, 440 (10th Cir. 1999). It

requires that a criminal defendant's trial commence within 70 days after his indictment

or initial appearance, whichever is later. *See* 18 U.S.C. § 3161(c)(1); *United States v.*

*Lugo*, 170 F.3d 996, 1001 (10th Cir. 1999). Certain periods of delay are excluded and

do not count toward the 70-day limit. *See* 18 U.S.C. § 3161(h)(1)-(9). Specifically, "the

Act excludes any period of delay 'resulting from a continuance granted by any judge . . .

on the basis of its findings that the ends of justice served by taking such action outweigh

the best interest of the public and the defendant in a speedy trial.'" *Hill*, 197 F.3d at

440-441 (10th Cir. 1999) (quoting 18 U.S.C. § 3161(h)(7)(A)).

In order for a continuance to qualify as an excludable "ends-of-justice"

continuance under section 3161(h)(7)(A), certain prerequisites must be satisfied. *Id.* at

441. First, I must consider – to the extent relevant and apposite – the following factors

listed in section 3161(h)(7)(B):

> (i) Whether the failure to grant such a continuance in the
> proceeding would be likely to make a continuation of such
> proceeding impossible, or result in a miscarriage of justice;

2

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by [the Act];

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex;

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i) - (iv).

After considering these factors, I must then set forth, "in the record of the case, either orally or in writing, [my] reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.,* § 3161(h)(7)(A).  Although my findings "'may be entered on the record after the fact, they may not be made after the fact.'"  *Hill*, 197 F.3d at 441 (quoting *United States v. Doran*, 882 F.2d 1511, 1516 (10th Cir.1989)). "Instead, '[t]he balancing must occur contemporaneously with the granting of the continuance because Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive[.]'"  *Id.* (quoting *Doran*, 882 F.2d at 1516).  I have

3

Case No. 1:15-cr-00395-REB   Document 173-1   Filed 09/10/19   USDC Colorado   pg 93 of
271
Case 1:15-cr-00395-REB   Document 34   Filed 10/14/16   Page 4 of 6

discharged these duties.

The motion is unopposed.  Thus, the foundational and predicate facts averred in the motion are deemed established, and I need not reiterate them here. The motion describes in reasonable detail the various factors and circumstances that counsel believe necessitate the exclusion of additional time in this case.

Defense counsel has been working diligently to review discovery and otherwise investigate in this matter.  Notwithstanding, defense counsel needs a reasonable, additional time of approximately 30 days to pursue a global and reticulated resolution of all of defendant's pending criminal cases.

In evaluating the request and need to exclude additional time under the Act, I relied on the considerable professional experience and judgment of counsel. Additionally, I was sensitive to and mindful of the teachings of relevant caselaw, including the principles and holdings in *United States v. Williams*, 511 F.3d 1044 (10th Cir. 2007); *United States v. Toombs*, 574 F.3d 1262 (10th Cir. 2009); *United States v. Larson*, 627 F.3d 1198 (10th Cir. 2010); *United States v. Loughrin*, 2013 WL 856577 (10th Cir. 2013); *United States  v. Watson*, 766 F.3d 1219 (10th Cir. 2014); *United States  v. Margheim*, 2014 WL 5462332 (10th Cir. 2014);  *Bloate v. United States*, 599 U.S. 130. 130 S.Ct. 1345, 176 L.Ed.2d 54 (2010); and *United States v. Tinklenberg*, – U.S. –, 131 S.Ct. 2007, 179 L.Ed.2d 1080 (2011).

Based on the relevant record considered as a whole, I find that it would be unreasonable to expect adequate preparation by defendant, despite due diligence, for pretrial or trial proceedings within the time allowed under 18 U.S.C. § 3161(c), even as

Case No. 1:15-cr-00395-REB  Document 172-1  filed 09/10/19  USDC Colorado  pg 94 of
271
Case 1:15-cr-00355-REB  Document 34  Filed 10/14/16  Page 5 of 6

extended by previous orders of this court.  I have considered the factors which I must

under 18 U.S.C. § 3161(h)(7)(B)(i)-(iv).  As required by 18 U.S.C. § 3161(h)(7)(C), I

have not predicated my ruling on congestion of the court's calendar or lack of diligent

preparation by counsel.  Accordingly, I conclude as follows:

(1)  That failure to exclude an additional 30 days under the Act would likely result

in a miscarriage of justice to the defendant – ironically, in the name of speedy trial –

within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i);

(2)  That even considering due diligence, failure to grant the motion would deny

counsel for defendant the reasonable time necessary for effective pretrial and trial

preparation within the meaning of 18 U.S.C. § 3161(h)(7)(B)(iv)[2];

(3)  That an additional 30 days from today's date through and including

November 14, 2016, should be excluded from the computation of the time for speedy

trial; and

(4)  That, therefore, the ends of justice served by excluding additional time

through November 14, 2016, outweighs the best interests of the public and defendant in

a speedy trial within the meaning of 18 U.S.C. § 3161(h)(7)(A).

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Defendant's Unopposed Motion To Continue Status Conference and
Exclude Time under the Speedy Trial Act** [#32] is **GRANTED** insofar as it requests the
exclusion of additional time for a speedy trial; and

2.  That the time from and including today through and including November 14,

---

[2] I did not consider the factors at (B)(ii) and (iii) because they are inapposite.

5

2016, **SHALL BE EXCLUDED** from the time for a speedy trial under the Act.

Dated October 14, 2016, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

6

Case No. 1:15-cr-00395-REB   Document 172-1   Filed 09/10/19   USDC Colorado   pg 96 of
271
Case 1:15-cr-00395-REB   Document 35   Filed 10/19/16   Page 1 of 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Criminal Case No.  15-cr-00395-REB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

     Defendant.

---

**MINUTE ORDER**[1]

---

On October 18, 2016, the court conducted a telephonic setting conference to reset the status conference in this matter.  After conferring with counsel, and by agreement of all,

**IT IS ORDERED** as follows:

1.  That on **November 10, 2016**, commencing at 9:00 a.m. (MST), the court shall conduct a status conference; and

2.  That, to the extent necessary, the United States Marshal for the District of Colorado shall assist the court in securing the appearance of the defendant for this hearing.

Dated:  October 19, 2016

---

[1] This minute order is issued pursuant to the express authority of the Honorable Robert E. Blackburn, United States District Judge for the District of Colorado.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## DEFENDANT'S UNOPPOSED MOTION TO CONTINUE STATUS CONFERENCE AND EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

---

Defendant Alan Alonzo Williams ("Defendant"), by his undersigned counsel, requests an additional sixty-day continuance of the status conference currently set in this matter for 9:00 A.M. on Thursday, November 10, 2016 ("Motion"), and that this additional time be excluded from calculations under the Speedy Trial Act.

This is the third request to continue this status conference, but this continuance is necessary to permit conclusion of four pending felony cases against Mr. Williams in a coordinated global disposition. Undersigned counsel has diligently worked to coordinate this coordinated global disposition, but additional time is needed to complete that work. In further support of this Motion, Defendant states as follows:

1.     Defendant has been in federal custody since his arrest in this case on March 18, 2016. That same day, the Federal Public Defender was appointed to represent Defendant.

4231848

2.      On April 15, 2016, Defendant filed a motion to exclude 120 days under the Speedy Trial Act, principally based on the complexity of the case and extensive discovery in need of review, and on May 6, 2016, the Court heard argument on Defendant's motion.  The Court granted Defendant's motion, setting a revised pre-trial motions deadline of Monday, August 8, 2016, with responses due by Friday, August 26, 2016.

3.      In granting Defendant's motion, the Court excluded the time period from May 6, 2016 through October 3, 2016, a period of approximately 153 days.

4.      On July 15, 2016, the Federal Public Defender filed a motion to withdraw as counsel for Defendant.  On July 19, 2016, the Court granted the motion to withdraw.

5.      On July 27, 2016, undersigned counsel filed his Entry of Appearance in this case.

6.      On August 8, 2016, Defendant, via undersigned counsel, filed a motion to extend pre-trial deadlines and exclude time under the Speedy Trial Act.  This motion sought additional time for newly appointed counsel to review the extensive discovery in this case and evaluate the need for filing of motions.

7.      After a hearing on August 24, 2016, the Court granted Defendant's motion, and excluded the time from October 3, 2016, to October 13, 2016, from calculations under the Speedy Trial Act.

8.      On October 12, 2016, Defendant, via undersigned counsel, filed a motion to continue the status conference and exclude time under the Speedy Trial Act.  This motion sought additional time for counsel to pursue the global resolution of three state felony cases pending against Mr. Williams along with this federal case.  In addition to this pending matter, the

Defendant has unresolved state criminal cases pending in the City and County of Denver, Arapahoe County, and Broomfield County.

9.      Prior to appointment of the undersigned, no effort had been made to coordinate the resolution of the cases pending against Mr. Williams.   Effective representation of Mr. Williams, judicial economy and the ends of justice require an effort to coordinate the disposition of these cases.

10.     The Court granted Defendant's motion, re-set the status conference to November 10, 2016 at 9:00 A.M., and excluded the time from October 13, 2016 to November 14, 2016, from calculations under the Speedy Trial Act.

11.     Since that time, the undersigned has arranged for Ms. Amanda Bailhache of the Office of the Colorado State Public Defender for Boulder and Broomfield Counties to represent Mr. Williams in the Broomfield County case and work to conclude that part of a proposed global disposition.   Due to the press of other business, and a previously scheduled vacation, Ms. Bailhache has not completed her work to enter the case, review discovery and meet with Mr. Williams.   Communications between Mr. Williams and Mr. Bailhache are complicated by the fact that Mr. Williams is in custody in another jurisdiction, and Ms. Bailhache has not yet met with Mr. Williams.   Ms. Bailhache is aware that this extension of time is sought to allow her to complete that work.

12.     Also since that time, the undersigned has arranged for Ms. Stephanie Grismer of the Office of the Colorado State Public Defender for Denver County to represent Mr. Williams in the Denver state case and to conclude that part of the proposed global disposition. Communications between Mr. Williams and Ms. Grismer are complicated by the fact that

Case No. 1:15-cr-00395-RCB Document 172 filed 00/10/10 USDC Colorado pg 100 of
Case 1:15-cr-00395-RCB Document 36 Filed 11/08/16 Page 4 of
271

Mr. Williams is in custody in another jurisdiction. Ms. Grismer advises that the prior public defender file was partially destroyed, and thus she is reopening that file and seeking related discovery. Due to these circumstances and the press of other business, Ms. Grismer has not completed her work to enter the case, review discovery and meet with Mr. Williams. Ms. Grismer is aware that this extension of time is sought to allow her to complete this work.

13.     Mr. Williams is represented in the Arapahoe County state case by Jake Taufer of the Arapahoe County office of the State Public Defender. Mr. Taufer has been working toward a global disposition that includes that case, and has met with Mr. Williams. The Arapahoe County case is scheduled for a sentencing hearing on November 18, 2016.

14.     Conclusion of these cases will necessarily require transportation of Mr. Williams to Broomfield, Denver, and Arapahoe Counties from the federal detention center, which will require writs and significant coordination of schedules of the involved courts and attorneys. This process will take additional time.

15.     Since the date of the last scheduled status conference, the undersigned has made over thirteen telephone calls and six separate e-mail communications with other counsel for Mr. Williams, some extensive, in an effort to complete these global disposition discussions. During this period, undersigned counsel has visited with Mr. Williams on three separate occasions to update him and seek approval of these efforts. Justice and judicial economy require that these discussions be completed, and the delay in completing them is not the fault of Mr. Williams, who remains in custody at the federal detention center.

16.     This Motion incorporates and adopts Defendant's earlier motions to exclude time under the Speedy Trial Act, as well as the Court's subsequent orders. The reasoning cited

4

therein is equally valid today.  *See United States v. West*, 828 F.2d 1468 (10th Cir. 1987), and

*United States v. Toombs*, 475 F.3d 1262 (10th Cir. 2009).

17.    Since the Court granted the Defendant's last motion for additional time,

undersigned counsel has continued to vigorously pursue a "global resolution" of Defendant's

four pending criminal cases.  Undersigned counsel's efforts have involved multiple discussions

with prosecutors from each of the three separate jurisdictions, discussions with multiple Public

Defenders, and researching the consequences of potential global resolution that Defendant faces

in his pending cases.  Because of other commitments, however, Mr. Williams' court-appointed

attorneys in Broomfield and Denver have been as of yet unable to meet with Mr. Williams to

discuss how their cases are affected by this proposed global resolution.  Undersigned counsel has

kept the government generally advised of these discussions.

18.    Though substantial progress has been made towards a "global resolution" of

Defendant's four pending cases, Defendant requests a final continuance to complete or forego

the "global resolution" and allow undersigned counsel "the reasonable time necessary for

effective preparation taking into account the exercise of due diligence" prior to the status

conference in this case.  *See* 18 U.S.C. §3161(h)(7)(B)(iv).  Defendant makes this Motion not for

purposes of delay, but so undersigned counsel may finish performing due diligence in attempting

to reach a global resolution that includes discussions with state authorities.  This extension

should be sufficient to accomplish this purpose, and the Government will not be inconvenienced

by this request.  Pursuant to 18 U.S.C. § 3161(h)(7)(A), Defendant asks that this extension of

time be excluded from the Speedy Trial Act because the ends of justice served by this delay

outweigh the best interest of the public and Defendant in a speedy trial.

Case No. 1:15-cr-00395-REB   Document 173   Filed 09/10/19   USDC Colorado   pg 102 of
271
Case 1:15-cr-00395-REB   Document 36   Filed 11/08/16   Page 6 of 7

19.     Defendant also makes this request so as to avoid any potential "miscarriage of justice" resulting from the premature termination of Defendant's efforts at achieving a "global resolution" of his four pending cases.  *See* 18 U.S.C. § 3161(h)(7)(B)(i).  Undersigned counsel has invested substantial efforts investigating Defendant's pending cases, and believes that "global resolution" can be achieved within this additional 60-day period.

20.     Undersigned counsel has discussed this Motion with Defendant, who agrees that a continuance of the status conference and exclusion of this additional time period under the Speedy Trial Act are in Defendant's best interests.

21.     Undersigned counsel has discussed this Motion with counsel for the Government, Assistant U.S. Attorney Linda Kaufman.  Ms. Kaufman is not opposed to the Motion.

Defendant respectfully requests a sixty-day extension of the status conference scheduled in this matter for November 10, 2016, to and until approximately January 12, 2017, and that the time period from November 14, 2016 through the new hearing date, approximately January 12, 2017, be excluded from the calculation under the Speedy Trial Act.

Respectfully submitted this 8th day of November, 2016.


 */s/ Michael J. Gallagher*
Michael J. Gallagher
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado  80202
Telephone:  (303) 892-9400
Mike.Gallagher@dgslaw.com

Attorney for Defendant Alan Alonzo Williams

6

**CERTIFICATE OF SERVICE**

I certify that on November 8, 2016, I electronically filed the foregoing *DEFENDANT'S UNOPPOSED MOTION TO CONTINUE STATUS CONFERENCE AND EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

   /s/ Lynell E. Buchele
Lynell E. Buchele

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## [PROPOSED] ORDER

---

Having considered Defendant's Unopposed Motion to Continue Status Conference and Exclude Time Under the Speedy Trial Act ("Motion"), the Court finds that the Motion should be GRANTED. The Court finds that the representations made in said Motion support the following findings, here made: the requested continuance is necessary to avoid a miscarriage of justice to Defendant Williams under 18 U.S.C. § 3161(h)(7)(B)(iv) and to provide Defense counsel the reasonable time necessary for effective preparation under 18 U.S.C. § 3161(h)(7)(B)(i), and that the ends of justice served by granting this continuance outweigh the best interests of the public and the Defendant in a speedy trial.

As such, the Status Conference in this matter is reset to _____ at _____, and the time period from November 14, 2016, until the date of the Status Conference, _____, is excluded from the Speedy Trial Act.

4232071.1

So ORDERED this _____ day of November, 2016.

_____
HON. ROBERT E. BLACKBURN
Senior United States District Judge for the
District of Colorado

Case No. 1:15-cr-00395-REB Document 173 filed 09/10/19 USDC Colorado pg 106 of
271
Case 1:15-cr-00395-REB Document 37 Filed 11/09/16 Page 1 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. ALAN ALONZO WILLIAMS,

      Defendant.

---

**MINUTE ORDER**[1]

---

The matter before the court is **Defendant's Unopposed Motion To Continue Status Conference and Exclude Time Under the Speedy Trial Act** [#36],[2] filed November 8, 2016. Having reviewed the motion and the file, and being advised of the premises, the court finds the motion is well-taken to the extent it seeks to vacate the currently scheduled status conference, and the motion therefore is granted in part to that extent.

The court defers consideration of defendant's further request to exclude additional time from the time for speedy trial, and will set a telephonic setting conference to reschedule the status conference, at which it will hear and consider the remainder of the motion.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant's Unopposed Motion To Continue Status Conference and Exclude Time Under the Speedy Trial Act** [#36], filed November 8, 2016, is granted in part to the extent it seeks to vacate the currently scheduled status conference;

2. That the status conference scheduled for Thursday, November 10, 2016, at

---

[1] This minute order is issued pursuant to the express authority of the Honorable Robert E. Blackburn, United States District Judge for the District of Colorado.

[2] "[#36]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

9:00 a.m., is vacated and continued without date pending further order of court;

     3.  That on November 15, 2016, at 11:00 p.m. (MST), the court shall conduct a telephonic (non-appearance) setting conference to reset the sentencing hearing; and

     4.  That counsel for defendant shall arrange, initiate, and coordinate the conference call to chambers at 303-335-2350 to facilitate the setting conference.

     Dated: November 9, 2016

Case No. 1:15-cr-00395-REB   Document 173   filed 09/10/19   USDC Colorado   pg 108 of
271
Case 1:15-cr-00395-REB   Document 38   Filed 11/15/16   Page 1 of 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No.  15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

      Defendant.

---

**MINUTE ORDER**[1]

---

      On November 15, 2016, the court conducted a telephonic setting conference to set this matter for status conference/motion hearing on **Defendant's Unopposed Motion To Continue Status Conference and Exclude Time under the Speedy Trial Act** [#36],[2] filed November 8, 2016, as to the portion of the motion requesting excludable time under the Speedy Trial Act.  After conferring with counsel, and by agreement of all,

      **IT IS ORDERED** as follows:

      1.  That on **November 17, 2016**, at 11:00 a.m. (MST), the court shall conduct a status conference/motion hearing on **Defendant's Unopposed Motion To Continue Status Conference and Exclude Time under the Speedy Trial Act** [#36], filed November 8, 2016, as to the portion of the motion requesting excludable time under the Speedy Trial Act; and

      2.  That, to the extent necessary, the United States Marshal for the District of Colorado shall assist the court in securing the appearance of the defendant for this hearing.

      Dated:  November 15, 2016

---

[1] This minute order is issued pursuant to the express authority of the Honorable Robert E. Blackburn, United States District Judge for the District of Colorado.

[2] "[#36]" is an example of the convention the court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  The court uses this convention throughout this order.

Case No. 1:15-cr-00395-REB Document 173-1 filed 09/10/19 USDC Colorado pg 109 of
Case 1:15-cr-00395-REB Document 39 Filed 11/17/16 Page 1 of 2
271

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Date:             November 17, 2016

Deputy Clerk:     Kathleen Finney
Court Reporter:   Tracy Weir

## Criminal Action No.  15-cr-00395-REB

*Parties:*                              *Counsel:*

UNITED STATES OF AMERICA,               Linda Kaufman

      Plaintiff,
v.

ALAN ALONZO WILLIAMS,                   Michael Gallagher

      Defendant.

---

## COURTROOM MINUTES

---

**Motion/Status Hearing**

**11:01 a.m.    Court in session.**

Appearances of counsel.

Defendant is present in custody.

The matter is before the court for hearing and consideration on the **Defendant's
Unopposed Motion to Continue Status Conference and Exclude Time Under the
Speedy Trial Act** [#36] filed November 8, 2016.

Argument by Mr. Gallagher.

Response by Ms. Kaufman.

Court's conclusions.

Case No. 1:15-cr-00395-REB Document 173-1 filed 09/10/19 USDC Colorado pg 110 of
271
Case 1:15-cr-00395-REB Document 35 Filed 11/17/16 Page 2 of 2

**IT IS ORDERED** as follows:

1. That the **Defendant's Unopposed Motion to Continue Status Conference and Exclude Time Under the Speedy Trial Act** [#36] is **GRANTED**;

2. That the time from and including **November 14, 2016** through and including **January 12, 2017** is **excluded** from the time for a speedy trial under the Speedy Trial Act of 1974;

3. That a further status conference is set **January 12, 2017**, commencing at **9:00 a.m.**, at which counsel and the defendant shall appear before the court without further notice or order; provided further, that to the extent necessary, the United States Marshal for the District of Colorado shall assist the court in securing the appearance of the defendant; and

4. That the defendant is remanded to the United States Marshal for continued detention.

**11:13 a.m.    Court in recess.**

Total time in court:00:12

Hearing concluded.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. **ALAN ALONZO WILLIAMS**,

      Defendant.

---

## NOTICE OF DISPOSITION
## AND REQUEST TO VACATE STATUS HEARING
## AND SCHEDULE CHANGE OF PLEA HEARING

---

The Defendant Alan Alonzo Williams, by and through counsel, Michael J. Gallagher of Davis Graham & Stubbs LLP, notifies the Court that the Government and Alan Alonzo Williams have reached a disposition.

Mr. Williams requests that the status conference scheduled at 9:00 a.m., on January 12, 2017, be vacated and that a change of plea hearing be scheduled.

Dated this 10th day of January, 2017.

                                      */s/ Michael J. Gallagher*
                                        Michael J. Gallagher
                                        DAVIS GRAHAM & STUBBS LLP
                                        1550 17th Street, Suite 500
                                        Denver, CO  80202-1500
                                        Telephone: 303.892.9400
                                        Facsimile:   303.893.1379
                                        Email: mike.gallagher@dgslaw.com

                                        *Attorneys for Defendant*
                                        *Alan Alonzo Williams*

4246939.1

CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2017, the foregoing NOTICE OF DISPOSITION AND REQUEST TO VACATE STATUS HEARING AND SCHEDULE CHANGE OF PLEA HEARING was electronically filed with the USDC Clerk of the Court and served via the CM/ECF system on the following:

Linda Kaufman
linda.kaufman@usdoj.gov

/s/ Lynell E. Buchele

Case No. 1:15-cr-00395-REB Document 173 filed 09/10/19 USDC Colorado pg 113 of
271
Case 1:15-cr-00395-REB Document 42 Filed 01/10/17 USDC Colorado Page 1 of 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. ALAN ALONZO WILLIAMS,

      Defendant.

---

**MINUTE ORDER**[1]

---

A **Notice of Disposition** [#41],[2] was filed January 10, 2017. A status conference is currently set for January 12, 2017, which the court finds should be converted to a change of plea hearing.

      **THEREFORE, IT IS ORDERED** as follows:

      1. That the status conference set **January 12, 2017**, at 9:00 a.m. (MST), is vacated and converted to a change of plea hearing; and

      2. That, to the extent necessary, the United States Marshal for the District of Colorado shall assist the court in securing the appearance of the defendant for this hearing.

      Dated: January 10, 2017

---

[1] This minute order is issued pursuant to the express authority of the Honorable Robert E. Blackburn, United States District Judge for the District of Colorado.

[2] "[#41]" is an example of the convention the court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). The court uses this convention throughout this order.

Case No. 1:15-cr-00395-REB   Document 173   filed 09/10/19   USDC Colorado   pg 114 of
271
Case 1:15-cr-00395-REB   Document 45   Filed 01/12/17   Page 1 of 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Date:              January 12, 2017

Deputy Clerk:      Kathleen Finney
Court Reporter:    Tracy Weir

---

## Criminal Action No.  15-cr-00395-REB

*Parties:*                              *Counsel:*

UNITED STATES OF AMERICA,               Linda Kaufman

     Plaintiff,
v.

ALAN ALONZO WILLIAMS,                   Michael Gallagher

     Defendant.

---

## CHANGE OF PLEA MINUTES

---

**9:04 a.m.      Court in session.**

Appearances of counsel. Also appearing at government's table is Timothy Chase, IRS
Special Agent.

Defendant is present in custody.

The Plea Agreement (Court's Exhibit 1) and Defendant's Statement in Advance of Plea
of Guilty (Court's Exhibit 2) are tendered to the Court.

Defendant is sworn.

Defendant is 54 years old, alert, competent, literate, and sober.

Defendant waives formal reading of the Indictment.

Defendant confirms the court's understanding of the terms of the plea agreement.

Defendant confirms that he has read and understands the written plea agreement; that he has reviewed the written plea agreement carefully and thoroughly with his attorney; that he has no questions or concerns about the written plea agreement; and that he has signed the written plea agreement voluntarily with the advice and assistance of counsel.

Defendant is advised of all matters required by Fed.R.Crim.P. 11(b)(1)(A)-(M).

Defendant withdraws existing plea of not guilty to the offense made the subject of the plea agreement.

Defendant waives re-arraignment on Count One of the Indictment.

Defendant enters plea of guilty to Count One of the Indictment pursuant to plea agreement.

Court's Findings of Fact and Conclusions of Law will be issued electronically.

**IT IS ORDERED** as follows:

1. That Court's Exhibits 1 and 2, which state the plea agreement, are admitted in evidence;

2. That formal approval of the plea agreement is deferred, pending consideration of the presentence report;

3. That the plea of guilty to Count One of the Indictment entered by the defendant is received, accepted and approved;

4. That defendant is found guilty of the crime charged in Count One of the Indictment;

5. That the Probation Department shall conduct a presentence investigation and file a presentence report as required by 18 U.S.C. § 3552 and Fed.R.Crim.P. 32;

6. That defendant's counsel shall contact the Probation Department as soon as practicable to arrange, schedule, and coordinate the defendant's involvement and participation in the presentence investigation, and the defendant shall cooperate fully with the probation department during the presentence investigation;

7. That the matter is continued to **April 6, 2017, at 10:00 a.m.**, for sentencing, at which counsel and the defendant shall appear without further notice or order; provided furthermore, that to the extent necessary, the United States Marshal for the District of Colorado shall assist the court

in securing the appearance of the defendant;

8.    That any pending pretrial motion filed by or on behalf of the defendant is denied as moot;

9.    That any Trial Preparation Conference and trial is vacated; and

10.    That defendant is remanded to the custody of the United States Marshal.

**9:47 a.m.**    **Court in recess.**

Total time in court:  00:43

Hearing concluded.

Case No. 1:15-cr-00395-REB Document 174 Filed 09/10/19 USDC Colorado pg 117 of
271
Case 1:15-cr-00395-REB Document 44 Filed 01/12/17 Page 1 of 07

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    **ALAN ALONZO WILLIAMS**,

      Defendant.

---

## PLEA AGREEMENT

---

    The United States of America (the government), by and through Linda Kaufman, Assistant United States Attorney for the District of Colorado, and Defendant Alan Alonzo Williams, personally and by counsel Michael J. Gallagher, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

## I.  AGREEMENT

    1.  The defendant agrees to plead guilty to Count 1 of the Indictment, charging a violation of 18 U.S.C. § 1344 and 2(b), Bank Fraud.

    2.  The government agrees to dismiss all remaining Counts at the time of sentencing, and to not pursue further criminal charges against the defendant based on information known to the United States Attorney's Office for the District of Colorado at the time of the entry of the plea.

    3.  The government also agrees to recommend a sentence within the applicable guideline range as determined by the Court, excluding any downward departure.

**Court's Exhibit
1**

4. The parties agree that the Mandatory Victim Restitution Act applies, and that the amount of restitution in this case is $1,146,828.28.

5. The defendant is aware that 18 U.S.C. §3742 affords him the right to appeal his sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets ANY of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statutes of conviction; (2) the sentence exceeds the maximum sentence within the advisory guideline range that applies to a total offense level of 20; or (3) the government appeals the sentence imposed. If any of these three criteria applies, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

6. The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

2

## II. ELEMENTS OF THE OFFENSES

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

### Bank Fraud (18 U.S.C. § 1344 and 2(b))

(1) The defendant knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution or to obtain money or property from the financial institution by means of false or fraudulent pretenses, representations, or promises;

(2) The financial institution was an institution the deposits of which were insured by the FDIC;

(3) The defendant acted with the intent to defraud;

(4) The false or fraudulent pretenses, representations, or promises the defendant made or willfully caused another to make were material, meaning that they would naturally tend to influence, or were capable of influencing the decision of the financial institution.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 1344 is: not more than 360 months of imprisonment; a fine of not more than $1,000,000 or the greater of twice the gross gain or twice the gross loss from the offense, or both a fine and imprisonment; not more than 5 years of supervised release; a $100 special assessment fee; plus restitution.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the

3

rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is May 2006. The parties agree that the government's evidence would show the following:

a. The defendant desired to obtain funds for himself and Williams Vending Company, Inc. (hereinafter "WVC"). WVC was a business established in 1994 by the defendant and his parents that sold, leased, repaired, and operated vending machines.

b. The defendant, who would not qualify for the bank loans he desired by virtue of his prior felony convictions and status as a parolee, caused another individual, Ms. X,

4

as purported 100% owner and president of WVC, to obtain several loans from WebBank to WVC.

c. In fact, the defendant controlled the finances and operations of WVC, and he and his family members were its owners. Ms. X had no true ownership interest and was never its true president. She had merely become a part-time employee of WVC in 2006.

d. Shortly after she began working at WVC, the defendant told Ms. X that he would put the business in her name for credit purposes. To assuage any concerns she may have had about liability, he gave her a "Promissory Agreement" in which he agreed that any financial obligation due from "credit cards, credit lines, etc." would be the complete obligation of WVC and the defendant, and that she would have no financial obligation whatsoever. Knowing that Ms. X had a serious drug problem, the defendant exploited her habit by causing her to sign various documents and then providing her with cash, which she would use to get high.

e. In November 2006, the defendant caused documents to be filed with the Colorado Secretary of State which made it appear that Ms. X had a legitimate ownership interest in WVC which she had acquired by virtue of having made a significant investment in it and having managed it for many years. In fact, she had never had a managerial position at WVC, had never invested in it, and had become its "owner" in name only.

f. In January 2007, the defendant had Ms. X sign a contract to purchase a residence located at 9261 E. Jewell Circle in Denver. In March, he arranged for her to

5

obtain a $900,000 loan from Aurora Loan Services, LLC to buy it. To make it appear

that Ms. X qualified for this loan, the defendant caused false information to be presented

to Aurora Loan Services about her employment (including fraudulent W-2's and

earnings statements), false information about her financial status, and false information

about her intent to use the property as her primary residence. In fact, Ms. X never

intended to reside at the E. Jewell Circle property, and never did.

g. In May 2007, to make it appear that Ms. X would have control of WVC, the

defendant arranged for three bank accounts to be opened in the name of WVC over

which she would have sole signature authority. He nevertheless maintained control over

these accounts.

h. The defendant enlisted the aid of loan brokers to assist him in finding funding

for WVC. The brokers suggested that WVC try to obtain a Small Business

Administration loan from WebBank, a financial institution in Utah, the deposits of which

were insured by the Federal Deposit Insurance Corporation.  He told the brokers that

Ms. X would be the applicant and would serve as the personal guarantor.

i. The Small Business Administration (hereinafter "SBA") guaranteed a certain

portion of qualifying loans made by banks to small businesses, provided that the

participating lender certify that but for the SBA guarantee, it would not make the loan.

The SBA also required, among other things, that the business use the loan proceeds for

specifically approved business purposes, that the borrower have had sufficient

management experience, and that the business would have sufficient cash flow to be

able to repay the loan. The SBA also required that any person owning 20% or more of the business personally guarantee the loan. In addition, the SBA considered the character of the individual signing on the loan, as shown by his or her criminal history as described in the required SBA "Statement of Personal History Form." Anyone with felony convictions would require special approval, and anyone on parole would be ineligible.

j. The brokers agreed to present the loan request to WebBank. The defendant provided them with information, both verbal and documentary, to relay to WebBank for the purpose of acquiring an $800,000 loan to WVC. Much of that information was false, as the defendant well knew. It included fraudulent W-2 Wage and Income Statements and tax returns for Ms. X. The false information he provided the brokers made it appear that Ms. X was the president and sole owner of WVC, that she had owned the business for many years, that she had many years of management experience both at WVC and elsewhere, that she currently earned and had earned a substantial salary at WVC for many years, that she supervised the financing and purchasing aspects of the business, that she had rental income, that she had substantial assets in the form of cash, securities, and personal property, and resided in a $1.1 million home at 9261 E. Jewell Circle in Denver. None of that was true.

k. The defendant also told the brokers that WVC focused on providing vending products to government offices and agencies, as Ms. X qualified as a minority business owner, and that the company therefore qualified as a minority contractor. He explained

7

that this minority status would allow government agencies to fulfill a portion of their minority contracting requirements by awarding contracts to WVC. The brokers passed this information on to WebBank at the defendant's direction.

l. At times, the defendant provided information directly to WebBank by fax or email, rather than through his brokers. Some of the documents the defendant sent to WebBank or provided to his brokers to send to WebBank had been signed by Ms. X; others bore signatures that were copies of hers or only purported to be hers.

m. The defendant also represented to the brokers and WebBank that the loan proceeds would be used for the following purposes: (1) $377,100 would be used to purchase vending machines to enable WVC to perform on its government contracts, (2) $372,275.24 would be used to repay existing specific debts, and (3) $50,624.76 would be used as working capital. In support of this, the defendant provided a document which purported to be a vending agreement between WVC and Peterson Air Force Base, as well as a document which purported to be a purchase order to WVC in the amount of $377,100 from Ross Vending. In fact, Peterson Air Force Base had entered no such agreement with WVC, and Ross Vending had neither sold nor agreed to sell $377,100 worth of vending machines to WVC. The documents were fraudulent.

n. The defendant caused Ms. X to sign the promissory note. She was the personal guarantor, and her name appeared on the SBA "Statement of Personal History." WebBank approved the loan on December 28, 2007 and funded it by issuing ten checks on the same day and one on January 31, 2008. In order to assure that he

8

would have control over the proceeds, the defendant directed WebBank to include

Williams Vending Company, (and not just its creditors), as a payee on the disbursement

checks, "to make sure all aspects are done correctly." The bank complied, and

WebBank issued checks in the following amounts payable jointly to Williams Vending

Company, Inc. and a named creditor of Williams Vending:

$ 337,100.00
44,074.67
22,523.00
51,579.80
37,273.60
47,107.47
40,000.00
67,695.83
33,967.80
32,279.76
68,253.07

Total: $ 781,855.00

Each of the checks was endorsed in the name of Williams Vending Company and the

named co-payee, but none of the co-payees actually endorsed its check, as intended by

the bank. Instead, the defendant caused all of the fraudulently endorsed checks to be

deposited into a Williams Vending Company bank account, and Williams Vending

received full credit in the amount of the checks. Although the defendant did make

payments to some of the co-payee creditors, he did not turn over the full amounts of

WebBank's checks to the creditors, as was required by the terms of the loan. The

defendant used a large portion of the proceeds for his own purposes, rather than for the

purposes authorized for the SBA-guaranteed loan.

9

o. In April 2008, the defendant approached WebBank directly to request another loan for WVC.  He had caused loan payments to be made by WVC in the interim.  He represented that since WVC had just completed contracts to become vendor for three major apartment complexes, it would need to purchase additional vending machines and trucks.   As with the first loan from WebBank, Ms. X, as "owner" of the business, would be the applicant and guarantor, and the loan would be SBA-guaranteed. In support of his request, the defendant provided a document that purported to be a vending agreement between WVC and Carmel Property Management and a document which purported to be a purchase order from Ross Vending for $339,200.00.  In fact, Carmel Property Management had never contracted with WVC, and Ross Vending had neither sold nor agreed to sell WVC $339,200.00 worth of machines. The documents were fraudulent.  As with the first loan, the defendant caused Ms. X's signature or purported signature to appear on the loan documents, and the SBA Statement of Personal History related to Ms. X, not to the defendant.  In considering whether to grant the second loan, the bank already had a significant amount of information about WVC and Ms. X, which had been previously provided by the defendant or at his direction.  WebBank approved a loan for $300,000 and funded it by wiring the proceeds, $291,742.00, to a WVC account on May 9, 2008. Instead of using the loan proceeds for the purposes authorized for the SBA-guaranteed loan, the defendant used most, if not all of it for other purposes, including the purchase of two new Mercedes Benz automobiles, one for himself and one for his daughter.

p. Shortly after the $300,000 loan was funded, the defendant approached WebBank again for additional funding for WVC. On June 10, 2008, WebBank granted the defendant's request to lend an additional $60,000 to WVC. It did so by modifying the May 9 SBA-guaranteed loan. As with the previous WebBank loans, the defendant caused the loan to be issued to WVC based on Ms. X's purported position as president and owner and her personal guarantee. As he had done previously, he again caused documents bearing or purporting to bear Ms. X's signature to be delivered to the bank. He represented that the funds were needed to purchase vehicles to transport inventory to support the company's new vending machines.  In support of that, the defendant submitted invoices from Specialty Trux.  The bank funded the loan by issuing a check in the amount of $58,650.00 payable to WVC and Specialty Trux on June 16, 2008. The defendant endorsed the check for both payees and deposited it to a WVC account, but failed to use the loan proceeds to pay the Specialty Trux invoices, as he had represented.

q. Shortly after WebBank had funded the $60,000 to WVC, the defendant attempted to obtain an additional loan from WebBank to WVC, still falsely representing that Ms. X was the president and 100% owner, and again offering her as personal guarantor. He originally requested $603,600, but later reduced that to $550,000. He falsely represented to WebBank that the funds were needed to purchase equipment for a contract WVC had entered with the City and County of Denver to be the exclusive provider of vending equipment, merchandise, and related services to the Denver Public

11

Schools. In fact, Denver Public Schools had no such agreement with WVC. The defendant also caused a fraudulent document which purported to be a Citicorp Investment Services Statement on Ms. X's account to be sent to the bank. It falsely represented that her account value was over $317,000. Further, in order to make it appear that WVC's liabilities had decreased significantly, the defendant falsely represented that the company had reduced its debt to Ms. X from $632,888 to $199,200, and produced a promissory to Ms. X in the amount of $199,200.42 to prove it. In fact, Ms. X had never loaned any money to or invested in the company, and the defendant did not intend to pay her $199,200.42 as represented.

r.  On or about August 5, 2008, WebBank denied the requested $550,000 loan, and suffered no actual loss as a result. The parties agree that as to this attempt, the Court must determine what the "intended loss" was, i.e., the pecuniary harm that the defendant purposely sought to inflict, in applying U.S.S.G. § 2B1.1(b)(1).  They disagree on what that amount is.

s.  The defendant's position is that the loan proceeds, while to be diverted in part, were intended in part to fund the operations of Williams Vending Company.  As such, the loss Defendant "purposely sought to inflict" was not the full amount of this denied loan.  United States v. Manatau, 647 F.3d 1048, 1050 (10th Cir. 2011).  Though Mr. Williams intended to divert some of the $550,000 loan, the continued operation of Williams Vending Company meant that the amount of "intended loss" was not the full

12

amount of this proposed loan, and that the total loss is below the $1,500,000 threshold of U.S.S.G. § 2B1.1(b)(1)(I).

t. The government's position is that in determining, by a preponderance of the evidence, the harm that the defendant purposely sought to inflict, the Court may properly consider what loss he expected to inflict, since a person is presumed to have intended the natural and probable consequences of his actions. United States v. Manatau, 647 F.3d at 1055. The Court is free to make reasonable inferences about the defendant's mental state from the available facts. Id. at 1056. In this case, the defendant was responsible for obtaining an $800,000 loan for Williams Vending Company on December 28, 2007. The principal balance on that loan as the date the fraud was discovered in 2009 (and as of July 2016) had been reduced by $12,425.42 to $787,574.58, a reduction of approximately 1.6%. On May 9 and June 10, 2008, the defendant caused WebBank to loan an additional $360,000 to Williams Vending Company. Similarly, the principal balance on that loan had only been reduced by $746.30 to $359,253.70, a reduction of approximately .22% as of the date the fraud was discovered (and as of July 2016). Given that the defendant's *modus operandi* in attempting to obtain the last $550,000 remained consistent, and Williams Vending did not have a contract with the City and County of Denver as represented, it is the government's position that the natural and probable consequences of the last attempt were that very little, if any, of the principal would have been repaid, and the intended loss was approximately $550,000. Even a 1% reduction to the principal would have

13

made the intended loss $544,500. The Court need only make a reasonable estimate of the intended loss. U.S.S.G § 2B1.1 Appl. Note 3(C); United States v. Manatau, 647 F.3d at 1056.

## VI.   ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. § 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.     The base guideline is §2B1.1(a)(1), with a base offense level of 7.

B.     The government's position is that guidelines loss is more than $1,500,000 but less than $3,500,000, resulting in a 16-level increase pursuant to §2B1.1(I). The defendant's position is that the guidelines loss is more than $550,000 but less than $1,500,000, resulting in a 14-level increase pursuant to §2B1.1(b)(1)(H).

C.     There are no victim-related, role-in-offense, obstruction, or multiple-count adjustments.

D.     The adjusted offense level would therefore be 23, according to the government's calculation, or 21, according to the defendant's calculation.

14

E.      If the defendant clearly demonstrates acceptance of responsibility for his offense, the offense level should be decreased by 2 levels pursuant to §3E1.1(a). If he qualifies for a decrease under §3E1.1(a) and also timely notifies the government of his intention to enter a guilty plea, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, the government will file a motion pursuant to §3E1.1(b) requesting that he receive a downward departure of an additional 1 level. The resulting offense level would be 20, according to the government's calculation, or 18, according to the defendant's calculation.

F.      The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be V.

G.      The career offender/criminal livelihood/armed career criminal adjustments would not apply.

H.      The advisory guideline range resulting from these calculations is 63-78 months, according to the government's calculation, or 51-63 months, according to the defendant's calculation. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 27 months (offense level 18, bottom of Category I) to 87 months (offense level 20, top of Category VI). The guideline range

15

would not exceed, in any case, the statutory maximum applicable to the count of conviction.

I.      Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $15,000 to $150,000, plus applicable interest and penalties, according to the government's calculation, or $10,000 to $100,000 plus applicable interest and penalties, according to the defendant's calculation.

J.      Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 2 years, but not more than 5 years.

K.      The Court must enter an order of restitution for the full amount of the victim's loss, as authorized under 18 U.S.C. § 3663A. The parties agree that the amount of restitution in this case is $1,146,828.28.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

The parties are aware of no grounds for a guideline departure. However, no estimate by the parties regarding the guideline range precludes the defendant from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application for all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it

16

deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length and form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.  ENTIRE AGREEMENT

This  document  states  the  parties'  entire  agreement.    There  are  no  other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied.  In entering this agreement, neither the government nor the  defendant  has  relied,  or  is  relying,  on  any  terms,  promises,  conditions,  or assurances not expressly stated in this agreement.

Date: _____

_____
Alan Alonzo Williams
Defendant

Date: 1/9/17

_____
Michael J. Gallagher
Attorney for Defendant

Date: 1/12/17

_____
Linda Kaufman
Assistant U.S. Attorney

12/16/2016

17

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00395-REB

**UNITED STATES OF AMERICA**

      Plaintiff(s),

v.

1.     **ALAN ALONZO WILLIAMS**

      Defendant.

---

## STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY

---

I acknowledge and certify that I have been advised of and understand the following facts and rights, that all representations contained in this document are true and correct, and that my attorney has assisted me as I have reviewed and completed this document.

1.     The nature of the charge(s) against me has/have been explained to me by my attorney. I have had an opportunity to discuss with my attorney both the nature of the charge(s) and the elements which the government is required to prove.

2.     I know that when the Court sentences me, the Court will consider many factors. These factors are listed in 18 U.S.C. § 3553 and include (a) the nature and circumstances of the offense and my personal history and characteristics, (b) the need for a sentence to reflect the seriousness of the offense, promote respect for the law,

**Court's Exhibit**

**2**

provide just punishment, afford deterrence, protect the public, and provide me with needed training, care or correctional treatment in the most effective manner, (c) the kinds of sentences available to the court, (d) the advisory sentencing guidelines established by the U.S. Sentencing Commission, (e) the pertinent policy statements of the U.S. Sentencing Commission, (f) the need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct, and (g) the need to provide restitution. No single factor is controlling or determinative. I recognize that it is possible that the Court could, after considering these factors, impose any sentence in my case, including one which is as severe as the maximum term of imprisonment, the maximum fine, full restitution (if applicable), the maximum term of supervised release, and a special assessment, all as set out in paragraph 3 below.

3.      I know that the following penalties may be imposed as a result of my guilty plea(s):

Count 1

a.      Imprisonment for a term of not more than 30 years;

b.      A term of supervised release of not more than 5 years, pursuant to 18 U.S.C. § 3583;

c.      A fine of not more than $1,000,000 or the greater of twice the gross gain or twice the gross loss from the offense, or both a fine and imprisonment pursuant to the statute that I admit I violated.

d.      Restitution to the victim(s) of my crime(s) of not more than $1,146,828.28 pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664;

2

e.    A special assessment of $100, pursuant to 18 U.S.C. § 3013;

4.    I know that if I am convicted of more than one count, the sentences imposed may be either concurrent (served at the same time) or consecutive (served separately or back-to-back) unless the statutory penalty for an offense of conviction expressly requires that a sentence be imposed to run consecutively.

5.    I know that in addition to any punishment that the Court may impose, there are collateral consequences to pleading guilty to a crime. These consequences are neither imposed nor controlled by the Court. For example, pleading guilty may result in a loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. And, if I am not a citizen of the United States, these consequences may include deportation from the United States or indefinite confinement if there is no country to which I may be deported, denial of the right to enter the United States in the future, and denial of citizenship.

6.    I know that if I am given a term of supervised release as a part of my sentence, that supervised release will only begin to run upon my release from custody on all terms of imprisonment imposed by this and any other courts. I understand that any violation of the conditions of that supervised release during its term may lead to an additional prison sentence and additional supervised release being imposed.

7.    I know that there is no parole in the federal system and that I will be required to serve the entire sentence of imprisonment which may be imposed in my case, reduced only by such good time and/or program allowances as may be set by Congress and applied by the Bureau of Prisons.

8.     I know that if a fine or restitution is imposed as a part of my sentence, I will be required to pay interest on any amount in excess of $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment or unless interest is waived by the Court.

9.     I know that if a fine or restitution is imposed as a part of my sentence, I will be required to pay it in a timely manner. Failure to do so may trigger monetary penalties, collection efforts by the government, potential revocation of any probation or supervised release, and/or exposure to prosecution for "Criminal Default" under 18 U.S.C. § 3615.

10.     I know that I can be represented by an attorney at every stage of the proceedings in this matter, and I know that, if I cannot afford an attorney, one will be appointed to represent me at no cost or expense to me.

11.     I know that I have a right to plead "not guilty;" and I know that if I do plead "not guilty," I can persist in that plea and demand a trial.

12.     I know that I have a right to and can demand a trial by jury, and I know that if I choose to stand trial:

a.     I have a right to the assistance of an attorney at every stage of the proceeding;

b.     I have a right to see and observe the witnesses who testify against me;

c.     My attorney can cross-examine all witnesses who testify against me;

4

d.      I can call and present such relevant witnesses and evidence as I desire, and I can obtain subpoenas to require the attendance and testimony of those witnesses;

e.      If I cannot afford to pay witness fees and expenses, the government will pay those fees and expenses, including mileage and travel expenses, and including reasonable fees charged by expert witnesses;

f.      I cannot be forced to incriminate myself and I do not have to testify at any trial;

g.      However, I can testify at my trial if I choose to, and I do not have to decide whether or not to testify until after I have heard the government's evidence against me;

h.      If I decide that I do not want to testify at trial, the jury will be told that no guilt or inference adverse to me may be drawn from my decision not to testify;

i.      In order for me to be convicted, the government must prove each and every element of the offense(s) with which I am charged, beyond a reasonable doubt;

j.      In order for me to be convicted, the jury must reach a unanimous verdict of guilty, meaning all jurors must agree that I am guilty; and

k.      If I were to be convicted, I could appeal both my conviction and whatever sentence the Court later imposed, and if I could not afford an appeal, the government would pay the cost of the appeal, including the cost of an appointed attorney.

5

13.     I know that if I plead guilty, there will not be a trial of any kind.

14.     I know that if I plead guilty, there will be no appellate review of the question of whether or not I am guilty of the offense(s) to which I have pled guilty.

15.     I know that the terms of my plea agreement with the government contain a waiver of my right to appeal or to collaterally attack the sentence. Specifically, I have agreed as follows:

The defendant is aware that 18 U.S.C. §3742 affords him the right to appeal his sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets *any of* the following criteria: (1) the sentence exceeds the maximum penalty provided in the statutes of conviction; (2) the sentence exceeds the maximum sentence within the advisory guideline range that applies to a total offense level of 20; or (3) the government appeals the sentence imposed. If any of these three criteria applies, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the

6

Case No. 1:15-cr-00395-RBB-Document 75-1-Filed 09/10/19-USDC-Colorado pg 140 of
Case 1:15-cr-00395-REB Document 45 Filed 01/12/17 Page 7 of 10
271

benefit of an explicitly retroactive change in the sentencing guidelines or

sentencing statute; (2) the defendant was deprived of the effective assistance of

counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

Because of this, I know that I cannot seek appellate review of the sentence imposed by

the Court in this case, except in the limited circumstances, if any, permitted by my plea

agreement.

16.     No agreements have been reached and no representations have been

made to me as to what the sentence in this case will be, except those which are

explicitly detailed in the document entitled "Plea Agreement" which I and the

government have signed. I further understand that any sentencing agreements and

stipulations in the document entitled "Plea Agreement" are binding on the Court only if

the parties ask the Court in that document to be so bound pursuant to Rule 11(c)(1)(C)

and only if the Court agrees to be so bound when it accepts my guilty plea(s).

17.     The only plea agreement which has been entered into with the

government is that which is set out in the document entitled "Plea Agreement" which

has been signed by the government and me and which I incorporate herein by

reference.

18.     I understand that the Court will make no decision as to what my sentence

will be until a Presentence Report has been prepared by the Probation Department and

received and reviewed by the Court.

19.     I know that when I enter my plea(s) of guilty, the Court may ask me

questions under oath about the offense(s) to which I have pled guilty. Such questions, if

asked of me on the record and in the presence of my attorney, must be answered by
me, and if I give false answers, I can be prosecuted for perjury.

20.     I know that I have the right to ask the Court any questions that I have
concerning my rights, these proceedings, and my plea(s) to the charge(s).

21.     I am 57 years of age. My education consists of ___14 yrs___. I
[can]/[cannot] understand the English language. (Circle either "can" or "cannot.") I am
not taking any medications which interfere with my ability to understand the proceedings
in this matter or which impact or affect my ability to choose whether to plead guilty.

22.     Other than the promises of the government set out in the document
entitled "Plea Agreement," no promises and no threats of any sort have been made to
me by anyone to induce me or to persuade me to enter my plea(s) in this case.

23.     No one has promised me that I will receive probation, home confinement
or any other specific sentence desired by me because of my plea(s) of guilty.

24.     I have had sufficient opportunity to discuss this case and my intended
plea(s) of guilty with my attorney. I do not wish to consult with my attorney any further
before I enter my plea(s) of guilty.

25.     I am satisfied with my attorney. I believe that I have been represented
effectively and competently in this case.

26.     My decision to enter the plea(s) of guilty is made after full and careful
thought, with the advice of my attorney, and with full understanding of my rights, the
facts and circumstances of the case, and the potential consequences of my plea(s) of
guilty. I was not under the influence of any drugs, medication, or intoxicants which affect

my decision-making ability when I made the decision to enter my guilty plea(s). I am not now under the influence of any such drugs, medication or intoxicants.

27.     I want to plead guilty and have no mental reservations about my decision.

28.     Insofar as it shows my conduct, the summary of facts set out in the document entitled "Plea Agreement" is true and correct, except as I have indicated in that document.

29.     I know that I am free to change or delete anything contained in this document and that I am free to list my objections and my disagreements with anything contained in the document entitled "Plea Agreement." I accept both documents as they are currently drafted.

30.     I wish to plead guilty to the following charge(s):  Count 1 of the Indictment, charging a violation of 18 U.S.C. § 1344 and 2(b), Bank Fraud.

(Specify which counts and relevant statutory citations.)

Dated this __9th__ day of __January, 2017__

_____
Defendant, Alan Alanzo Williams

I certify that I have discussed this statement and the document entitled "Plea Agreement" with the defendant. I certify that I have fully explained the defendant's rights to him or her and have assisted him or her in completing this form. I believe that the defendant understands his or her rights and these statements.

9

Dated this _____, day of _____ 2017.

_____
Attorney for Defendant, Michael Gallagher

Revised: 04/25/2012

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Criminal Case No.  15-cr-00395-REB

UNITED STATES OF AMERICA,

Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

Defendant.

---

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## ON THE ENTRY OF A PLEA OF GUILTY

---

**Blackburn, J.**

On January 12, 2017, I conducted a change of plea hearing during which (1) the defendant, his counsel, counsel for the government, and I formally reviewed and considered the plea agreement of the parties as stated in Court's Exhibits 1 and 2 ("plea agreement"); (2) I rearraigned the defendant under Fed. R. Crim. P. 10; and (3) I formally advised the defendant and conducted providency proceedings under Fed. R. Crim. P. 11.

Based upon my exchange and colloquy with the defendant under oath in open court on the record; based upon the representations, remarks, and statements of counsel for the government and counsel for the defendant; based upon my review of the file and my review of the written plea agreement as stated in Court's Exhibits 1 and 2, I enter the following findings of fact and conclusions of law:

That the defendant appeared to be alert and not under the influence of or

impaired by drugs, narcotics, marihuana, alcohol, medication, or intoxicants;

That the defendant was competent and fully understood the nature, circumstances, and essential elements of the offense to which his plea of guilty was entered;

That the defendant understands clearly that the government has the right in a prosecution for perjury or false statement to use against the defendant any statement that the defendant gives under oath;

That the defendant understood the direct and collateral consequences that he may suffer or experience as a result of his participation in the plea agreement, his plea of guilty, and the resultant felony conviction and sentence;

That the defendant's plea of guilty was made and entered voluntarily, knowingly, intelligently and intentionally, and was not the result of mistake; misunderstanding, fear, force, threats, coercion, or undue influence by anyone;

That the defendant's plea of guilty was not the result of any promise or inducement made by anyone, including legal counsel;

That the defendant understood each of his legal rights, including the rights enumerated at Fed. R. Crim. P. 11(b)(1)(B) and (E), and his right to a trial by jury and his right to be represented throughout this criminal case by an attorney even if indigent; and that the defendant freely, voluntarily, knowingly, intelligently, and intentionally waived his rights and privileges, including the right to trial by jury, and, except as limited expressly by the plea agreement, his right to appeal or to collaterally attack the

2

Case No. 1:15-cr-00395-REB Document 173 filed 09/10/19 USDC Colorado pg 146 of
Case 1:15-cr-00395-REB Document 46 Filed 01/12/17 Page 3 of 4
271

prosecution, conviction, and/or sentence; however, the defendant did not waive his right
to be represented throughout this criminal case by an attorney even if indigent;

That the defendant understood the maximum possible penalties, including
imprisonment, fine, and term of supervised release;

That the defendant understood that in imposing sentence, I must consult and
consider the purposes and goals of sentencing as prescribed by Congress, the relevant
provisions of the advisory United States Sentencing Guidelines, any motion for a
sentence departure or variance, and the provisions of 18 U.S.C. § 3553 (a)(1)-(7); and
the defendant clearly understood that regardless of the sentence I impose, he may not
withdraw his plea of guilty on that basis;

That the defendant understood that the court will not be bound by any
representations by anyone concerning the penalty to be imposed;

That a factual basis existed to support and sustain the plea agreement and the
defendant's plea of guilty;

That the defendant has been represented at the change of plea hearing and
throughout this case by effective and competent counsel with whom the defendant has
no objection, criticism, or complaint whatsoever;

That the defendant had sufficient time to read, review, discuss, and consider his
plea agreement and to discuss it carefully and thoroughly with his attorney;

That the defendant read, understood, and accepted each and every term and
provision within his plea agreement, which he reviewed carefully and thoroughly with his

3

attorney;

That the plea agreement conformed in form and substance to the requirements of law, including The Local Rules of Practice of the United States District Court for the District of Colorado - Criminal; and

That on the record considered as a whole, I conclude that I may properly accept the defendant's plea of guilty, which was entered in the context of his plea agreement, and defer formal approval of the plea agreement as stated in Court's Exhibits 1 and 2, pending opportunity to consider the presentence report.

Dated January 12, 2017, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

## NOTICE OF CHANGE OF ADDRESS

Case No. 15-cr-00395-REB

To the Court, parties, and all counsel of record:

The undersigned Assistant United States Attorney hereby submits this notice pursuant to D.C.COLO.LAttyR 5(c) that effective February 6, 2017, undersigned counsel's address will change. As of that date, the physical address for the Denver office of the United States Attorney's Office for the District of Colorado will be the following:

> United States Attorney's Office, District of Colorado
> 1801 California Street, Suite 1600
> Denver, Colorado 80202

Please direct any correspondence mailed to undersigned counsel to that address. The telephone number and email address for undersigned counsel will remain unchanged.

RESPECTFULLY SUBMITTED:

ROBERT C. TROYER
ACTING UNITED STATES ATTORNEY

*s/ Linda S. Kaufman*
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Phone: (303) 454-0100
Email: Linda.Kaufman@usdoj.gov

*Attorney for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2017, I electronically filed the foregoing **NOTICE OF CHANGE OF ADDRESS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.


_s/ Dee Boucher_
United States Attorney's Office

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.      ALAN ALONZO WILLIAMS,

      Defendant.

---

## DEFENDANT'S UNOPPOSED MOTION TO CONTINUE SENTENCING HEARING

---

Defendant Alan Alonzo Williams ("Defendant"), by his undersigned counsel, requests that sentencing in this matter, currently scheduled for April 6, 2017 at 10:00 A.M., be continued until July 6, 2017 or the Court's next available setting thereafter.  In support of this Motion to Continue Sentencing Hearing ("Motion"), Defendant states as follows:

1.      Defendant has been in federal custody since his arrest in this case on March 18, 2016.

2.      On January 12, 2017, Defendant pled guilty pursuant to a plea agreement with the United States.  On that date, the Court set Defendant's sentencing hearing for April 6, 2017 at 10:00 A.M.

3.      In order to address a long-standing health issue, undersigned counsel believes that the Defendant is tentatively scheduled for hernia surgery on or about March 22, 2017.  This

procedure will only take place, however, if it can be assured that Mr. Williams will remain in the

custody of the Federal Detention Center in Englewood, Colorado for 90 days following surgery.

Given that Mr. Williams' sentencing hearing is currently set within this 90 day period, he will be

unable to have the surgery unless his sentencing hearing is continued until after June 21, 2017.

 4. On February 27, 2017, Assistant U.S. Attorney Linda Kaufman was contacted

regarding Defendant's proposed Motion, and informed of Mr. Williams' tentatively scheduled

surgery.  Ms. Kaufman stated that she was not opposed to Defendant's Motion.

 5. Also on February 27, 2017, the Court's chambers were contacted regarding

available dates for Mr. Williams' sentencing hearing should the Court grant this Motion.  The

Clerk stated that the Court's next available setting is July 6, 2017 at 10:00 A.M. AUSA Kaufman

was subsequently consulted regarding her availability that day, and stated that such a setting

would work for her.

 6. This Motion is being filed at the request of the Defendant, who asks that the Court

continue his sentencing hearing so that he may receive necessary surgical care as soon as

possible.

 7. This Motion is the Defendant's first request to continue the sentencing hearing in

this matter.

 Defendant respectfully requests that his sentencing hearing be continued until July 6,

2017 at 10:00 A.M. or thereafter as necessary.

Respectfully submitted this 6th day of March, 2017.

 /s/ Michael J. Gallagher
MICHAEL J. GALLAGHER
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado  80202
Telephone:  (303) 892-9400
Mike.Gallagher@dgslaw.com

Attorney for Defendant Alan Alonzo Williams

**Certificate of Service**

I certify that on March 6, 2017, I electronically filed the foregoing *DEFENDANT'S UNOPPOSED MOTION TO CONTINUE SENTENCING HEARING* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Kathrine M. Aragon*
Kathrine Aragon

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

     Defendant.

---

## [PROPOSED] ORDER

---

Having considered Defendant's Unopposed Motion to Continue Sentencing Hearing ("Motion"), the Court finds that the Motion should be GRANTED. As such, the Sentencing Hearing in this matter is hereby reset to _____ at _____.

So ORDERED this _____ day of March, 2017.

 

                                    _____
                                    HON. ROBERT E. BLACKBURN
                                    Senior United States District Judge for the
                                    District of Colorado

Case No. 1:15-cr-00395-REB   Document 173   filed 09/10/19   USDC Colorado   pg 155 of
271
Case 1:15-cr-00395-REB   Document 50   Filed 03/06/17   Page 1 of 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No.  15-cr-00395-REB

UNITED STATES OF AMERICA,

　　　Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

　　　Defendant.

---

**MINUTE ORDER**[1]

---

　　　The matter is before the court on the **Defendant's Unopposed Motion To
Continue Sentencing Hearing** [#49],[2] filed March 6, 2017.  After careful review of the
motion and the file, the court concludes that the motion should be granted.

　　　**THEREFORE, IT IS ORDERED** as follows:

　　　1.  That the **Defendant's Unopposed Motion To Continue Sentencing Hearing**
is granted;

　　　2.  That the sentencing hearing set April 6, 2017, is vacated and continued to **July 6,
2017**, commencing at 10:00 a.m. (MDT); and

　　　3.  That, to the extent necessary, the United States Marshal for the District of
Colorado shall assist the court in securing the appearance of the defendant for this
hearing.

　　　Dated:  March 6, 2017

---

　　　[1] This minute order is issued pursuant to the express authority of the Honorable Robert E.
Blackburn, United States District Judge for the District of Colorado.

　　　[2] "[#49]" is an example of the convention the court uses to identify the docket number assigned to
a specific paper by the court's case management and electronic case filing system (CM/ECF).  The court
uses this convention throughout this order.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

**1.   ALAN ALONZO WILLIAMS,**

    Defendant.

---

## GOVERNMENT'S RESPONSE TO PRESENTENCE REPORT [DOC. #48]

---

    The United States of America, by and through Linda Kaufman, Assistant United States Attorney, hereby responds to the Presentence Investigation Report, "PSR", (Doc. #48) as follows:

    1.    At the time of the Plea Agreement, based on the information then available to it, the government estimated that the defendant's criminal history category would be Category V.   Doc. #44 at 15.

    2.    The Probation Department has concluded that the defendant's criminal history category is VI.   Doc. #48 at Para. 85.

    3.    Upon review, the government has concluded that the probation department's calculation is correct, for the following reasons:

    a. The government's initial calculation was that the total criminal history points was 10, based upon the same facts set forth in the PSR at Paragraph 77 (3 points for Arapahoe County Case #1996-cr-2283); Paragraph 79 (2 points for

Denver County Case #1998-cr-3933); Paragraph 80 (3 points for Denver County Case #2009-cr-4046); and Paragraph 84 (the instant offense of conviction was committed while the defendant was under a criminal justice sentence, having been on parole from August 3, 2005 through June 7, 2009).

b. The probation department included 6 additional criminal history points based on the following:

i. <u>PSR Paragraph 74</u>: 3 points for an attempted three-degree burglary conviction in Denver County Case # 1994-cr-1329. Upon review, the government concludes that the probation department is correct. The defendant was initially sentenced to community corrections for 18 months. The judgement was later amended, and he was sentenced to prison for 18 months and given credit for time served in county jail and community corrections. U.S.S.G. §4A1.1(a) provides that 3 points be assessed for each sentence of imprisonment exceeding 1 year and one month. U.S.S.G. §4A1.2(b)(1) defines "sentence of imprisonment" as a sentence of incarceration, which refers to the maximum sentence imposed. Application Note 2 to U.S.S.G. §4A1.2 states, "For the purpose of applying §4A1.1(a), (b), or (c), the length of a sentence imposed is the stated maximum… That is, the criminal history points are based on the sentence pronounced, not the length of time actually served." Thus, even if community corrections is not deemed to be "incarceration", the 3 points should be assessed, based on the Court's revised sentence to 18 months' incarceration.

ii. <u>PSR Paragraph 81</u>: 2 points for 9an harassment conviction in Aurora Municipal Court Case # J108979. The government was previously not

aware of this conviction and sentence, and upon review, concludes that it does warrant the addition of 2 criminal history points, pursuant to U.S.S.G. §4A1.1(b).

iii. PSR Paragraph 82: 1 point for an identity theft conviction in Arapahoe County Case # 2011-cr-2326. The government was previously aware that the defendant had pled guilty in this case but had failed to appear for sentencing, but did not add any criminal history points for that in its initial calculation. Upon review, the government concludes that the probation department is correct, pursuant to U.S.S.G. §4A1.2(a)(4), which states that where the guilt of a defendant has been established by a guilty plea, such conviction is to be counted as if it constituted a prior sentence under U.S.S.G. §4A1.1(c), if a sentence resulting from that conviction would otherwise be countable.

4.      In sum, the government has no objections to the PSR, and now agrees with the probation department that the defendant's criminal history category is VI.

Respectfully submitted,

By: s/Linda Kaufman
LINDA KAUFMAN
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0401
Email: Linda.Kaufman@usdoj.gov

Case No. 1:15-cr-00395-REB Document 173 filed 00/10/19 USDC Colorado pg 159 of
Case 1:15-cr-00395-REB Document 51 Filed 04/07/17 Page 4 of 4
271

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of April 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Mr. Michael Gallagher
Mike.gallagher@dsglaw.com

Kyla Hamilton (US Probation)
Kyla_Hamilton@cod.uscourts.gov

s/Mariah Hill
Mariah Hill
Legal Assistant
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303 454-0100
Fax: 303 454-0402
Email: mariah.hill@usdoj.gov

Case No. 1:15-cr-00395-REB Document 173 filed 09/10/19 USDC Colorado pg 160 of
271
Case 1:15-cr-00395-REB Document 52 Filed 04/07/17 Page 1 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

**1.  ALAN ALONZO WILLIAMS,**

    Defendant.

---

### GOVERNMENT'S MOTION PURSUANT TO U.S.S.G. § 3E1.1(b)

---

The United States of America hereby respectfully moves this Court to decrease the defendant's offense level by one additional level pursuant to U.S.S.G. §3E1.1(b) if the Court finds that §3E1.1(a) applies. As grounds therefor, the government states as follows:

1.    The defendant assisted authorities in the prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

Respectfully submitted,

ROBERT C. TROYER
Acting United States Attorney

By: *s/Linda Kaufman*
LINDA KAUFMAN
Assistant United States Attorney
1801 California Street, Suite 1600

Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0401
Email: Linda.Kaufman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April, 2017, I electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system which will send
notification of such filing to the following e-mail addresses:

Mr. Michael Gallagher
Mike.gallagher@dsglaw.com

Kyla Hamilton (US Probation)
Kyla_Hamilton@cod.uscourts.gov

s/Mariah Hill
Mariah Hill
Legal Assistant
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303 454-0100
Fax: 303 454-0402
Email: mariah.hill@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

**1.**  **ALAN ALONZO WILLIAMS,**

    Defendant.

---

## GOVERNMENT'S MOTION TO DISMISS COUNTS

---

The United States of America hereby moves this Court to dismiss Counts 2, 3, and 4 at the time of the sentencing on Count I, and as grounds therefor, states as follows:

1. The government agreed to move to dismiss all remaining counts if the defendant pled guilty to Count I. (Doc. #44 at 1).

2. The defendant has pled guilty to Count I.

Respectfully submitted,

By: *s/Linda Kaufman*
LINDA KAUFMAN
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0401
Email: Linda.Kaufman@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of April, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:


Mr. Michael Gallagher
Mike.gallagher@dsglaw.com

Kyla Hamilton (US Probation)
Kyla_Hamilton@cod.uscourts.gov


s/*Mariah Hill*
Mariah Hill
Legal Assistant
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303 454-0100
Fax: 303 454-0402
Email: mariah.hill@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00395-REB-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

   **1. ALAN ALONZO WILLIAMS**

      Defendant.

---

## ORDER ON GOVERNMENT'S MOTION TO DISMISS COUNTS

      THIS MATTER comes before the Court upon the Government's motion to dismiss Counts 2, 3, and 4 of the Indictment. The Court, having considered this motion, and having imposed sentence upon the defendant, hereby

      ORDERS that the Government's Motion to Dismiss Counts is GRANTED, and further

      ORDERS that Counts 2, 3, and 4 of the Indictment in this case are dismissed with prejudice.

      DATED this _____ day of _____, 2017.

                          BY THE COURT:

                          _____
                          ROBERT E. BLACKBURN
                          United States District Judge
                          District of Colorado

1

Case No. 1:15-cr-00395-REB   Document 173-1   filed 09/10/19   USDC Colorado   pg 165 of
271
Case 1:15-cr-00395-REB   Document 54   Filed 06/01/17   Page 1 of 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 15-cr-00395-REB-1

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.  ALAN ALONZO WILLIAMS,

     Defendant.

---

## ENTRY OF APPEARANCE OF COUNSEL

---

To:     The clerk of court and all parties of record

     I hereby certify that I am a member in good standing of the bar of this

court, and I appear in this case as counsel for the United States of America.

     DATED at Denver, Colorado this 1st day of June, 2017.

                    ROBERT C. TROYER
                    Acting United States Attorney

                    By:  *s/ Julia Martinez*
                    JULIA MARTINEZ
                    Assistant United States Attorney
                    United States Attorney's Office
                    1801 California Street, Suite 1600
                    Denver, Colorado 80202
                    Telephone: 303-454-0100
                    Fax: 303-454-0401
                    Email: Julia.Martinez@usdoj.gov

Case No. 1:15-cr-00395-REB   Document 173   filed 09/19/19   USDC Colorado   pg 166 of
271
Case 1:15-cr-00395-REB   Document 54   Filed 06/01/17   Page 2 of 2

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June, 2017, I electronically filed the
foregoing **ENTRY OF APPEARANCE OF COUNSEL** with the Clerk of the Court using
the CM/ECF system, which will send notification of such filing to all counsel of record.

By:  *s/ Lisa Tibbetts*
LISA TIBBETTS
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0401
E-mail: Lisa.Tibbetts@usdoj.gov

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## DEFENDANT'S RESPONSE TO PRESENTENCE REPORT (DOC. #48)

---

Defendant Alan Alonzo Williams ("Defendant"), by counsel, submits these objections and comments to the Presentence Investigation Report (Doc. #48).

### <u>Offense Description</u>

Mr. Williams acknowledges his wrongdoing as summarized in the factual basis of the Plea Agreement, and admits that these loans were obtained fraudulently. But the Presentence Investigation Report ("PSR") fails to capture a material element of the surrounding facts, which was that Mr. Williams was motived in substantial part by a desire to turn around a struggling family vending machine business and that a significant portion of the loan proceeds were used for this purpose.

The PSR properly quotes the Plea Agreement concerning the facts surrounding the offense. But the Plea Agreement specifies that additional facts that do not contradict the

stipulated facts may be presented if relevant to the Court's sentencing decision. The Plea Agreement states that funds were used to operate Williams Vending and pay creditors, and in the "Additional Information" section of the PSR probation provides additional information from discovery materials concerning the use of loan proceeds. But the additional information in Paragraphs 28 through 31 fails to mention that discovery materials, particularly bank records, show that substantial loan proceeds were used to operate Williams Vending and to pay its creditors.

The PSR quotes portions of the Plea Agreement at paragraphs 27 through 29 of the PSR that the balance of the loans were reduced little as the result of payments made by Mr. Williams. This is true, but payments made were as specified by the loan agreements, and early loan payments do not significantly reduce principal. The government emphasizes these same facts in its supporting letter of May 24, 2017 to suggest that Mr. Williams intended from the outset to abscond with all loan proceeds. There are other facts revealed by bank records in the discovery record not discussed in the Additional Facts section of the PSR, however, showing that these loans were used in part to fund Williams Vending, a long-standing family business. The full loss occurred when that business failed.

At paragraph 112 of the PSR, probation confirms that Williams Vending existed from 1986 until its failure in 2011 and conducted business during most of this time. The defendant's mother confirms at paragraph 93 of the PSR that Mr. Williams worked at Williams Vending for years before the events leading to these offenses, and wanted that business "to be successful," particularly after the death of the defendant's father.

Case No. 1:15-cr-00395-RBJ Document 173 filed 09/10/19 USDC Colorado pg 169 of
271
Case 1:15-cr-00395-REB Document 55 Filed 06/15/17 Page 3 of 11

As supported by the government in its May 24, 2017 letter, the PSR correctly states at
paragraph 22 that the loan balances were not significantly reduced before these loans went into
default.  But the letter's attachments confirm that loan payments were made regularly for a
significant period.

The PSR mentions at paragraph 21 that loan proceeds were used to pay creditors of
Williams Vending and for operating capital, but the Additional Facts section of the PSR fails to
give adequate attention to these payments.  Bank records in discovery materials show that
substantial loan proceeds were paid to the creditors of Williams Vending referred to in Paragraph
21 of the PSR in early 2008 shortly after this loan was funded.  Examples of these payments are
shown by checks available in the discovery record at: WF_00000808 (Financial Pacific),
WF_00000809 (Pentech) and WF_00000810 (NetBank).  Additionally, reports of government
interviews produced in discovery confirm that Pentech Financial (INT_00000004), Puget Sound
Leasing/First Sound Bank (INT_00000019), and NetBank (INT_00000154) were all paid off in
early 2008.  Other bank records in discovery show significant operating expenses of Williams
Vending paid using loan proceeds.  Examples of such  checks in the discovery record are found
at: WF_00000530 (Seven Up), WF_00000531 (warehouse rental), WF_00000792 (Gateway
Industrial),    WF_00000721    (warehouse    rental),    WF_00000729    (warehouse    rental),
WF_00000801 (warehouse rental), WF_00000786 (loan payment), WF_00000535 (Coca Cola),
WF_00000742 (Coca Cola), WF_00000747 (Coca Cola), WF_00000748 (Coca Cola),
WF__00000752 (Coca Cola), WF_00000753 (Coca Cola), WF 00000802 (Seven Up),
WF_00000780 (Seven Up), WF_00000794 (vending machine parts), WF_00000807 (product
supplier), WF_00000811 (product supplier), and WF_00000533 (delivery truck rental).  This is

3

not a case where loan proceeds were obtained for a non-existent business or fully appropriated for the defendant's personal use.

The PSR mentions at Paragraph 22 that Ross Vending did not provide Williams Vending with $339,200.00 of vending machines. But important details about payments to Ross Vending are not mentioned in the Additional Facts section of the PSR. Bank records provided in discovery reveal payment for the delivery of many Ross Vending machines using loan proceeds and payments made directly to Ross Vending for vending machines. See, for example, bank records available in discovery at WF_00000791. Other bank records show checks made out to Williams Vending but identifying the purpose of machine purchases. See, for example, WF_00000561. When he was interviewed, the owner of Ross Vending acknowledged that he received cash payments for machines sold to Williams Vending.

Similarly, Paragraph 23 of the PSR states that Mr. Williams did not pay Specialty Trux invoices in full, but bank records available in discovery, and not mentioned in the Additional Facts section of the PSR, show that significant payments, exceeding $30,000.00, were made to Specialty Trux using loan proceeds. See WF_00000784 and 00000788.

Mr. Williams recalls additional payments made to creditors of Williams Vending, including those identified in Paragraph 21 of the PSR, not addressed in discovery materials. Mr. Williams will seek a continuance of his sentencing, in part, to confirm these additional payments.

The PSR correctly states that Mr. Williams improperly acquired two vehicles with loan proceeds, and misappropriated other monies for purely personal use, but these sums are substantially less than the approximately $1.1 million in loan proceeds paid to Williams

Case No. 1:15-cr-00395-REB   Document 55   Filed 09/10/19   USDC Colorado   pg 171 of
271
Case 1:15-cr-00395-REB   Document 178-1   Filed 06/15/17   Page 5 of 11

Vending.  The loss is a combination of (i) the admitted fraudulent conduct of Mr. Williams; (ii) the failure of this pre-existing family business notwithstanding the use of loan proceeds to support that business; and (iii) prior security interests in the business held by Chase Bank.  See PSR at Paragraph 30.

Mr. Williams explains, as reported at paragraphs 44 and 45 of the PSR, that after his father's death he was desperate to make Williams Vending a success, and acknowledges that he "took the easy road" by obtaining these loans fraudulently and misusing funds.  But he also explains that he was substantially motivated by a desire to make his family business a success.  His mother confirms these circumstances at paragraph 93 of the PSR.  The Additional Facts section of the PSR fails to adequately describe this aspect of the facts surrounding Mr. Williams' offenses confirmed by discovery materials and bank records.

### Guideline Loss Amount and Offense Level

The PSR concludes at paragraph 35 that the guideline loss amount exceeds $1,500,000, which increases the total offense level by two points.  As reported at paragraph 41 of the PSR, the actual loss on the completed loans is $1,146,828.28.  To exceed the $1,500,000 threshold and increase the offense level by 16 points rather than 14 under §2B1.1(b)(1)(H), the PSR concludes that Mr. Williams intended to cause a loss of the full amount of the final loan he requested but did not receive.  Mr. Williams objects to this calculation because it is not consistent with the offense facts.  The properly calculate Offense Level is 18, not 20 as reported in the PSR.

The case law relied upon by probation, *United States v Manatau*, 647 F.3d 1048, 1050 (10th Cir. 2011), supports the proposition that intended loss may be determined by examination of the surrounding facts, such as the defendant's mental state.

Here, the facts do not show that Mr. Williams intended to cause a loss of the full amount of this attempted loan. Although these loans were obtained fraudulently, bank records available in discovery show that substantial loan proceeds were used in part to support a long-standing business. Payments were made on the completed loans for many months. Loan proceeds were used to operate Williams Vending, including payments made to creditors of Williams Vending. The assets of Williams Vending were liquidated to pay off one such creditor, Chase Bank, that held a superior lien. The failure of Williams Vending does not establish the intent to deprive the lender of the full value of this proposed loan.

The PSR calculates the "guideline loss" amount to be $1,696,828.28 based on an actual loss of $1,146,828.28 on the completed loans and the full $550,000 sought on the attempted loan. The evidence does not support that Mr. Williams intended to cause the loss of essentially all of this additional proposed loan. The government cannot meet its evidentiary burden to justify the 16-level enhancement for loss exceeding $1,500,000. A 14-level enhancement under §2B1.1(b)(1)(H) is appropriate in this case.

Mr. Williams did not "purposely [seek] to inflict" the full amount of this denied loan. *See* Manatau, 647 F.3d at 1050. The continued operation of Williams Vending Company meant that the amount of "intended loss" was not the full amount of this proposed loan, and that the total loss supported by the facts is below the $1,500,000 threshold.

### Criminal History

Mr. Williams believes that his criminal history points are overstated and that there are also mitigating facts about his criminal history that should be noted.

6

Mr. Williams objects to the two (2) points assigned for the matter described in Paragraph 79 of the PSR. As reflected in the PSR, Mr. Williams was sentenced on the matter reflected in Paragraph 79 in a single sentence served along with the sentences referred to in Paragraphs 76, 77 and 78. No additional points should be assigned for the matter referred to in Paragraph 79. See U.S.S.G. §4A1.2(a)(2).

Mr. Williams also objects to the three (3) points assigned for the matter described in Paragraph 74 of the PSR. His recollection is that this matter was eventually dismissed. Mr. Williams requests access to the supporting case materials concerning this matter to confirm these facts.

Although Mr. Williams has a significant criminal history, little of that criminal history is recent. The current offense occurred over ten years ago. His last convictions or arrests, prior to his current incarceration, occurred in March 2006, years prior to his arrest in this case.

Mr. Williams' criminal history includes few offenses relating to personal violence, and nothing of that kind in recent years. In fact, the only related event in the past two decades is a municipal harassment charge reported at paragraph 81 of the PSR. Mr. Williams, however, does not agree that this event involved actual violence. As noted, charges of battery and attempted assault associated with this event were dismissed.

Mr. Williams' criminal history includes no gun charges or drug offenses.

### Physical and Medical Condition

The PSR reports at paragraphs 102 and 103 about a hernia and knee injury.

The original sentencing date of May 6, 2017, was continued so Mr. Williams could be treated for his medical problems. Recently, he has been evaluated at a private hospital for a knee

Case No. 1:15-cr-00395-RBB  Document 172-1  filed 09/06/19  USDC Colorado  pg 174 of
271
Case 1:15-cr-00395-REB  Document 55  Filed 06/15/17  Page 8 of 11

brace and also to prepare him for hernia surgery.  He anticipates that his surgery will occur soon,

likely between now and the current sentencing date of July 6, 2017.  Mr. Williams has not been

told the specifics of when he will be returned to the hospital for further treatment, but his Federal

Detention Center counselor should be able to confirm these facts.  Mr. Williams will request a

continuance of his sentencing to facilitate his hernia surgery and other medical care, and so that

the Court can be fully advised of his medical condition at sentencing.

### Employment History

As we believe he reported during his interview with probation, Mr. Williams has a

certification to work as an asbestos removal contractor and has worked in this field at various

times.  He plans to return to this work when released from custody.

### Other Comments

Paragraph 4 of the PSR addresses a minor rules violation at the Federal Detention Center.

It should be noted that the picture he asked another inmate to prepare was a family picture.

### Sentencing Recommendation

Mr. Williams objects to the PSR's recommendation that he be sentenced to 87 months,

which is the top end of the guideline range calculated by probation.

Because the guideline loss is less than $1,500,000, the proper total offense level is 18

rather than 20.  Even with a Criminal History Level VI, which MR. Williams contests, the proper

guideline range here is 57-71 months.  A maximum sentence within the proper guideline range

would be 71 months, not 87 months.

Case No. 1:15-cr-00395-RBB   Document 172-1   filed 09/10/19   USDC Colorado   pg 175 of
Case 1:15-cr-00395-REB   Document 55   Filed 06/15/17   Page 9 of 11
271

Even if the Court finds that the proper total offense level is 20 and a Criminal History
Level VI, however, probation's recommended sentence of 87 months substantially exceeds the
sentence necessary to meet the requirements of 18 U.S.C. §3553.

The guidelines add two additional points to the offense level for a guideline loss
exceeding $1,500,000 but less than $3,500,000. §2B1.1(b)(1)(I). Even if the guideline loss is
$1,696,828.28, as probation calculates, this loss is at the bottom of this category of guideline loss
(i.e. closer to $1,500,000 than $3,500,000) and does not justify a sentence at the top of the
resulting guideline range.

Although Mr. Williams' offense is serious, it is mitigated by the fact that these loans
were obtained in part in a failed effort to fund and save a long-existing family business. This is
not a more aggravated case than where all loan proceeds were stolen for personal use via a non-
existing entity, or where the defendant concealed his identity for this purpose. Mr. Williams'
involvement in the loan process was no secret; he had direct contact with WebBank on numerous
occasions, and as shown by bank records available in discovery, he signed in his own name
Williams Vending checks used to make loan payments. See paragraphs 19 and 20 of the PSR
and, for example, WF_00000727 and WF_00000728 . Again, a sentence at the maximum of the
guideline range is not justified by these circumstances. See 18 U.S.C. §3553 (a)(1).

Mr. Williams is a 54-year old with significant health issues, and if sentenced to 70
months, will be approximately 60 years old when he completes this sentence and even older
when he completes any term of Supervised Release. In addition, he is likely to be sentenced on
certain of the pending state court cases after he is sentenced in the present case. Particularly
given any term of Supervised Release imposed, Mr. Williams is a modest risk to reoffend.

A sentence at the maximum of the guideline range is not justified by the risk of future offenses. See 18 U.S.C §3553 (a)(1)(C).

Mr. Williams has a significant criminal history, but this criminal history, particularly in recent decades, reveals no propensity for violence, no gun charges and no drug history, and he was not arrested on any new offenses for nearly five years prior to his arrest for the current offense. A sentence at the maximum of the guideline range is not justified by this criminal history.

Mr. Williams suggests that a sentence at the bottom of the guideline range, or below, is adequate to meet the requirements of 18 U.S.C. §3553. This would be a sentence of no more than 57 months assuming an Offense Level of 18, or a sentence of no more than 70 months assuming an Offense Level of 20.

Mr. Williams anticipates submitting a Sentencing Memorandum to the Court concerning his sentence. Mr. Williams will request a continuance of this sentencing hearing to facilitate his medical treatment, and to obtain further supporting information showing that loan proceeds were used in substantial part to pay the creditors mentioned in Paragraph 21 of the PSR.

Respectfully submitted this 15th day of June, 2017.

/s/ Michael J. Gallagher
MICHAEL J. GALLAGHER
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 892-9400
Mike.Gallagher@dgslaw.com

Attorney for Defendant Alan Alonzo Williams

10

**Certificate of Service**

I certify that on June 15, 2017, I electronically filed the foregoing **Defendants' Response to Presentence report (Doc. #48)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_s/ Kathrine M. Aragon_
Kathrine Aragon

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## DEFENDANT'S SECOND UNOPPOSED MOTION TO CONTINUE
## SENTENCING HEARING

---

Defendant Alan Alonzo Williams ("Defendant"), by his undersigned counsel, requests that sentencing in this matter, currently scheduled for July 6, 2017 at 10:00 A.M., be continued approximately 50 days until on or about Thursday, August 17, 2017 or the Court's next available setting thereafter. In support of this Motion ("Motion"), Defendant states as follows:

1.     Defendant has been in federal custody since his arrest in this case on March 18, 2016.

2.     On January 12, 2017, Defendant pled guilty pursuant to a plea agreement with the United States. On that date, the Court set Defendant's sentencing hearing for April 6, 2017 at 10:00 A.M.

3.     On March 6, 2017, the Court granted Defendant's Unopposed Motion to Continue Sentencing Hearing, resetting sentencing in this matter until July 6, 2017, at 10:00 AM.

Defendant had requested this continuance in order to address a long-standing health issue for which he believed he was to receive surgical care.

4.      Through no fault of his own, the Defendant's surgery has not yet occurred.  It is anticipated, however, that surgery will occur prior to July 6, 2017.

5.      Mr. Williams will also use the additional requested time to seek financial records relevant to the Court's determination of the appropriate guideline sentencing range in this matter. As noted in his comments to the Presentence Report, Defendant believes that additional records may exist showing his use of loan proceeds to further his family's business, Williams Vending Company.

6.      The assigned Assistant U.S. Attorney, AUSA Julia Martinez, is on vacation and unavailable for conference regarding her position on this Motion.  On June 15, 2017, however, Ms. Judith Smith, Ms. Martinez's supervisor, consented to the relief sought in this Motion.

7.      On June 15, 2017, the Court's chambers were contacted by the undersigned and AUSA Judith Smith regarding available dates for Mr. Williams' sentencing hearing should the Court grant this Motion.  The Clerk stated that the Court has an available setting on August 17, 2017 at 10:00 A.M.

8.      This Motion is filed at the request of the Defendant, who asks that the Court continue his sentencing hearing both so that he may receive necessary surgical care as soon as possible, and so that he may seek additional financial records relevant to sentencing.

9.      This Motion is the Defendant's second request to continue the sentencing hearing in this matter.

Defendant respectfully requests that his sentencing hearing be continued for approximately 50 days until on or about August 17, 2017, or thereafter as necessary.

Respectfully submitted this 15th day of June, 2017.

　　　/s/ Michael J. Gallagher
MICHAEL J. GALLAGHER
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado 80202
Telephone  (303) 892-9400
Mike.Gallagher@dgslaw.com

Attorney for Defendant Alan Alonzo Williams

**Certificate of Service**

I certify that on June 15, 2017, I electronically filed the foregoing **Defendant's Second Unopposed Motion to Continue Sentencing Hearing** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Kathrine M. Aragon*
Kathrine M. Aragon

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## [PROPOSED] ORDER

---

Having considered Defendant's Second Unopposed Motion to Continue Sentencing Hearing ("Motion"), the Court finds that the Motion should be GRANTED.  As such, the Sentencing Hearing in this matter is hereby reset to Thursday, August 17, 2017 at 10:00 A.M.

So ORDERED this _____ day of June, 2017.

                                _____
                                  HON. ROBERT E. BLACKBURN
                                  Senior United States District Judge for the
                                  District of Colorado

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE

---

TO THE HONORABLE ROBERT E. BLACKBURN, SENIOR UNITED STATES DISTRICT JUDGE FOR THE DISTRICT OF COLORADO:

In advance of his sentencing hearing scheduled for August 17, 2017, Defendant Alan Alonzo Williams submits this Sentencing Memorandum and Motion for Downward Departure and Variance ("Memorandum"). The positions stated here are supported by the facts and circumstances described in Defendant's Response to the Presentence Report (Docket No. 55), which is incorporated by reference.

The United States Probation Office ("Probation") recommends a sentence of 87 months, which is the maximum guideline sentence applicable to an offense level of 20 and a criminal history category VI. For the reasons described in this Memorandum, Mr. Williams proposes a sentence of no more than 57 months, which is the bottom of the guidelines for an offense level of 18 and assuming (without accepting) that Probation has properly placed Mr. Williams in criminal history category VI. This recommendation is made because (i) Probation's recommendation

Case No. 1:15-cr-00395-REB  Document 178-1  filed 09/06/19  USDC Colorado  pg 184 of
Case 1:15-cr-00395-REB  Document 58  Filed 06/03/17  Page 2 of 21
271

assumes too high of a guideline loss enhancement; and (ii) the offense is mitigated by the fact

that Mr. Williams was motivated to save a struggling family business and not just engaged in a

theft of all loan proceeds.

## Background and Summary of Sentencing Position

Raised by hard-working parents who provided for him and his two siblings, Mr.

Williams' early life revolved around his father, a career U.S. Army officer, who was frequently

relocated to duty stations throughout the United States and, for a time, to Germany. After

retiring from the Army in 1979, Colonel Alonzo Williams, Jr. (ret.) moved his family to

Colorado. In 1981, Mr. Williams graduated from Aurora Central High School, and left home on

a college basketball scholarship. After he returned to Colorado, and decades before the offenses

charged here, he began work for his father at Williams Vending Company, the family business

involved in this case.

Mr. Williams made misrepresentations to obtain the loans at issue here, and his guilty

plea accepts responsibility for this misconduct. But these offenses are mitigated by facts

showing that rather than simply absconding with loan proceeds, Mr. Williams used the bulk of

loan proceeds for legitimate business purposes in a real effort to save his family's business. The

bulk of the loss in this case resulted from the failure of Williams Vending, not simple theft of

loan proceeds.

Mr. Williams explains, as reported at paragraphs 44 and 45 of the Presentence

Investigation Report ("PSR"), that after his father's death he was desperate to make Williams

Vending a success, and acknowledges that he "took the easy road" by obtaining these loans

fraudulently and misusing some of these funds. But he also explains that he was substantially

2

Case No. 1:15-cr-00395-RBB  Document 172-1  filed 09/10/19  USDC Colorado  pg 185 of
Case 1:15-cr-00395-REB  Document 58  Filed 06/03/17  Page 3 of 21
271

motivated by a desire to make his family business a success.  His mother confirms these

circumstances at paragraph 93 of the PSR.

The government and Probation conclude that the total offense level is 20, and on that

basis and an assumed criminal history category of VI, Probation recommends a maximum

guideline sentence of 87 months.  This offense level calculation, and Probation's harsh

sentencing recommendation, are based on the unsupported assumption that Mr. Williams

intended to cause harm in the full amount of all loan proceeds, including the proceeds of a loan

he sought but did not receive.  But the evidence shows something very different.  Very

substantial portions of loan proceeds were used to fund and operate Williams Vending.

Hundreds of thousands of dollars were used to pay Williams Vending's creditors as loan

proceeds became available.  Under these circumstances, it is wrong to conclude that Mr.

Williams intended a harm equal to all proceeds of a loan sought but denied.  The proper offense

level is 18, not 20.

Mr. Williams asks the Court to find that the proper offense level is 18, and proposes that

he be sentenced to no more than 57 months, which is the bottom of the guideline range based on

that offense level and an assumed criminal history category VI.  If necessary to support this

sentence, Mr. Williams asks for a downward departure to this guideline range, or a variance

outside of the calculated guidelines.  Particularly given his age and the nature of this offense, this

sentence meets the sentencing requirements of 18 U.S.C. § 3553(a).

Case No. 1:15-cr-00395-RBB Document 178-1 Filed 09/06/19 USDC Colorado pg 186 of
271
Case 1:15-cr-00395-REB Document 58 Filed 08/03/17 Page 4 of 21

**THE LOSS AMOUNT CALCULATED BY PROBATION AND THE GOVERNMENT IS
OVERSTATED**

Pursuant to U.S.S.G. § 2B1.1, Probation applies a 16-level enhancement for a loss

amount exceeding $1,500,000 (but less than $3,500,000), resulting in a total offense level of 20.

As discussed in his objections to the PSR, Probation would hold Mr. Williams responsible for

$1.1M in actual losses, and an additional $550,000 in intended losses based upon a third loan

that was never funded, resulting in a calculated guideline loss amount of $1,696,828.28.

Relying on the remaining balances on the two funded loans, the government argues – and

Probation accepts - that even though the $550,000 loan was not funded (and there was no actual

loss), Mr. Williams intended a loss in the entire amount of that unfunded loan.  This argument

ignores that hundreds of thousands of dollars of loan proceeds were paid to creditors and used to

operate Williams Vending Company.  Mr. Williams' use of loan proceeds from funded loans

shows he did not intend to cause a loss in the full amount of the unfunded loan.  Mr. Williams'

objection to the PSR's calculation of guideline loss should be sustained, and his sentence based

on the 14-level enhancement of U.S.S.G. § 2B1.1(b)(1)(H), not the 16-level enhancement of

§ 2B1.1(b)(1)(I) applied in the PSR.

**The Loan Funded December 28, 2007 Was Used Largely to Operate Williams Vending**

On December 28, 2007, WebBank issued ten checks, each in the name of a creditor and,

at Mr. Williams' request, Williams Vending Company.  These checks funded loan #501000060

in the amount of $787,000 and, after loan origination and other fees, included:

Case No. 1:15-cr-00395-RBJ Document 172-1 filed 09/06/19 USDC Colorado pg 187 of
Case 1:15-cr-00395-REB Document 58 Filed 08/03/17 Page 5 of 21
271

| Intended Recipient | Loan Amount | Purpose | Reference | Amount Paid to Creditor |
|---|---|---|---|---|
| Pinnacle Business Finance | $67,695.83 | Debt payoff. | WF_00000543[1] GJ_00000420 | Paid via liquidation. |
| Pinnacle Business Finance | $68,253.07 | Debt payoff. | WF_00000527 GJ_00000441 | Paid via liquidation. |
| Pentech Financial Service | $51,379.80 | Debt payoff. | WB_00004005 | $42,000 (1/11/08) INT_00000004 |
| Net Bank Business Finance | $44,074.67 | Debt payoff. | JPM_00000222 | $42,869.54 (Jan. 2008) INT_00000154 |
| Financial Pacific Leasing | $22,523.00 | Debt payoff. | JPM_00000225 | Awaiting supporting documentation from creditor. |
| Martin Leasing Corp. | $47,107.47 | Debt payoff. | JPM_00000220 | No additional information available. |
| First Federal Leasing | $33,967.80 | Debt payoff. | JPM_00000226 | Paid; see below. |
| Puget Sound Leasing | $37,273.60 | Debt payoff. | JPM_00000223 | $31,500 (Jan. 2008) INT_00000019 |
| Ross Vending | $337,100.00 | Equipment purchase. | WB_00002662 | INT_00000116; INT_00000039; Paid in full as described below. |
| Ross Vending (Issued January 31, 2008) | $40,000 | Equipment purchase. | WF_00000548 | Paid for inventory purchased; see below. |
| Williams Vending Co. | $32,279.76 | Working capital. | WF_00000525 | Properly spent. |
| TOTAL | $781,655.00 | | | |

---

[1] Most documents cited in this Memorandum are found in the discovery provided by the government. These documents are voluminous and will not be provided to the Court prior to sentencing; paper copies, however, will be offered at sentencing. All other materials are attached.

5

Case No. 1:15-cr-00395-RBB Document 173-1 Filed 09/10/19 USDC Colorado pg 188 of
Case 1:15-cr-00395-REB Document 58 Filed 06/03/17 Page 6 of 21
271

Mr. Williams admits that he, "without obtaining co-endorsements from the joint payees,

caused all of the funds to be deposited into the WVC accounts" and that he "used a large portion

of the proceeds for his own purposes, rather than for the purposes authorized for the SBA-

guaranteed loan."  The government alleges, and Mr. Williams acknowledges, that he improperly

purchased two Mercedes vehicles with loan proceeds from Murray Motors in the amount of

approximately $85,000.  (See*, e.g.,* MMI_00000004-05).  But the evidence doesn't support the

government's claim that Mr. Williams intended to divert essentially all loan proceeds for

personal use, or that he intended to cause a loss in the full amount of the loan he sought but did

not receive.  The government's own investigation shows that Mr. Williams used very substantial

portions of loan proceeds to pay off creditors of Williams Vending and otherwise to support that

business.  Since Probation relies on the government's discovery materials to support its

conclusion, Mr. Williams relies principally on discovery materials in opposition to Probation's

recommendations.

## I.        The Government's Investigation

After receiving the WebBank checks and improperly depositing them into accounts he

controlled, Mr. Williams negotiated lower payoff amounts with creditors of Williams Vending

Company and made payments to resolve those obligations.  This fact is confirmed by the

government's own investigation.

### 1.        Pentech Financial Advisors

On January 11, 2008, via cashier's check #0548403594 (see WB_00004005),

Mr. Williams paid Pentech Financial Advisors $42,000, settling Williams Vending's $51,379.80

Case No. 1:15-cr-00395-REB   Document 172   Filed 09/08/19   USDC Colorado   pg 189 of
Case 1:15-cr-00395-REB   Document 58   Filed 08/03/17   Page 6 of 21
271

debt for which loan proceeds were funded.  This pay off was confirmed by the government's

interview of Mr. Robert Amos, General Counsel for Pentech Financial.  (See INT_00000004).

### 2.      Puget Sound Leasing

Mr. Williams paid Puget Sound Leasing $31,500, settling Williams Vending's

$37,273.60 debt for which loan proceeds were funded.  This pay off was confirmed by the

government's interview of a representative from First Sound Bank, Puget Sound Leasing's

successor in interest.  (See INT_00000019).

### 3.      NetBank Business Finance

Mr. Williams paid NetBank Business Finance $42,869.54, settling Williams Vending's

$44,074.67 debt for which loan proceeds were funded.  This pay off was confirmed during the

government's interview of a representative of Leaf Funding, LLC, a successor to NetBank.  (See

INT_00000154).

These payoffs to creditors of Williams Vending do not excuse the fraud that was

perpetrated upon WebBank to obtain this loan, but they show that Mr. Williams did not intend

the entire unfunded loan ($550,000) to be diverted, or to cause a loss to WebBank in the full

amount of any of these loans.

### 4.      Interviews of Ross Vending

Although the government's investigation did not confirm that Ross Vending Company

was paid in full, further inquiry shows that this occurred.

Mr. Ross Goldstein of Ross Vending Company was interviewed by the Federal Bureau of

Investigation ("FBI") on August 24, 2012.  (*See* INT_00000039-40).  Mr. Goldstein stated that

he sold "three to four truckloads of refurbished vending machines which consisted of

Case No. 1:15-cr-00395-RBB   Document 172-1   Filed 09/10/19   USDC Colorado   pg 190 of
Case 1:15-cr-00395-REB   Document 58   Filed 08/03/17   Page 8 of 21
271

approximately 90 to 120 machines" to Alan Williams and Williams Vending Company "for 800
to 900" per machine.  (*Id*. at 39.)  He was not asked whether Mr. Williams paid Ross Vending
for these machines with loan proceeds.

On July 12, 2017, counsel for Mr. Williams spoke via telephone with Mr. Ross
Goldstein.  Mr. Goldstein confirmed his prior statements to the FBI that he had sold machines to
Williams Vending Company, and stated that Williams Vending had paid in full and did not owe
Ross Vending any money he knew of.  Mr. Goldstein did not believe that he had maintained any
records of the transactions, but added that the amounts the FBI told him Williams Vending
claimed to have purchased were exaggerated.

Mr. Williams inflated the invoices provided to WebBank concerning his purchase of
equipment for Williams Vending from Ross Vending.  But Williams Vending did make a
substantial purchase of refurbished machines from Ross Vending with loan proceeds.  Using
Mr. Goldstein's recollections, which as described below is not fully supported by other evidence
in the discovery record, Williams Vending purchased at least 90 machines from Ross Vending at
a cost of no less than $800 per machine, amounting to a conservative estimate of $72,000 in
legitimate purchases.  If Williams Vending purchased 120 machines at $900 per machine,
however, Williams would have paid Ross Vending $108,000.  Again, the evidence shows that
substantial loan proceeds were used to pay Williams Vending's creditors to support that
business.

Mr. Goldstein has acknowledged in the discovery record that he lacks records to show
how many machines he sold to Williams Vending or the payments he received.  He also
acknowledges receiving cash payments.  (See WB_00002268 at deposition p. 31, line 12-15.)

8

Case No. 1:15-cr-00395-RBB Document 178-1 Filed 09/06/19 USDC Colorado pg 191 of
Case 1:15-cr-00395-REB Document 58 Filed 06/03/17 Page 9 of 21
271

Substantial payments made to Ross Vending are confirmed by the discovery record. The record contains at least one check in the amount of $33,000 (see WF_00000791) paid to Ross Vending for delivered machines. In addition, the government's interview with Mr. Williams' loan broker, Jim Moldane, reveals that Mr. Williams told him he paid Ross Vending an additional $200,000 dollars in cash for machines during a visit to Mr. Goldstein in California. (See INT_00000116.) These transactions are further supported by bank records showing payments for freight charges for machine transportation. (See WF_0000579, showing a freight payment of $2,475.61; and WF_0000589, showing a freight payment of $3,363.56.)

### 5. "Working Capital"

As part of this initial loan, Williams Vending received $32,279.76 for "working capital." The record shows that Mr. Williams spent substantially more than this amount to pay the company's on-going expenses. In early January, after the loans were funded and deposited by Williams, cashier's checks were cut to pay for inventory (7 Up, $18,000), rent (Michael Bloom Realty, $23,000), and consulting services – Mr. Jim Moldane, an advisor who helped Williams apply for the SBA-back loans, received a commission from Williams Vending Company. (See, e.g., INT_00000116.) Additional company expenses paid with loan proceeds included, for example, loan payments (WF_00000736-737) and origination costs paid to HFC/Beneficial (WF_00000783), additional products (WF_00000787), and running costs such as employee compensation and service vehicle maintenance and repair. These additional expenses amount to tens of thousands of dollars, more than this "working capital" amount.

### 6. Additional Investigation

Although a review of the government's evidence brings Mr. Williams' intended loss below the $1,500,000 threshold for a 16-level enhancement under §2B1.1, additional investigation establishes that even more loan proceeds were used for legitimate business purposes, reducing the provable intended loss. Despite the passing of time and transferring of interests, two additional creditors of Williams Vending Company spoke with counsel and each of them confirmed receipt of payments from Williams Vending Company immediately after the loans were funded.[2]

#### a. First Federal Leasing

On July 13, 2017, First Federal Leasing – a creditor of $33,967.80 – provided documentation that Williams Vending Company settled its debt with First Federal Leasing. (See attached Exhibit A.) Via Bank of the West check #6751, on or about February 17, 2008, Williams Vending Company paid First Federal Leasing $30,000. To reflect this settlement, First Federal Leasing completed a 1099-C form cancelling the remaining $3,967.80 debt. (See also BOW_00000027, discovery records produced by Bank of the West.)

#### b. Financial Pacific Leasing

During a July 5, 2017 telephone call with Financial Pacific Leasing – a creditor of $22,523.00 – counsel learned that Williams Vending Company's account was closed in 2008.

---

[2] At least one creditor agreed to provide supporting documentation only after receipt of a notarized release. Counsel attempted to visit Mr. Williams with a notary present on June 23, 2017, and was told that special permission must be sought for a non-lawyer to visit. When such permission had not yet been granted, on July 28, 2017 counsel arranged for an attorney-notary to obtain these releases. Due to this delay, these supporting documents are not yet available, but will be submitted when received at or before the sentencing hearing.

Financial Pacific Leasing has been provided with the written authorization they requested to produce records from Williams Vending's account, but as of this filing such records have not been received. If they are produced, these records will be submitted to the Court at sentencing.

| Intended Recipient | Loan Amount | Purpose | Amount Paid to Creditor |
|---|---|---|---|
| First Federal Leasing | $33,967.80 | Debt payoff. | $30,000; *See* Exhibit A. |
| Financial Pacific Leasing | $22,523.00 | Debt payoff. | Awaiting documentation from creditor. |
| **ADDITIONAL AMOUNTS PAID** | | | **TBD** |

In summary, hundreds of thousands of dollars from this initial loan were used to support the family business rather than being diverted for personal use by Mr. Williams.

| Intended Recipient | Loan Amount | Purpose | Amount Paid to Creditor |
|---|---|---|---|
| Pentech Financial Service | $51,379.80 | Debt payoff. | Settled for payment of $42,000; *See* INT_00000004 |
| Net Bank Business Finance | $44,074.67 | Debt payoff. | Settled for payment of $42,869.54; *See* INT_00000154. |
| Puget Sound Leasing | $37,273.60 | Debt payoff. | Settled for payment of $31,500; *See* INT_00000019. |
| Ross Vending | $337,100.00 | Equipment purchase. | Estimate of Amount Paid: $290,000. |
| Ross Vending | $40,000 | Equipment purchase. | See above. |
| Williams Vending Co. | $32,279.76 | Working capital. | Properly spent at least this amount. |
| **EST. TOTAL PAID** | | | **$406,369.54** |

The available evidence establishes *that over $400,000 of the $787,000 loan was used for intended purposes*, either to pay off creditors, purchase equipment, as working capital for Williams Vending Company, or to pay the broker who arranged this loan. A full accounting of funds used for business purposes is not available as the discovery records shows that many cash payments were made. It is clear, however, that hundreds of thousands of dollars of loan

11

proceeds were used in an effort to support Mr. Williams' family business. As such, the government cannot prove by a preponderance of the evidence that Mr. Williams intended the full amount of the unfunded $550,000 loan to be lost.

### Proceeds from the $300,000 + $60,000 Loans Funded in May/June 2008

Besides the $787,000 loan funded in January 2008, WebBank funded a second loan to Williams Vending Company later that year. In May, the loan provided Williams Vending Company with approximately $300,000 (minus related costs and fees), and in June 2008 a second check was issued by WebBank (to both Specialty Trux, LLC and Williams Vending Company) for $58,650 on the $60,000 loan. (See WF_0000565.) These funds were provided to purchase additional equipment and operating capital for Williams Vending Company. The great bulk of these loan proceeds were used to operate Williams Vending.

## I.     The Government's Investigation

### a.   The $300,00 Loan

Mr. Williams invested most of the loan proceeds in the continued operation of Williams Vending Company. These checks provided by the government in discovery illustrate the point

| Date | Vendor | Amount | Discovery Ref. |
|------|--------|--------|----------------|
| May 12, 2008 | Michael Bloom Realty ("May Rent") | $3,200.00 | WF_00000801 |
| May 12, 2008 | HFC ("Payoff Acct") | $13,997.82 | WF_00000786 |
| May 28, 2008 | Coca-Cola ("Beverages") | $5,406.96 | WF_00000747 |
| May 28, 2018 | Coca-Cola ("Beverages") | $9,812.40 | WF_00000748 |
| May 28, 2008 | Murray Motors ("Service...") | $4,303.47 | WF_00000738 |
| May 29, 2008 | Seven Up ("Beverages") | $15,379.50 | WF_00000780 |
| July 1, 2008 | Ross Vending | $33,000.00 | WF_00000791 |

Case No. 1:15-cr-00395-REB   Document 173-1   filed 09/09/19   USDC Colorado   pg 195 of
Case 1:15-cr-00395-REB   Document 158   Filed 09/03/17   Page 13 of 21
271

| July 9, 2008 | Jim Moldane ("Services") | $15,640.00 | WF_00000730 |
| July 10, 2008 | Vendors Exchange ("Beverage machines 16 complete units") | $8,000.00 | WF_00000794 |
| July 10, 2008 | Michael Bloom Realty | $3,200.00 | WF_00000729 |
| July 11, 2008 | Chase Automotive Repair | $2,226.24 | WF_00000803 |
| July 31, 2008 | Michael Bloom Realty | $6,000.00 | WF_00000721 |
| August 6, 2008 | Coca-Cola ("Beverages") | $13,888.32 | WF_00000753 |
| August 6, 2008 | Coca-Cola ("Beverages") | $6,385.20 | WF_00000752 |
| October 20, 2008 | Gateway Industrial ("Lease Deposit") | $11,716.66 | WF_00000792 |
| October 29, 2008 | Seven Up | $25,650.00 | WF_00000802 |
| | **TOTAL** | $177,806.57 | |

Again, because many company expenses were paid in cash transactions, a to-the-dollar accounting of loan proceeds used for legitimate business purposes is not available, but even the available discovery record shows that most of these loan proceeds were properly used.

**b.      The $60,000 Loan**

As to the Specialty Trux obligation, Mr. Williams deposited the loan proceeds of $58,650 directly into a Williams Vending account (*see* WF_0000564).  But Mr. Williams subsequently made three significant payments to Specialty Trux, a service vehicle modification business catering to the vending and snack food industry, totaling $51,515.00.  After payment of loan origination and related expenses, nearly all of the proceeds of this loan was used for its intended purpose.

| Date | Vendor | Amount | Discovery Ref. |
|---|---|---|---|
| June 18, 2008 | Specialty Trux, LLC | $20,000.00 | WF_0000539 |
| July 15, 2008 | Specialty Trux, LLC ("2006 Isuzu Truck Deposit") | $8,000.00 | WF_00000784 |
| Sept. 10, 2008 | Specialty Trux, LLC ("2005 Isuzu NPR Vehicle") | $23,515.00 | WF_00000788 |
| | **TOTAL** | $51,515.00 | |

13

## II.      Calculations

The available evidence shows that Mr. Williams used most of these loan proceeds, totaling hundreds of thousands of dollars, to support his family's business; it cannot be established by a preponderance of the evidence, as the government and Probation claim, that Williams intended to cause a loss in the full amount ($550,000) of the loan he sought but did not receive.  Presumably, these funds would also have been used in substantial part to support the legitimate business of Williams Vending.  But even if it is assumed that the same portion of the unfunded $550,000 loan would be used for non-business purposes, Mr. Williams' intended loss amount is *dramatically below* U.S.S.G. § 2B1.1(b)(1)(I)'s $1,500,000 floor supporting a 16-level enhancement, and a 14-level enhancement should be applied instead.

### CONCLUSIONS ON GUIDELINE LOSS AND ALTERNATIVE REQUEST FOR DOWNWARD DEPARTURE

Mr. Williams has demonstrated by a preponderance of the evidence that the intended loss amount does not exceed $1,500,000.  *See U.S. v. Washington*, 11 F.3d 1510 (10th Cir. 1993), *citing McMillan v. Pennsylvania*, 477 U.S. 79, 91082 (1986) (holding that due process does not require that sentencing factors be proved by more than a preponderance of the evidence)*;* and U.S.S.G. § 6A1.3, comment.  Mr. Williams' objection to the total offense level based upon the § 2B1.1 loss guideline should be sustained.  Mr. Williams' total offense level should be enhanced 14 levels, not 16 as previously calculated, resulting in a total offense level of 18.

Even if the Court discounts this evidence, overrules his objection, and finds that the total offense level should be calculated based upon a guideline loss amount exceeding $1,500,000, the loss amount determined by Probation falls just inside the bottom end amount meriting a 16-level enhancement.  *See* U.S.S.G. §2B1.1(b)(1)(I).  Application Note 20(C) to § 2B1.1 states that:

Case No. 1:15-cr-00395-REB   Document 173-1   Filed 09/09/19   USDC Colorado   pg 197 of
271
Case 1:15-cr-00395-REB   Document 158   Filed 09/03/19   Page 19 of 21

There may be cases in which the offense level determined under this guideline
substantially overstates the seriousness of the offense. In such cases, a downward
departure may be warranted.

U.S.S.G. §2B1.1 at n. 20(C). Here, Mr. Williams' offense is equated with that of a defendant

who intended a loss of as much as $3,499,999 and personally absconded with those funds. Here

the actual loss is only $1.1 million, and the great bulks of loan proceeds were used for legitimate

business purposes. Because the guidelines overstate the seriousness of this offense, Mr.

Williams should receive a two-level downward departure to an offense level of 18, even if the

Court finds that the guideline loss exceeds $1,500,000.

## APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS
## AND A SENTENCING VARIANCE

Mr. Williams proposes a sentence of 57 months, which is the bottom of the guideline

range, assuming (without accepting) an offense level of 18 and a criminal history category of VI.

### Age and Medical Condition

If the Court finds that Mr. William's guideline range was appropriately calculated by

Probation, and that a downward departure is not appropriate based on Application Note 20

above, the statutory sentencing factors still favor a variance from a guideline range sentence. *See*

*United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007) (en banc), *overruled on other*

*grounds by Irizarry v. United States*, 553 U.S. 708 (2008). Mr. Williams' advanced age and his

low risk of recidivism upon release mean that a guidelines-range sentence in this case would

disproportionately affect the Defendant and provide greater punishment than necessary.

Under 18 U.S.C. § 3553(a), a sentencing court must consider, among other factors,

(1) the nature and circumstances of the offense and the history and characteristics of the
defendant;

(2) the need for the sentence imposed;

    (C) to protect the public from further crimes of the defendant;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct;

18 U.S.C. § 3553(a).

Mr. Williams is a 54-year-old man detained for the past 16 months pending the resolution of this case. During that time, Mr. Williams' health as gone from bad to worse, as a pre-existing hernia will require corrective surgical care and an arthritic knee, the result of a basketball injury during college, will need replacement. Unlike a younger offender, Mr. Williams is not well equipped for a lengthy stay in federal prison. And despite his criminal history, the longest actual sentence that Mr. Williams has served, to date, has been only approximately 48 months. Mr. Williams probably will not be released from federal custody before his 60th birthday, and – given his pending state cases – his release will likely be delayed even further.

### Comment on Criminal History

In Defendant's Response to the Presentence Report (Docket No. 55), Mr. Williams challenged a total of 5 points assigned to him by Probation in calculating a criminal history category of VI, and asked to review Probation's supporting documents. Probation has declined to provide counsel with those documents, agreeing instead to provide those documents when Probation submits its Addendum to the PSR on or about August 8, 2017. Mr. Williams will address Probation's response when it is available. Until that time, Mr. Williams assumes, but does not accept, that his criminal history category is VI.

Mr. Williams acknowledges that he has a significant criminal history. But there are, however, important mitigating facts about this criminal history.

16

First, although Mr. Williams has a significant criminal history, little of that criminal history is recent. The current offense occurred over ten years ago, and his last conviction or arrest, prior to his current incarceration, occurred five years prior to his arrest in this case in March of 2016.

Second, Mr. Williams' criminal history includes few offenses relating to personal violence, and nothing of that kind in recent years. The only related event in the past two decades is a municipal harassment charge reported at paragraph 81 of the PSR. Mr. Williams does not agree this event involved actual violence. Mr. Williams has no criminal history relating to weapons or a drug history.

Third, despite his criminal history, Mr. Williams' age makes him a lower risk of recidivism than a younger defendant. As a U.S. Bureau of Prisons report cited by then Judge Gorsuch concludes, recidivism rates are "inversely related to age at release." *United States v. Smith*, 756 F.3d 1179, 1183. This should bear upon the Court's determination of whether "still more incarceration is necessary to protect the public." *Dean v. United States*, 137 S.Ct. 1170, 1176 (2017) (citing a defendant's prospective release from incarceration after his fiftieth birthday as evidence that the public was adequately protected).

While his age and medical condition do not mitigate Mr. Williams' offense conduct, these circumstances suggest that incarceration will be a harsher punishment for Mr. Williams than for other defendants. Given his age and deteriorating health, any term of imprisonment will constitute a larger portion of his remaining natural life than that of a younger defendant.

17

### Sentencing Recommendation

Mr. Williams objects to the PSR's recommendation he be sentenced to 87 months, which is the top end of the guideline range calculated by Probation.

Because the guideline loss is less than $1,500,000, the proper total offense level is 18 rather than 20. Assuming a Criminal History Level VI, the proper guideline range is 57-71 months. A maximum guideline sentence would be 71 months, not the 87 months recommended by Probation. Considering all relevant factors, a sentence at the bottom of this guideline range, 57 months, will meet the requirements of 18 U.S.C. 3553.

Even if the Court finds that the proper offense level is 20, Probation's recommended sentence of 87 months substantially exceeds the sentence necessary to meet the requirements of 18 U.S.C. 3553.

The guidelines add two additional points to the offense level for a guideline loss exceeding $1,500,000 but less than $3,500,000 pursuant to § 2.B1.1(b)(1)(I). Even if the guideline loss is as Probation calculates ($1,696,828.28), this loss is at the very bottom of this category of guideline loss and does not justify a sentence at the top of the resulting guideline range.

Although Mr. Williams' offense is serious, it is mitigated by the fact that these loans were obtained in large part in a failed effort to fund a long-existing family business. This is not a more aggravated case than where loan proceeds were effectively stolen for personal use via a non-existing entity, or where the defendant concealed his identity for this purpose. Mr. Williams' involvement in the loan process was no secret. (See paragraphs 19 and 20 of the PSR.) And Mr. Williams remained active at Williams Vending and communicated with the

18

lender after the loans were made.  Again, a sentence at the maximum of the guideline range is
not justified by these circumstances. See 18 U.S.C. 3553 (a)(1).

Mr. Williams is a 54-year old with significant health issues, and even if sentenced to 57
months, he will be approximately 60 years old when he completes this sentence and at least 65
years old when he completes supervision.  At his age, and particularly given the Supervised
Release served after his incarceration, he is a modest risk to reoffend.  A sentence at the
maximum of the guideline range is not justified by the risk of future offenses.  See 18 U.S.C
3553 (a) (1)(C).

Mr. Williams has a significant criminal history, but that history is more than adequately
reflected by calculating his guideline range using criminal category VI.  This criminal history,
particularly in recent decades, reveals no propensity for violence, includes no weapons or drug
offenses, and he was not arrested on any new offenses for nearly five years prior to his arrest for
the current offense.  A sentence at the maximum of the guideline range is not justified by this
criminal history.

### Conclusion

A sentence at the bottom of the guideline range, or below, is adequate to meet the
requirements of 18 U.S.C. 3353.  This should be a sentence of no more than 57 months, given an
appropriate total offense level of 18.  If the Court declines a downward departure or variance and
applies an offense level of 20 and a criminal history category VI, Mr. Williams should be
sentenced at the bottom of that guideline range, which is no more than 71 months.

19

As noted in this Memorandum, certain information relevant to sentencing is not now available.  For this and other reasons, Mr. Williams intends to seek a continuance to assure that this information is available at sentencing.

Respectfully submitted this 3rd day of August, 2017.

*/s/ Michael J. Gallagher*
Michael J. Gallagher
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado 80202
Telephone:  (303) 892-9400
Email:  Mike.Gallagher@dgslaw.com

Attorney for Defendant Alan Alonzo Williams

20

**Certificate of Service**

I certify that on August 3, 2017, I electronically filed the foregoing **DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Kathrine M. Aragon*
Kathrine M. Aragon

Case 1:15-cr-00395-REB   Document 58-1   Filed 06/03/17   Page 1 of 2

# EXHIBIT A

☐ CORRECTED (if checked)

| CREDITOR'S name, street address, city, state, and ZIP code | | OMB No. 1545-1424 | Cancellation of Debt |
|---|---|---|---|
| First Bank Richmond DBA:<br>First Federal Leasing<br>31 N. 9th Street<br>Richmond, IN 47374 | | **2008**<br>Form **1099-C** | |

| CREDITOR'S federal identification number | DEBTOR'S identification number | 1 Date canceled | 2 Amount of debt canceled | **Copy B** |
|---|---|---|---|---|
| 35 0309830 | 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 | 02-08 | $ 3967.80 | **For Debtor** |

| DEBTOR'S name | 3 Interest if included in box 2 | 4 | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
|---|---|---|---|
| Alan Williams | $ | | |

| Street address (including apt. no.) | 5 Debt description | |
|---|---|---|
| 384 South Ironton Street #404 | | |

City, state, and ZIP code
Aurora,, CO 80012

| Account number (see instructions) | 6 Bankruptcy (if checked) | 7 Fair market value of property |
|---|---|---|
| 81848 | ☐ | $ |

Form **1099-C**   (keep for your records)   Department of the Treasury - Internal Revenue Service

---

Williams Vending Co Inc
(303) 360-7898
2200 Chambers Rd
Aurora, CO 80011

6751
82-0214/1070

2/7/08 (date)

Pay to the Order of First Federal Leasing  $ 30,000.00

Thirty Thousand and ... Dollars

Denver-South Office
2050 S DOWNING ST
DENVER, CO 80210-4127
1-800-488-2265

BANK OF THE WEST

For E-RB #81848-1  Carin E Vecchiarelli

⑈1070021171⑈ 488004161⑈ 06751

Case No. 1:15-cr-00395-REB   Document 173   filed 09/10/19   USDC Colorado   pg 206 of
271
Case 1:15-cr-00395-REB   Document 55   Filed 08/04/17   Page 1 of 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

   Plaintiff,

v.

1.   ALAN ALONZO WILLIAMS,

   Defendant.

---

## DEFENDANT'S THIRD UNOPPOSED MOTION TO CONTINUE
## SENTENCING HEARING

---

Defendant Alan Alonzo Williams ("Defendant") requests that sentencing in this matter, currently scheduled for August 17, 2017, at 10:00 A.M., be continued approximately 90 days until on or after November 17, 2017.  In support of this Motion ("Motion"), Defendant states as follows:

1.   Defendant has been in federal custody since his arrest in this case on March 18, 2016.

2.   On January 12, 2017, Defendant pled guilty pursuant to a plea agreement with the United States.  On that date, the Court set Defendant's sentencing hearing for April 6, 2017, at 10:00 A.M.

3.   On March 6, 2017, the Court granted Defendant's Unopposed Motion to Continue Sentencing Hearing, resetting sentencing in this matter until July 6, 2017, at 10:00 AM.  Defendant requested this continuance principally to address a long-standing health issue for which he

understood he was to receive surgical care.  On June 16, 2017, the Court granted Defendant's Second Motion to Continue Sentencing, setting the current date of August 17, 2017, at 10:00 am. This Motion is Defendant's third request to continue his sentencing hearing.

**Medical Treatment Issues**

4.       The prior continuances were sought because Mr. Williams advises that a sentencing date within approximately 90 days would interfere with the scheduling of hernia surgery and other medical treatment he expects to soon obtain.  For reasons unknown to Mr. Williams, his hernia surgery has not yet occurred.  He has been advised that abnormal liver test results during his pre-operation work up may explain the delay.  Mr. Williams advises that, apparently for security reasons, he is not advised in advance of when he will be taken for surgery and other treatment. The principal reason for this request for a ninety-day continuance is to assure that a scheduled sentencing does not interfere with his medical treatment for which he has been waiting for months.

**Cognitive Training Therapy**

5.       Mr. Williams advises that, approximately one week ago, he began a Cognitive Behavior Modification Program that will last for six weeks.  He desires to complete that class and report on his progress before sentencing.

**Sentencing Information and Records**

6.       Mr. Williams requested a continuance of sentencing until August 17, 2017, in part to seek records in further support of his sentencing position.  Promptly after that continuance was granted, counsel prepared releases to be signed by Mr. Williams and notarized to obtain additional supporting records.  After attempting to have a notary present during a meeting with Mr. Williams on June 23, 2017, the Federal Detention Center ("FDC") required a written request to permit a

notary to meet with Mr. Williams, and counsel subsequently submitted that request. The request has not yet been granted by the FDC. Last week, counsel identified a lawyer who was also a notary, took this additional lawyer to meet with Mr. Williams, and obtained these releases. These releases were promptly provided to Wells Fargo Bank and a prior creditor of Williams Vending Company, the borrower involved in this case. As noted in both the comments to the Presentence Investigation Report ("PSR") and Sentencing Memorandum, Mr. Williams believes that additional records may exist showing his use of loan proceeds to further his family's business, Williams Vending Company. As of the submission of this request, these requested documents have not been provided under these releases, despite prompting by counsel.

7.      Counsel for Mr. Williams has already submitted comments on the PSR and his Sentencing Memorandum. A continuance is necessary so that the additional information sought with these releases is available at sentencing.

**Position of Government**

8.      On August 4, 2017, counsel for Mr. Williams conferred with AUSA Julia Martinez about this request. The government does not oppose this request on the condition that no further continuances of sentencing be permitted.

**Conclusion and Further Statement of Grounds**

Defendant recognizes that he has requested a significant delay of his sentencing. However, this delay will not prejudice the government, and is necessary to ensure that his medical treatment will not be delayed by a sentencing date in the near term. At a minimum, a continuance of approximately thirty (30) days is requested to permit the Defendant to obtain the

additional sentencing information not now available because of the FDC's delay in permitting a notary to meet with MR. Williams.

Mr. Williams requests a continuance of ninety days, or such other time as the Court deems appropriate. As noted, the government does not oppose this request so long as it is the final continuance of sentencing.

Respectfully submitted this 4th day of August, 2017.

_/s/ Michael J. Gallagher_
MICHAEL J. GALLAGHER
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado 80202
Telephone: 303-892-9400
Email: Mike.Gallagher@dgslaw.com

Attorney for Defendant Alan Alonzo Williams

Case No. 1:15-cr-00395-REB Document 173-1 filed 09/10/19 USDC Colorado pg 210 of
271
Case 1:15-cr-00395-REB Document 55 Filed 08/04/17 Page 9 of 9

**Certificate of Service**

I certify that on August 4, 2017, I electronically filed the foregoing **Defendant's Third Unopposed Motion to Continue Sentencing Hearing** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Kathrine M. Aragon*
Kathrine M. Aragon

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## [PROPOSED] ORDER

---

Having considered Defendant's Third Unopposed Motion to Continue Sentencing Hearing ("Motion") and the government's restricted consent conditioned on this being the final continuance of sentencing, the Court finds that the Motion should be GRANTED. As such, the Sentencing Hearing in this matter is continued for the final time and hereby reset to _____.

So ORDERED this _____ day of August, 2017.

_____
HON. ROBERT E. BLACKBURN
Senior United States District Judge for the
District of Colorado

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00395-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  Alan Alonzo Williams,

    Defendant.

_____

## ENTRY OF APPEARANCE OF COUNSEL
_____

To:      The clerk of court and all parties of record

        I hereby certify that I am a member in good standing of the bar of this court, and I

appear in this case as counsel for:

        the Government

    DATED at Denver, Colorado this 26th day of October, 2017.

                    Rebecca S. Weber
                    Name of Attorney

                    United States Attorney's Office
                    Firm Name

                    1801 California Street, Suite 1600
                    Office Address

                    Denver, CO, 80202
                    City, State, ZIP Code

                    303-454-0100
                    Telephone Number

                    Rebecca.Weber@usdoj.gov
                    Primary CM/ECF E-mail Address

Respectfully submitted this 26th day of October, 2017.

ROBERT C. TROYER
Acting United States Attorney

By:  *s/ Rebecca S. Weber*
REBECCA S. WEBER
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street
Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100
Fax: (303) 454-0401
E-mail: Rebecca.Weber@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No.  15-cr-00395-REB

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**

**1. ALAN ALONZO WILLIAMS,**

        **Defendant.**

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING STATEMENT**

---

The United States of America respectfully submits the following response to Defendant's Sentencing Memorandum and Motion for Downward Departure and Variance (No. 58).  The government opposes the defendant's motions and requests a mid-range sentence, based on a guidelines range of 70-87 months.  Probation requests a sentence of 87 months.  The defendant requests a sentence of 57 months.

        *A.  Nature and Circumstances of the Offense*

The defendant pled guilty to bank fraud.  The facts of the offense are laid out in detail in the Plea Agreement (No. 44), but some highlights are included here.  Between 2006 and 2008, the defendant obtained $1,160,000 in loans and attempted to obtain another $550,000 loan for himself and a business called Williams Vending Company (WVC).  Because the defendant was a felon and a parolee, he would not qualify for the loans.  He therefore exploited an acquaintance's drug addiction in order to use her identity to obtain loans fraudulently.  The defendant acquired the loans by making numerous lies. For example, he listed Ms. X as the 100% owner and president of WVC, even though the

1

defendant controlled the finances and operations of WVC and he and his family members owned the company.  He gave Ms. X sole signature authority over three bank accounts, but he maintained control over these accounts.  He told the Small Business Administration that she was the loan applicant and would serve as the personal guarantor.  He explained that her minority status would allow government agencies to fulfill a portion of their minority contracting requirements by awarding contracts to WVC.  The defendant provided false documentation showing that he had vending agreements with Peterson Air Force Base and Carmel Property Management, when in fact no such agreements existed.  The defendant used a portion of the loan proceeds for personal purposes, including buying two new Mercedes Benz cars.

As part of the fraud, the defendant had Ms. X sign a contract to purchase a residence in Denver.  He then arranged for her obtain a $900,000 loan for the house.  The defendant caused Ms. X to present all sorts of false information to the lender in order to acquire this loan.  Ms. X never resided in the house, but the defendant used the house to make it appear to WebBank that Ms. X had substantial assets.

With respect to the $550,000 loan that the defendant attempted to obtain, he falsely represented that Ms. X was the president and owner of WVC and he said that the funds were needed to purchase equipment for a contract WVC had entered into with the City and County of Denver.  In fact, no such agreement existed.  He also made it appear that WVC's liabilities had decreased significantly by producing a promissory note to Ms. X for approximately $200,000.  The defendant did not intend to pay Ms. X the $200,000 as represented.

I.     Loss Calculations

The nature of the offense is relevant in determining the applicable guidelines

2

range. According to the government's calculations, the defendant faces a guidelines
range of 70-87 months, based on a total offense level of 20 and a criminal history category
VI. The offense level is calculated from a base offense of 7 (§2B1.1(a)(1)) and specific
offense characteristic of 16 additional levels for the amount of the loss exceeding $1.5
million. (§2B1.1(b)(1)(I)). Loss is defined as the greater of actual loss or intended loss.
*See* §2B1.1 app. n. 3(A). "Intended loss" means "pecuniary harm that the defendant
purposely sought to inflict." *Id.; see United States v. Manatau*, 647 F.3d 1048, 1050 (10th
Cir. 2011). "The Court need only make a reasonable estimate of the loss." § 2B1.1 app.
n. 3(C).

The defendant argues that he should receive only 14 additional levels under
§2B1.1(b)(1)(H) for a total loss amount of more than $550,000 and up to $1.5 million. He
has not challenged the Presentence Investigation Report's conclusion that the remaining
balance on the loans he received from WebBank ($787.574.58 on an $800,000 loan from
2007 and $359,253.70 on a $360,000 loan in 2008) constitute actual loss (for a total of
$1,146,828.28). (No. 55 at 5). But, he argues, the full amount of a $550,000 loan the
defendant attempted to obtain from WebBank should not count towards "intended loss"
for sentencing purposes, because the defendant would have used some portion of the
$550,000 loan for the continued operation of his family business.

Actual loss here should be calculated by subtracting from the loan amount any
payments the bank received and what collateral they could seize in order to offset the
loss. *See* §2B1.1 app. n. 3(E)(ii). Although the defendant made payments to creditors of
his business using a portion of the $1.16 million in funded loans, those payments did not
result in a higher recoupment of collateral when the business went into receivership. After
liquidation, the collateral was worth only approximately $30,000, and that money went to

3

Case No. 1:15-cr-00395-REB   Document 177   Filed 09/10/19   USDC Colorado   pg 217 of
271
Case 1:15-cr-00395-REB   Document 67   Filed 11/02/17   Page 4 of 8

Chase Bank, which had priority over WebBank. To argue, then, that successfully acquiring the $550,000 loan would have facilitated a more lucrative dissolution of assets when the company went into receivership, thus resulting in more collateral to offset the loss amount, is highly speculative.

At the end of the day, after the company had been through receivership, the actual loss to WebBank was the balance on the $1.16 million in loans, which was $1,146,828.28. It is reasonable, therefore, to infer that the defendant purposely sought to inflict a proportional amount of damage had he successfully acquired the $550,000 loan. For the $800,000 loan, the defendant had reduced the principal balance by only $12,425.42, a reduction of approximately 1.6%. For the $360,000 loan, the defendant had reduced the principal balance by $746.30, a reduction of approximately 0.22%. The natural and probable consequences of obtaining this third loan would likely have been the same – that very little of the principal would be repaid. *See United States v. Alli*, 444 F.3d 34, 39 (1st Cir. 2006) (calculating intended loss as stolen credit cards' aggregate credit limit because "[i]t was naturally and probably to be expected" that defendant's contacts who purchased stolen cards would charge as much as possible). *See, e.g.*, *United States v. Iwuala*, 789 F.3d 1, 13-14 (1st Cir. 2015) (calculating intended loss as amount defendant fraudulently billed Medicare, not the amount Medicare actually paid him); *United States v. McCoy*, 508 F.3d 74, 79 (1st Cir. 2007) (in mortgage fraud scheme, intended loss was "the value of the loans less the expected value of the properties" at the time of the fraud, even where victim banks recouped more money from later sale of properties).

Finally, to the extent the defendant is arguing that loan proceeds used legitimately should not count towards the loss calculation, regardless of whether the loans were acquired through fraudulent means, he has not produced any case law to support that

Case No. 1:15-cr-00395-REB Document 71 filed 09/10/19 USDC Colorado pg 218 of
271
Case 1:19-cr-00395-REB Document 67 Filed 11/02/17 Page 9 of 18

position.  The test, rather, is the loss the defendant intended to inflict, which we can infer

from the defendant's actions with respect to the funded loans, which he obtained using

the same fraudulent means that he used in his attempt to obtain the $550,000 loan.  *See*

*United States v. Johnson*, 16 F.3d 166, 173 (7th Cir. 1994) (intended loss calculated as

full value of loan acquired through fraud and misrepresentation, even though no actual

loss suffered); *see also United States v. Banta*, 127 F.3d 982, 983-84 (10th Cir. 1997)

(defendant liable for full value of car loans acquired through fraudulent means, even

where cars were repossessed and resold, because defendant "could have inflicted a loss

in the amount of the face value of the loans if he intended to permanently deprive the

bank of the collateral by concealing the vehicles").

        For these reasons, the government agrees with Probation that the full amount of

the $550,000 unfunded loan should be included as "intended loss," thereby resulting in a

total offense level of 20.

### B.  History and Characteristics of the Defendant

        The defendant's criminal history includes 15 felony convictions in 12 different state

matters.   Those convictions include, for example: Robbery and Forgery at age 19.

Presentence Investigation Report ("PSIR") ¶¶ 60, 61. Theft, Second Degree Forgery, and

Harassing Communication at age 20.  PSIR ¶¶ 62-64.  False Reporting at age 26.  PSIR

¶ 69.  Criminal Attempt to Commit Third Degree Burglary at age 28 and again at age 31.

PSIR ¶¶ 70, 74.  Third Degree Forgery, Theft, and False Reporting at age 29.  PSIR ¶¶

71-73.  Theft (more than $400 to less than $15,000) at age 33, Theft (more than $15,000),

and First Degree Aggravated Car Theft at age 34.  PSIR ¶¶ 76-78.  Attempted Third

Degree Burglary at age 35.  PSIR ¶ 79.  Criminal Attempt to Commit Theft at age 46.

PSIR ¶ 80.  Identity Theft at age 49.  PSIR ¶ 82.

5

The defendant argues that he had not had many recent convictions or arrests prior to his arrest in the instant case in March of 2016.  (No. 58 at 17).  Yet, it is simply not the case that the defendant had "cleaned up his act."  The defendant pled guilty to Criminal Attempt to Commit Theft, a felony, in 2009; to Harassment: Harmful/Painful Offense Conduct in 2011; and to Identity Theft, a felony, in 2011.  PSIR ¶¶ 80-82.  He also faces pending charges for Theft and Forgery in Denver from 2012 and for Forgery and Criminal Impersonation in Broomfield from 2016.  PSIR ¶¶ 87-88.  Between 2011 and 2016, the defendant failed to appear three times, resulting in the issuance of warrants.  PSIR ¶¶ 82, 87.  Moreover, the defendant was committing the instant offense during the brief "break" in convictions between 2006 and 2009.  In sum, there is no indication, based on his criminal history, that the defendant had tried to improve his behavior in a manner that warrants sentence mitigation.

The defendant also argues that few of the convictions relate to personal violence. (No. 55 at 7).  Yet the nature of the instant offense and the defendant's long history of committing thefts and frauds amply demonstrate the danger he poses to the community.

The defendant had a supportive and upper middle-class upbringing.  PSIR ¶ 91. His mother describes him as very intelligent.  PSIR ¶ 91, 93.  Thus, unlike many defendants, desperation and strife did not drive the defendant to commit the many crimes he committed.   For all of these reasons, a mid-range sentence is warranted.

### C.  Other 18 U.S.C. § 3553(a) Factors

As to the goal of achieving rehabilitation, the government agrees with Probation that the defendant could benefit from cognitive behavioral treatment during a period of supervised release. Although deterrence seems unlikely, given the defendant's persistent recidivism, a mid-range sentence is more likely to serve a deterrence function than a

6

lower sentence.  In sum, the government believes that a mid-range sentence is sufficient, but not greater than necessary, to punish the defendant for his conduct in this offense.

Respectfully submitted this 2nd day of November, 2017.

ROBERT C. TROYER
Acting United States Attorney

By:  *s/ Rebecca S. Weber*
REBECCA S. WEBER
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Email: Rebecca.Weber@usdoj.gov
Attorney for the United States

Case No. 1:15-cr-00395-REB Document 173 filed 09/10/19 USDC Colorado pg 221 of
271
Case 1:15-cr-00395-REB Document 67 Filed 11/02/17 Page 8 of 8

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November, 2017, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING STATEMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Michael John Gallagher**
mike.gallagher@dgslaw.com

**Julia Martinez**
julia.martinez@usdoj.gov

**Linda Kaufman**
Linda.Kaufman@usdoj.gov

By: _s/ Rebecca S. Weber_
REBECCA S. WEBER
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Email: Rebecca.Weber@usdoj.gov
Attorney for the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.    ALAN ALONZO WILLIAMS,

     Defendant.

---

## DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

---

     Defendant Williams submits this Supplemental Sentencing Memorandum to address (i) additional sentencing information provided in the Addendum to the Presentence Report submitted by Probation and (ii) the Government's Response to Defendant's Sentencing Statement. Mr. Williams also provides additional information relevant to sentencing obtained during the continuance of his sentencing date.

     Sentencing was continued, in part, to facilitate medical treatment of Mr. Williams' damaged knee and abdominal hernia needing surgical repair. Despite numerous requests for over a year that these medical conditions be addressed while Mr. Williams remains in local custody, and before sentencing, these serious medical conditions remain unaddressed. Mr. Williams reports on these issues and, if necessary, will seek the court's assistance to assure that these medical issues are promptly addressed.

Case 1:15-cr-00395-REB  Document 68  Filed 11/08/17  Page 2 of 8

## Addendum to Presentence Report

**Offense Category and Loss Amount.**  Mr. Williams does not accept Probation's addition of two offense category points based on an intended loss calculation exceeding $1,500,000.  *See* Addendum Objections 1 and 2.

Probation does not dispute the showing made by Mr. Williams in his Objections and Sentencing Memorandum that Mr. Williams used loan proceeds for legitimate business, and that his established personal use of loan proceeds principally concerned the purchase of two personal automobiles.  As discussed in his Sentencing Memorandum, these facts conflict with the assumption that Mr. Williams purposely intended to cause a loss in the full amount of the last loan, which was not funded and caused no actual loss.

Mr. Williams showed in his Sentencing Memorandum that essentially all the proceeds of his last funded loan were used for legitimate business purposes.  *See* Sentencing Memorandum at p. 13.  Probation does not challenge this showing in the Addendum.  Similarly, Mr. Williams showed in his sentencing memorandum that based solely on checks to third parties available in the discovery record at least $177,000 of the second loan funded, with $291,742 and subject to significant additional broker fees, was used for legitimate business.  *See* Sentencing Memorandum at pp. 12 and 13.  Further review of the available record shows tens of thousands of dollars in additional loan proceeds used for legitimate business purposes as shown by checks

to third parties not identified in Mr. Williams' sentencing memorandum.[1]  This excludes other significant transactions with company suppliers, which also occurred, but concerning which records are not available from the involved bank.

To support its position on loss amount, Probation relies on the fact that only a small amount of loan proceeds was repaid.  But, as noted in the Addendum, this small repayment was because Chase Bank had a security interest with priority over WebBank, the lender here, when Williams Vending failed.  Probation provides no evidence that Mr. Williams planned or intended the failure of his family business.

**Criminal History Category.**  As reflected at Objection Nos. 3 and 4 of the Addendum, Mr. Williams objected to Probation's calculation of a criminal history category VI based on the information available to him regarding two alleged prior offenses.  Mr. Williams acknowledges, based on the new information provided by Probation, that his criminal history category is VI.

**Sentencing Recommendation.**  Mr. Williams objects to the 87-month maximum guideline sentence recommended by Probation for the reasons previously stated.  This recommended sentence exceeds the guideline range if the court concludes that the guideline loss is less than $1,500,000, and is unduly harsh if the guideline loss is determined to be just over $1,500,000, as Mr. Williams did not abscond with the proceeds of the funded loans, but rather

---

[1] See attached checks confirming substantial additional payments to business third-parties made with loan proceeds: Gateway Industrial Deposit (10/20/08) $11, 716.66; Snack Truck Purchase (5/20/08) $9,500; Payment to Employee Erickson (5/13/08) $4,648.05; ANB Payroll (5/29/08) $1,700; HSB Account (6/09/08) $800.00; ANB Payroll (8/2/08) $1,515.12; Arapahoe County Clerk (6/25/08) $1,442.15; ANB Payroll (6/30/08) $1,600; Metro Printing (8/06/08) $1,347.85.  Other examples are available in the record.  Some amounts paid in cash to Ross Vending and others cannot be confirmed with available checks, but full payment to Ross Vending is acknowledged by its owner. See Sentencing Statement at pp. 7-9.

3

used them principally to fund a decades-old family business. Mr. Williams appreciates that the government recommends a mid-range guideline sentence, not a maximum guideline sentence.

Probation's sentencing recommendation also fails to address Mr. Williams' age and unaddressed medical conditions that make a lengthy sentence particularly onerous and unfair.

### Government Response to Defendant's Sentencing Statement

**Position on Guideline Loss.** Like Probation, the government does not challenge the showing made by Mr. Williams that loan proceeds were used to operate a long-standing business. Like Probation, the government focuses on the small amount of loan proceeds repaid, in part because of the priority lien held by Chase Bank. Based on these facts, the government argues that Mr. Williams must have purposefully intended to cause a loss over $1,500,000.

The cases cited by the government do not support the position that a defendant like Mr. Williams intended to cause a loss in the amount of all loan proceeds. On some facts, of course, a defendant might intend to abscond with all loan proceeds or otherwise harm the lender in the full amount of loan proceeds. But none of the cases relied on by the government concern the use of loan proceeds in a long-standing family business, the use of the great bulk of loan proceeds to run that business and an actual loss caused by the failure of that business and the existence of a superior lien. Under these circumstances, it is not correct or fair to assume that Mr. Williams intended to cause a loss of all loan proceeds, particularly when even with this assumption the guideline loss is at the very low range of the next guideline loss category.

**Government's Sentencing Position.** For the reasons stated in his Sentencing Memorandum, Mr. Williams seeks a sentence at or near the bottom of the applicable guideline

4

range or below. Although the government does not agree with this recommendation,

Mr. Williams appreciates that the government seeks a sentence in the mid-guideline range rather

than a maximum guideline sentence. The government's sentencing recommendation also fails to

address Mr. Williams' age and unaddressed medical conditions that make a lengthy sentence

particularly onerous and unfair.

### Additional Sentencing Information

Sentencing was continued to permit Mr. Williams to obtain medical care and gather

certain additional information relevant to sentencing. Mr. Williams reports here on these issues.

**Health Issues.** Mr. Williams has a brace for his injured knee, and is using crutches

pending further treatment. He has a hernia requiring surgery, but no surgery has yet occurred.

Currently, he wears a hernia brace.

Mr. Williams has advised Bureau of Prisons (BOP) personnel on numerous occasions of

the need to address his serious medical conditions promptly and before sentencing. This has not

occurred. Most seriously, his abdominal hernia remains unaddressed over a year after that

condition was diagnosed. Available medical records show that this hernia needs a surgical

repair.

Counsel made several telephone calls to the BOP counselor concerning the failure to

address Mr. Williams' medical conditions prior to sentencing. Despite numerous voice mails

requesting a return call, no response was received. Attached as Exhibit B is correspondence sent

to Mr. Williams' BOP counselor emphasizing the need to address his medical conditions prior to

sentencing. No response was received.

Case No. 1:15-cr-00395-RCB   Document 173   Filed 09/10/19   USDC Colorado   pg 227 of
271
Case 1:15-cr-00395-REB   Document 66   Filed 11/08/17   Page 6 of 9

Because no response was received from Mr. Williams' BOP counselor, counsel called

and left messages for BOP medical and medical record personnel asking for information about

when Mr. Williams' medical conditions would be addressed.  At that time, counsel was referred

to an attorney at BOP.  This attorney has assisted counsel to obtain available records.  Counsel

will continue this discussion with BOP and report at sentencing on whether BOP will commit to

provide the necessary medical care promptly.[2]

At the sentencing hearing, Mr. Williams will request that the court take Mr. Williams'

unaddressed medical conditions into account when selecting a sentence, as his unaddressed

medical conditions make incarceration substantially more difficult and punitive.  If BOP does not

commit to address these issues promptly, Mr. Williams will ask for an order directing BOP to

promptly address these medical conditions and report to the court.  *See United States v. Ramirez-

Robles*, No. 06-cr-00485-MSK, 2007 WL 2021852 (D. Colo. July 11, 2007); *United States v.

Bencomo-Chacon*, No. 07-cr-00095-MSK, 2007 WL 2021850, (D. Colo. July 11, 2007).

**Cognitive Behavior Modification Program**.  Mr. Williams successfully completed this

program.  In addition, he completed a "Good Intentions/Bad Choices" program with R. Boyle.

**Additional Bank Records Regarding Use of Proceeds.**  Pursuant to a subpoena,

Wells Fargo produced very limited bank records regarding the activities of Williams Vending.

These records have been shared with the government.  Because of a record retention policy,

---

[2] Mr. William was seen by Dr. Arthur, an orthopedic surgeon, within the last six days.  A medical release was
provided but those records are not available as of the submission of this Supplement.  Mr. Williams understands that
Dr. Tillerson may treat his hernia.  A medical release was provided to Dr. Tillerson, but those records are not yet
available.

6

Wells Fargo could not produce checks showing the use of funds during the relevant period nearly ten years ago, which limits Mr. Williams' ability to confirm additional use of loan proceeds for legitimate business. Mr. Williams should not be prejudiced by the unavailability of these additional records.

During the period of this continuance, counsel provided a power of attorney to Financial Pacific Leasing and requested written confirmation of the oral representation made to counsel that this creditor was paid in full by Mr. Williams. *See* Defendant's Sentencing Statement at pp. 10-11. Despite numerous contacts, this written confirmation was not provided, as these communications were ignored. As noted, however, this fact is not challenged by the government.

Wherefore, Mr. Williams recommends a sentence as described in his Sentencing Memorandum, and requests the court's assistance to assure that his outstanding medical conditions are addressed.

Respectfully submitted this 8th day of November, 2017.

*/s/ Michael J. Gallagher*
MICHAEL J. GALLAGHER
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 892-9400
Mike.Gallagher@dgslaw.com

*Attorney for Defendant Alan Alonzo Williams*

7

**CERTIFICATE OF SERVICE**

I certify that on November 8, 2017, I electronically filed the foregoing DEFENDANT'S

SUPPLEMENTAL SENTENCING MEMORANDUM with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to all counsel of record.


*s/ Lynell E. Buchele*
Lynell E. Buchele

# EXHIBIT A



R/T Number                010200007
Sequence Number    000008842241008
Account Number        3214258109

Processing Date    20081104
Amount                     0001171666
Serial Number         000000000009539

BRMN3271278:Diana Adams - 12645750-3214258

WF_00000792

Case No. 1:15-cr-00395-RBJ   Document 173-168   filed 09/10/19   USDC Colorado   pg 232 of
271
Case 1:15-cr-00395-REB   Document 168   Filed 11/08/17   Page 3 of 10



WILLIAMS VENDING CO INC
OPERATING ACCOUNT
2200 CHAMBERS RD STE F
AURORA, CO 80011-3209

9525
23-7/1020 1021
3214258109

DATE  5/20/08

PAY
TO THE
ORDER OF   Chris Caruso                                    $ 9,500.00

Nine Thousand Five Hundred ___ DOLLARS

Wells Fargo Bank, N.A.
Colorado
wellsfargo.com

FOR _____

⑆0000009525⑆ ⑆102000078⑈ 3214258109⑆

| | | |
|---|---|---|
| R/T Number | 010200007 | |
| Sequence Number | 000007030371720 | |
| Account Number | 3214258109 | |

| | |
|---|---|
| Processing Date | 20080521 |
| Amount | 0000950000 |
| Serial Number | 000000000009525 |

WF_00000779



WILLIAMS VENDING CO INC
OPERATING ACCOUNT
2200 CHAMBERS RD STE F
AURORA, CO 80011-3209

9553

23-7/1020 1021
3214258109

DATE 5/12/08

PAY
TO THE
ORDER OF _Rachel C. Erickson_            $ 4648.05

THE SUM 4648 DOLS 05 CTS            DOLLARS

Wells Fargo Bank, N.A.
Colorado
wellsfargo.com

FOR (Disbursed)

1⁰0000009553⁰ ⑈1020000076⑈ 3214258109⑈

R/T Number            010200007
Sequence Number       000006677875775
Account Number        3214258109

Processing Date       20080513
Amount                0000464805
Serial Number         000000000009553

WF_00000763

WILLIAMS VENDING CO INC
OPERATING ACCOUNT
2200 CHAMBERS RD STE F
AURORA, CO 80011-3209

9558

23-7/1020 1021
3214258109

DATE 5/29/08

PAY
TO THE
ORDER OF _American National Bank_          $ 1,700.00

_One Thousand Seven Hundred_          DOLLARS

WELLS FARGO  Wells Fargo Bank, N.A.
Colorado
wellsfargo.com

FOR #_23474601_

⑈0000009558⑈ ⑆102000076⑆ 3214258109⑈

2660110430 05/29/2008  >107001232<

Credit to the Account of Payee
Endorsement Guaranteed By
American National Bank

| | | | |
|---|---|---|---|
| R/T Number | 010200007 | Processing Date | 20080530 |
| Sequence Number | 000008864372281 | Amount | 0000170000 |
| Account Number | 3214258109 | Serial Number | 000000000009558 |

5/6/10        6:21:56 PM        Page 77 of 82              BRMN3271278:Diana Adams - 12645750-3214258

WF_00000798



For Return Items
▶ 2719-7001-1 ◀
HSBC Bank USA
1301 E. Tower Rd.
Schaumburg, IL
▶ 2719-7001-1 ◀

| R/T Number | 010200007 | Processing Date | 20080609 |
| Sequence Number | 000008868317768 | Amount | 0000080000 |
| Account Number | 3214258109 | Serial Number | 000000000009559 |

WF_00000800



2610090720 8/4/2008  >107001232<

| | |
|---|---|
| R/T Number | 010200007 |
| Sequence Number | 000008842492735 |
| Account Number | 3214258109 |

| | |
|---|---|
| Processing Date | 20080806 |
| Amount | 0000151512 |
| Serial Number | 000000000009562 |





| | |
|---|---|
| R/T Number | 010200007 |
| Sequence Number | 000000477124549 |
| Account Number | 3214258109 |

| | |
|---|---|
| Processing Date | 20080630 |
| Amount | 0000144215 |
| Serial Number | 000000000009576 |

WF_00000725

Case No. 1:15-cr-00395-RBJ  Document 173-16 filed 09/10/19  USDC Colorado  pg 238 of
Case 1:15-cr-00395-RBJ  Document 168  Filed 11/08/17  Page 3 of 10
271



WILLIAMS VENDING CO INC
OPERATING ACCOUNT
2200 CHAMBERS RD STE F
AURORA, CO 80011-3209

9526

23-7/1020 1021
3214258109

DATE 6/30/08

PAY TO THE ORDER OF *Anerican National Del*          $ 1600.00

*One Thousand Six Hundred     Even*          DOLLARS

WELLS FARGO  Wells Fargo Bank, N.A.
Colorado
wellsfargo.com

FOR *Loan # 004704601*

⑈0000009526⑈ ⑈102000076⑈ 3214258109⑈

2670080600 06/30/2008 >107001232<

| R/T Number | 010200007 | Processing Date | 20080701 |
| Sequence Number | 000008832308840 | Amount | 0000160000 |
| Account Number | 3214258109 | Serial Number | 000000000009526 |





| | | |
|---|---|---|
| R/T Number | 010200007 | |
| Sequence Number | 000000574998499 | |
| Account Number | 3214258109 | |

| | |
|---|---|
| Processing Date | 20080808 |
| Amount | 0000134785 |
| Serial Number | 000000000009584 |

WF_00000731

Case 1:15-cr-00395-REB   Document 68-2   Filed 11/08/17   Page 1 of 2

# EXHIBIT B

# DAVIS GRAHAM & STUBBS

Michael J. Gallagher
303 892 7355
mike.gallagher@dgslaw.com

October 23, 2017

<u>Via United States Mail</u>

Counselor Waird
Federal Detention Center
9595 W. Quincy Avenue
Littleton, CO 80123

Re:   Alan Alonzo Williams

Dear Counselor Waird:

I am writing about some health issues with my client Alan Alonzo Williams, who I understand is your client at the Englewood Detention Center.  I have left you voice mails about this issue, but I always missed you and my messages have not been returned.

Mr. Williams has some significant medical issues concerning (i) a seriously injured knee and (ii) a hernia in need of surgical repair.  In part to facilitate prompt local treatment of these problems, we have asked the court to delay his sentencing.  Mr. Williams is now scheduled to be sentenced on November 15, 2017, and the court will not entertain an extension of that date.

It would be best if Mr. Williams' medical issues are addressed before that time.  If this does not occur, it would be helpful for Mr. Williams and me to know when these medical issues will be addressed so that we can advise the court and take steps to assure that Mr. Williams remains available for treatment locally.

Mr. Williams advised me that his health condition is being addressed, in part, by a "Dr. Dryer" who works at the detention center.  I could not locate contact information for this physician.  Please provide this information to her.

Thanks for your attention to this important matter.  It would be best to address these medical issues soon.  In any event, I would appreciate a telephone call or e-mail providing me with whatever information you can.

Sincerely,

Michael J. Gallagher

*Attorney for Alan A. Williams*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     ALAN ALONZO WILLIAMS,

      Defendant.

---

## DEFENDANT'S SUPPLEMENTAL SENTENCING INFORMATION

## REGARDING HEALTH ISSUES

---

Defendant Williams submits the following supplemental sentencing information regarding health issues referenced at page 6 of his Supplemental Sentencing Memorandum.

1.     Exhibit A shows that Mr. Williams requested treatment for a "swollen hernia" in September of 2016.

2.     The documents collected at Exhibit B show that Dr. Tillerson recommended a surgical repair of that hernia in April of 2017, and that recommendation was provided to Bureau of Prisons ("BOP") medical personnel.

3.     The documents gathered at Exhibit C show that although local BOP personnel were aware of Dr. Tillerson's recommendation of a surgical repair, BOP did not authorize repair of Mr. Williams' hernia.  According to these records, and despite Mr. Williams request that this

4409006.1

Case No. 1:15-cr-00895-RCB Document 173-1 filed 00/10/19 USDC Colorado pg 243 of
Case 1:15-cr-00395-RCB Document 65 Filed 11/13/17 Page 2 of 3
271

issue be addressed while he was awaiting sentencing, repair of this hernia was "deferred' by
BOP indefinitely.

4.    Exhibit D shows Mr. Williams' request, through counsel, that BOP commit to
surgical repair of Mr. Williams hernia prior to sentencing so that the court could be advised.
BOP has determined that repairing Mr. Williams' hernia has not risen to the level of "medical
necessity" and will not commit to arrange this surgery.

Respectfully submitted this 13th day of November, 2017.


   */s/ Michael J. Gallagher*
MICHAEL J. GALLAGHER
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 892-9400
Mike.Gallagher@dgslaw.com

*Attorney for Defendant Alan Alonzo Williams*

## CERTIFICATE OF SERVICE

I certify that on November 13, 2017, I electronically filed the foregoing DEFENDANT'S

SUPPLEMENTAL SENTENCING MEMORANDUM with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to all counsel of record.


    _/s/ Patricia Henson_____
    Patricia Henson

# EXHIBIT A

BP-A0148
JUNE 10

INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Medical Department | DATE: 9/26/2016 |
|---|---|
| FROM: Alan A. Williams | REGISTER NO.: 43473-013 |
| WORK ASSIGNMENT: N/A | UNIT: B-22L |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Hello; Due to the medical issues I have concerning my swollen hernia and my severe damaged knee; I'm requesting the use of one plastic chair in order to sit; when I'm experiencing pain. I'm still doing the stretches that the physician stated I should; but I still experience pain when I stand to long. Thank you for your time!

(Do not write below this line)

DISPOSITION:

Please sign up for Sick call for evaluation of Medical issues and possible remedies.

| Signature Staff Member | Date 9/28/16 |
|---|---|

Record Copy - File; Copy - Inmate

PDF                    Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

SECTION 6

# EXHIBIT B

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | WILLIAMS, ALAN ALONZO | | | Reg #: | 43473-013 |
| Date of Birth: | 10/05/1962 | Sex: | M   Race: BLACK | Facility: | ENG |
| Note Date: | 04/20/2017 11:41 | Provider: | Santini, G. MD/CD | Unit: | J06 |

Review Note - Chart Review encounter performed at Health Services.
**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**          **Provider:** Santini, G. MD/CD
RIH, seen on 4/18/17 and recommends repair by General Surgeon.

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| General Surgery | 08/25/2017 | 08/25/2017 | Routine | No | |

    **Subtype:**
        Dr. Tillquest
    **Reason for Request:**
        Surgery-54 y/o male seen on 4/18/17 and recommends repair.
    **Provisional Diagnosis:**
        RIH

**Copay Required:** No          **Cosign Required:** No
**Telephone/Verbal Order:**   No

Completed by Santini, G. MD/CD on 04/20/2017 11:46

Case No. 1:15-cr-00395-REB   Document 172-1   filed 09/10/19   USDC Colorado   pg 249 of
Case 1:15-cr-00395-REB   Document 69-2   Filed 11/13/17   Page 8 of 5
271

| Patient: | 239267 – Alan Williams |
| DOB: | 10/05/1962 |

| Date: | 04/18/2017 13:00 |
| Provider: | Tillquist, Richard L. MD |
| Encounter: | New Patient 30 |

FCI
# 43473-
013
Englewood

## HISTORY OF PRESENT ILLNESS

Mr. Williams is a 54-year-old gentleman who is an inmate. He has progressive enlargement of a right inguinal hernia. It is getting more uncomfortable. He wears a hernia belt all the time. It usually goes back in at night but is getting harder and harder to reduce. It is causing him discomfort. He has no history of incarceration or bowel obstruction.

Patient:      239267 - Alan Williams
DOB:          10/05/1962

Date:         04/18/2017 13:00
Provider:     Tillquist, Richard L. MD
Encounter:    New Patient 30

FCI
# U34735
013
Englewood

Abdomen: Soft, nontender. Bowel sounds are present. No umbilical hernia. Left inguinal hernia is not appreciated. The patient had a left inguinal hernia repaired as an infant. Large partially reducible right inguinal hernia. It is uncomfortable with reduction.

## ASSESSMENT
Large right inguinal hernia.

## PLAN
We will plan for laparoscopic repair when arrangements made.

## REASON FOR VISIT
Referred by G. Thomas Kraus, MD.

## COUNSELING/EDUCATION
• Education and instructions

## CARE TEAM
G Thomas Kraus, M.D.

# Bureau of Prisons
## Health Services
## Cosign/Review

| | | | | |
|---|---|---|---|---|
| Inmate Name: | WILLIAMS, ALAN ALONZO | | Reg #: | 43473-013 |
| Date of Birth: | 10/05/1962 | Sex:     M | Race: | BLACK |
| Scanned Date: | 04/20/2017 08:28 EST | | Facility: | ENG |

**Reviewed with New Encounter Note by Santini, G. MD/CD on 04/20/2017 11:41.**

Case 1:15-cr-00595-REB   Document 69-3   Filed 11/13/17   Page 1 of 4

# EXHIBIT C

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: | WILLIAMS, ALAN ALONZO | | Reg #: | 43473-013 |
| Date of Birth: | 10/05/1962 | Sex: M    Race:  BLACK | Facility: | ENG |
| Encounter Date: | 10/24/2017 15:44 | Provider:  Dyer, Birgit FNP | Unit: | J06 |

Mid Level Provider - Sick Call Note encounter performed at Health Services.

## SUBJECTIVE:

**COMPLAINT  1**          **Provider:** Dyer, Birgit FNP

**Chief Complaint:** Abdominal Pain

**Subjective:** 48 y/o male was seen in response to his sick call request to be seen for c/o stomach pains that he thinks might be related to his hernia

**Pain:** Yes

**Pain Assessment**

| | |
|---|---|
| Date: | 10/24/2017 15:44 |
| Location: | Abdomen - Suprapubic |
| Quality of Pain: | Aching |
| Pain Scale: | 6 |
| Intervention: | surgical consult, hernia belt, activity restrictions |
| Trauma Date/Year: | |
| Injury: | |
| Mechanism: | |
| Onset: | 1-5 Years |
| Duration: | 1-5 Hours |
| Exacerbating Factors: | any activity |
| Relieving Factors: | laying down |
| Comments: | right inguinal hernia |

## OBJECTIVE:

### ROS Comments
Patient denies problems or changes with bowel movements or voiding.
Patient requests new hernia belt size XL stating that the Velcro strip is worn out

### Exam Comments
Deferred - patient was seen by surgeon in April and hernia repair was recommended. Two previous consultations requests were denied at the local level. Will resubmit again to be sent for Regional UR.
Hernia belt in size XL are currently not in stock. Will request to be ordered and provide to patient once it has been received

## ASSESSMENT:

Inguinal hernia, K4090 - Current

## PLAN:

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|

| Inmate Name: | WILLIAMS, ALAN ALONZO | | | Reg #: | 43473-013 |
|---|---|---|---|---|---|
| Date of Birth: | 10/05/1962 | Sex: | M Race: BLACK | Facility: | ENG |
| Encounter Date: | 10/24/2017 15:44 | Provider: | Dyer, Birgit FNP | Unit: | J06 |

General Surgery      11/28/2017    11/28/2017      Routine      No

**Subtype:**

Dr. Tillquest

**Reason for Request:**

55 y/o male was evaluated for right inguinal hernia on 04/18/2017 by Dr. Tillquist, who recommended surgical repair. Patient wears hernia belt all the time, but pain gets progressively worse.

InterQual:
200 It is diagnosed by physical exam.
201 His pain is 6-8/10
222 It interferes with ADLs, exercise and lifting objects. During both activities it herniates and causes pain.
223 It has been monitored

**Provisional Diagnosis:**

Original consultation was approved through regional review.

**Do not deny during local UR and submit request for surgery approval for regional review again**

**Disposition:**

Return Immediately if Condition Worsens
Follow-up at Sick Call as Needed
Follow-up at Chronic Care Clinic as Needed

**Other:**

1. Resubmit consult for hernia repair
2. Continue with activities in accordance with pain level
3. RTC prn

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 10/24/2017 | Counseling | Plan of Care | Dyer, Birgit | Verbalizes Understanding |

**Copay Required:** No      **Cosign Required:** Yes

**Telephone/Verbal Order:** No

Completed by Dyer, Birgit FNP on 10/24/2017 20:12
Requested to be cosigned by Santini, G. MD/CD.
Cosign documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: | WILLIAMS, ALAN ALONZO | | Reg #: | 43473-013 |
| Date of Birth: | 10/05/1962 | Sex: M Race: BLACK | Facility: | ENG |
| Encounter Date: | 09/18/2017 08:21 | Provider: Dyer, Birgit FNP | Unit: | J06 |

Mid Level Provider - Follow up Visit encounter performed at Health Services.

## SUBJECTIVE:

**COMPLAINT 1**     **Provider:** Dyer, Birgit FNP

**Chief Complaint:** Pain
**Subjective:** 54 y/o male was seen in response to his request to get another injection in his knee.
**Pain:** Yes
**Pain Assessment**

| | |
|---|---|
| Date: | 09/18/2017 08:22 |
| Location: | Knee-Right |
| Quality of Pain: | Sharp |
| Pain Scale: | 10 |
| Intervention: | refer to ortho |
| Trauma Date/Year: | |
| Injury: | |
| Mechanism: | |
| Onset: | 1 Month |
| Duration: | 1 Month |
| Exacerbating Factors: | walking, moving |
| Relieving Factors: | knee injection, wearing brace |
| Comments: | |

## OBJECTIVE:

### ROS Comments

Patient also inquired about another consultation request for hernia repair. Prior consults submitted in April and August of this year have been declined stating to defer final approval after patient is designated. Patient claims his next court date is not until November and requests another attempt to request the surgery. Patient was informed that his legal status has not changed and that another consultation request would be futile.

### Exam Comments

Well nourished, well developed, pleasant, cooperative, alert and oriented male in NAD

Musculoskeletal: Patient able to ambulate with crutches; right knee with moderate deformity, but without swelling or effusion at this time; tender to palpation and with movement; decreased ROM due to pain; no crepitus or locking; neurovascular is intact
Peripheral Vascular: Strong equal pulses bilateral; no pitting edema; no lesions, changes in skin color or texture to the lower extremities

### Comments

X-rays from 09/11/2017 show stable radiographic appearance of the right knee compared to prior exam on 05/26/16.

Report findings:
no fracture or malalignment. No joint effusion or radiopaque bodies.
Severe medical compartment joint space narrowing with mild subchondral sclerosis and moderate marginal osteophyte formation. Mild patellofemoral compartment joint space narrowing and moderate marginal osteophyte formation. Lateral compartment joint space is maintained, but there is moderate marginal osteophyte formation of the lateral compartment.

Case No. 1:15-cr-00395-REB   Document 172-1   filed 09/10/19   USDC Colorado   pg 256 of
271
Case 1:15-cr-00595-REB   Document 69-4   Filed 11/13/17   Page 1 of 3

# EXHIBIT D

**From:** Gallagher, Mike
**Sent:** Wednesday, November 08, 2017 9:12 AM
**To:** 'Megan Marlow' <mmarlow@bop.gov>
**Subject:** RE: Alan Williams

Megan,

I left you a voice mail yesterday afternoon on this general subject.  I'll take this opportunity to describe our concerns in more detail for your consideration and, we hope, action.  I appreciate your courtesy in getting information for me, and I trust we can resolve this problem fairly.

I have reviewed the BOP medical records. They show that Mr. Williams complained about a hernia a year ago, that a consulting surgeon determined that a surgical repair was needed no later than April of this year and that BOP has failed to approve that surgery, apparently to wait until he is "designated," which I assume means sent to another facility.  This delay in treating a serious medical issue is not acceptable.   This is particularly so because Mr. Williams has pending state court cases that will keep him in local custody for some time, likely many months.

On his behalf, I request a firm commitment from BOP that he will be scheduled promptly (no more than weeks) for his hernia surgery, and that his serious knee injury also be addressed while he is still at FDC.  I would like to resolve this problem by reporting BOP's commitment to the court at sentencing.  If I cannot, I'll ask the court to review this history of delay and enter appropriate orders.

I look forward to working with you to resolve these issues.

Regards.  MJG

**From:** Gallagher, Mike
**Sent:** Tuesday, November 07, 2017 8:54 AM
**To:** 'Megan Marlow' <mmarlow@bop.gov>
**Subject:** RE: Alan Williams

Great. Thanks for your help.  MJG

**From:** Megan Marlow [mailto:mmarlow@bop.gov]
**Sent:** Tuesday, November 07, 2017 8:47 AM
**To:** Gallagher, Mike <Mike.Gallagher@dgslaw.com>
**Subject:** Re: Alan Williams

Mike:

1

It looks like I was able to get in touch with the right folks over there - you should be able to pick up the records when you are there today.

Best,

Megan


Megan G. Marlow, Senior Attorney
Colorado Consolidated Legal Center
United States Penitentiary, Administrative Maximum
5880 Highway 67 South
P.O. Box 8500
Florence, CO 81226
(719) 784-5215
(719) 784-5285 (fax)



>>> "Gallagher, Mike" <Mike.Gallagher@dgslaw.com> 11/7/2017 8:28 AM >>>
Megan,

Thanks for talking with me this morning. I look forward to receiving Mr. Williams records when that can be arranged.  You can reach me at this e-mail address.

Best.  MJG

**MICHAEL J. GALLAGHER** ▫ **Partner**

P: 303.892.7355 ▫ C: 303.667.4928 ▫ vcard

Davis Graham & Stubbs LLP
1550 17th Street, Suite 500 ▫ Denver, CO 80202

## A **LexMundi** Member

---
This email message (including any attachments), delivered by Davis Graham & Stubbs LLP, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

**1.    ALAN ALONZO WILLIAMS**,

       Defendant.

---

## MOTION TO WITHDRAW

---

Michael J. Gallagher, of the law firm of Davis Graham & Stubbs LLP, respectfully moves to withdraw as counsel for Defendant Alan Alonzo Williams.

The undersigned called Rebecca Weber, the assigned AUSA, to inquire about the Government's position on this motion. Ms. Weber stated that, based on the limited information available to her as of this time, the Government takes no position on this motion. This motion is submitted at the request of Mr. Williams.

### STANDARD OF REVIEW

D.C.COLO.LAttyR 5(b) allows for withdrawal of counsel "on motion showing good cause." "To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir.1987) (internal quotation marks omitted). "Good cause for substitution of counsel consists of more than a mere strategic disagreement

between a defendant and his attorney, rather, there must be a total breakdown in

communications." *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)

(quotation omitted). In considering such a motion, courts look at "(i) whether the

request was timely; (ii) whether the defendant-attorney conflict was so great that it led to

a total lack of communication and prevented the preparation of an adequate defense;

and (iii) whether the defendant was at fault for the conflict." *See Romero v. Furlong*,

215 F.3d 1107, 1113 (10th Cir. 2000).

## ARGUMENT

Defense counsel seeks to withdraw as counsel for Mr. Williams due to the

complete breakdown of communication between counsel and Mr. Williams. *See*

*United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002). This breakdown is due to

more than mere strategic disagreements, but an irreconcilable conflict that has rendered

meaningful communication with Mr. Williams impossible. Communications have been

very strained between counsel and Mr. Williams for many months, and yesterday

Mr. Williams (i) asked counsel to withdraw; (ii) ceased communications with counsel

regarding sentencing; and (iii) stated a desire to withdraw his plea. This situation

presents an irreconcilable conflict between counsel and Mr. Williams, and constitutes

good cause for counsel to withdraw. *See, e.g.*, *United States v. Shelton*, No. 14-10198-

EFM, 2015 WL 7078931, at *2 (D. Kan. Nov. 13, 2015) (noting that previous counsel

had been permitted to withdraw due to client's expression of "dissatisfaction with

[counsel's] position on [defendant's] desire to withdraw his guilty plea").

Due to this inability to communicate, counsel is unable to effectively represent

Mr. Williams at sentencing. It has "become impossible for [counsel] to continue to

provide [Mr. Williams] with effective assistance of counsel in this case."  *See United States v. Ali*, 375 F. Supp. 2d 1289, 1290 (D.N.M. 2005) (granting motion to withdraw).

Defense counsel recognizes that this request to withdraw comes one day before Mr. Williams' sentencing hearing.  However, this total breakdown in communications between defense counsel and Mr. Williams nonetheless merits counsel's withdrawal. *See United States v. Hammons*, No. CR 07-1164 JB, 2010 WL 4928923, at *3 (D.N.M. Oct. 28, 2010) (granting motion to withdraw two days before sentencing where there was a "total breakdown in communication" between attorney and client).

## CONCLUSION

Counsel respectfully requests that he be permitted to withdraw as counsel for Mr. Williams, and that substitute counsel be appointed.

Dated this 14th day of November, 2017.

 */s/ Michael J. Gallagher*
Michael J. Gallagher
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO  80202-1500
Telephone: 303.892.9400
Facsimile:   303.893.1379
Email: mike.gallagher@dgslaw.com

*Attorneys for Defendant
Alan Alonzo Williams*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2017, the foregoing MOTION TO WITHDRAW was electronically filed with the USDC Clerk of the Court and served via the CM/ECF system on the following:

Counsel of Record

*/s/ Lynell E. Buchele*

Case No. 1:15-cr-00395-REB  Document 173-t 1 filed 09/10/19  USDC Colorado  pg 263 of
271
Case 1:15-cr-00395-REB  Document 115  Filed 11/28/18  Page 1 of 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:15-cr-00395-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.   ALAN ALONZO WILLIAMS,  Defendant.

---

## DEFENDANT'S FIFTH MOTION TO CONTINUE SENTENCING HEARING AND RENEWED REQUEST FOR AN ORDER DIRECTING THE FACILTY TO PROVIDE A MEDICAL EVALUATION

---

Defendant, Alan Alonzo Williams, by and through counsel, requests that the sentencing in this matter, currently scheduled for December 18, 2018 at 11:00 a.m. be continued to a date on or after February 14, 2019.[1]

Defendant, Alan Alonzo Williams, by and through counsel, also renews his request (Doc. No. 114) for this Court to enter an order directing the authorities at the Federal Detention Center to provide the Court a medical evaluation detailing if and when Mr. Williams will receive a cat scan and surgery to repair his hernia.

Counsel has conferred with AUSA Rebecca Webber as to this motion and Ms. Weber informed counsel she takes no position as to this motion.

In support of this Motion, Mr. Williams states as follows:

1.    This matter has been continued a number of times with the hope that Mr. Williams would receive his needed hernia re-repair surgery prior to sentencing.  There is no question but that the surgery is medically required.  Mr.

---

[1] Counsel will be out of state and out of the country from January 8, 2019 to February 13, 2019.

Case No. 1:15-cr-00395-REB   Document 172-1   filed 09/10/19   USDC Colorado   pg 264 of
271
Case 1:15-cr-00395-REB   Document 115   Filed 11/28/18   Page 2 of 3

Williams remains incapacitated and in pain because of this.

2.     As previously noted, the authorities at FDC have repeatedly informed Mr. Williams that they were aware of his sentencing dates and would arrange for the surgery to occur before those dates.  Yet, a required pre-surgery cat scan and the surgery continue to have not been performed.   As noted by Mr. Williams in previous motions, this is not delay caused by the medical provider.

3.     It is Counsel's fervent hope that were the Court to again continue the matter <u>and</u> order the requested report, the authorities at FDC would recognize that they need to actually proceed by scheduling the cat scan and surgery, instead of continuing to simply make representation to Mr. Williams that they are purportedly working on it.   It is neither logical nor conceivable that it would take almost a year to get this done, yet this is what has happened.

4.     As noted in Mr. Williams' previous motions, were Mr. Williams to be sentenced prior to receiving surgery, he would end up at a new facility and in effect go to "the bottom of the list" with respect to receiving treatment. He would lose any chance for continuity of care with the chance to have the doctor most familiar with his condition, and who did the original surgery, re-repair the hernia.

5.     Mr. Williams again wants the Court to know that he knows and accepts that he is facing a lengthy period of incarceration. He simply wants the chance to serve his sentence with at least this significant health problem resolved.

Dated:  November 28, 2018.

Respectfully submitted,

*s/ Steven K. Jacobson*
Steven K. Jacobson
Collins, Rafik and Jacobson LLC
1881 9th St., Suite 315
Boulder, Colorado 80302
Telephone: 303-444-9292
Fax: 303-447-0200
e-mail: steve@collinsrafik.com

CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on November 28, 2018, I electronically filed the foregoing **MOTION** with the Clerk of the Court using the CM/ECF filing system which will send notification of such filing to all counsel of record in this case.

*s/ Steven K. Jacobson*
Steven K. Jacobson

United States District Court of Colorado
Honorable Judge: Robert E. Blackburn
ALFRED A. ARRAJ COURTHOUSE
Courtroom A1001
901-19th Street
Denver, CO. 80294-3589

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUN 03 2019

JEFFREY P. COLWELL
CLERK

RE: 15-CR-00395-REB

Your Honor,

I'm submitting this letter in regards to myself, Alan Alonzo Williams, requesting that Steven K. Jacobson be withdrawn as my counsel.

I requested a withdrawal of counsel back in March 2019, which I withdrew the motion in writing, but I didn't request for the April 25th, 2019 court date to be vacated based on the conversation with Mr. Jacobson advising me that the judge most likely will want us in court to discuss this issue. I then expected the date of April 25th, 2019 to occur but then I was notified by counsel that the April 25th, 2019 date was vacated.

D.C. COLO. L Atty R5(b) allows for withdrawal of counsel "on motion showing good cause." "To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." United States v.

1 of 4

Cont:

Padilla 819 F. 2d 952 955 (10th Cir. 1987)(internal quotation marks omitted). "Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney, rather, there must be a total breakdown in communications." United States v. Lott, 310 F. 3d 1231, 1249 (10th Cir. 2002)(quotation omitted). In considering such a motion, courts look at "(1) whether the request was timely; (2) whether the defendant - attorney conflict was so great that it led to a total lack of communication and prevented the preparation of an adequate defense and (3) whether the defendant was at fault for the conflict." See Romero v. Furlong, 215 F. 3d 1107, 1113 (10th Cir. 2000).

## ARGUMENT

Defendant seeks the withdrawal of Mr. Jacobson due to the complete breakdown of communication between defendant and counsel. See United States v. Lott, 310 F. 3d 1231, 1249 (10th Cir. 2002). This breakdown is due to

<u>Cont,</u>

more than mere strategic dis-
agreements, but an irreconcilable
conflict that has rendered meaningful
communication with Mr. Jacobson
impossible. Communications have been
very strained between defendant and
Mr. Jacobson for many months, and
as of Monday, June 3rd, 2019 or Tuesday,
June 4th, 2019 defendant will have asked
counsel to withdraw; and cease com-
munications with counsel regarding
sentencing. This situation presents an
irreconcilable conflict between defendant
and counsel, and constitutes good
cause for counsel to be withdrawn.

Due to this inability to communicate,
defendant feels that counsel is
unable to effectively represent the
defendant at sentencing. "Defendant
also feels that it is impossible for
counsel to continue to provide defendant
with effective assistance of counsel
in this case." See United States v.
Ali, 375 F. Supp. 2d 1289, 1390 (D. N. M.
2005)(granting motion to withdraw).

Defendant recognizes that this
request for withdrawal comes twenty

Cont,

(20) days before defendants sentencing hearing. However, this total breakdown in communication between defendant and counsel nonetheless merits counsel withdrawal. See United States v. Hammons No. CR07-1164 JB, 2010 WL4928923, at *3 (D.N.M. Oct. 28, 2010) (granting motion to withdraw two days before sentencing where there was a "total breakdown in communication" between attorney and client).

## CONCLUSION

Defendant respectfully requests that counsel be withdrawn and that substitute counsel be appointed.

Dated this 30th day of May, 2019



CERTIFIED MAIL

7012 3460 0002 2200 8092

MAY 31 2019

Alan A. Williams
#43473-013
Federal Detention Center
9595 West Quincy Avenue
Littleton, CO.
80123-1159

United States District Court
Honorable Judge:
Robert E. Blackburn
ALFRED A. ARRAJ COURTHOUSE
Courtroom A-1001
901 - 19th Street
Denver, CO.
80294-3589

LEGAL
MAIL

